### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEMETRIUS BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-379E |
| | ) | |
| U.S. JUSTICE DEPARTMENT, | ) | JUDGE MCLAUGHLIN |
| BUREAU OF PRISONS, FCI MCKEAN | ) | MAGISTRATE JUDGE BAXTER |
| WARDEN JOHN J. LAMANNA, | ) | |
| REGIONAL DIRECTOR D. SCOTT | ) | Electronically Filed |
| DODRILL, MEDICAL DIRECTOR, | ) | |
| DIRECTOR HARLEY G. LAPPIN, | ) | |
| | ) | |
| Defendants. | ) | |

### BRIEF IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS
### OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

*Pro se* prisoner Demetrius Brown filed a Complaint in the above-captioned action under

the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*,

alleging personal injuries caused by his exposure to second-hand smoke or Environmental

Tobacco Smoke ("ETS") during his incarceration at a federal prison located in McKean County,

Pennsylvania ("FCI McKean"). Specifically, plaintiff alleges that the levels of ETS at FCI

McKean have caused him to suffer a litany of illnesses including nausea, "the inability to eat,"

headaches, chest pains, difficulty breathing, numbness in limbs, teary eyes, itching, burning skin,

dizziness, sore throat, coughing and production of sputum. (*See* Compl., ¶ 27.) He also alleges

that he has recently lost hair follicles, his skin has become discolored, he has hardening lumps,

blurred vision and nervousness. (*See id.*) As relief, plaintiff seeks a declaratory judgment and

compensatory damages in the amount of ten million dollars. He also seeks an injunction that

prohibits, *inter alia*, defendants or their agents "from harassing, threatening, punishing or

retaliating in any way against the Plaintiff because they filed this action or against any other prisoners because they submitted affidavits in this case on behalf of Plaintiff." (*Id.* at Wherefore Cl., ¶ 3(f).)

As detailed below, however, the Court should dismiss plaintiff's FTCA claims for several independent reasons. To begin with, this action should be limited only to those claims that were fully exhausted through the administrative tort process. Accordingly, the Court should dismiss all allegations of retaliation and any claim that conditions at FCI McKean violated the federal Bureau of Prisons' smoking policy that went into effect in March 2004. Additionally, the Court should dismiss all of plaintiff's claims because the alleged actions fall squarely within the discretionary function exception to the FTCA. Finally, plaintiff's FTCA claim should be dismissed for failure to state a *prima facie* claim of negligence. The Court should therefore dismiss plaintiff's Complaint and Amended Complaint with prejudice or, in the alternative, enter summary judgment in favor of the United States.

## FACTUAL BACKGROUND

## I.    THE PARTIES

Plaintiff is a federal inmate currently incarcerated at a federal prison in Ray Brook, New York. (*See* Public Information Data at 1 (attached as Exhibit 1a to Decl. of Joyce Horikawa.)) On May 15, 1997, he was sentenced in the United States District Court for the District of Minnesota to 360 months imprisonment, to be followed by a ten (10) year term of supervised release, for Conspiracy to Distribute and Possess With Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 846, and 841(b)(1)(A). (*See id.* at 2-3.) Plaintiff's sentence began on May 15, 1997, and he was designated to FCI McKean from July 8, 1997 until October 29, 2004. (*See id.*

at 1-2.) Assuming he receives all Good Conduct Time available, his projected release date is

August 4, 2022. (*See id.* at 3.)

 Plaintiff named as defendants the U.S. Justice Department, Bureau of Prisons, FCI

McKean, Warden John J. LaManna, Regional Director D. Scott Dodrill, Medical Director and

Director Harley G. Lappin.[1]  However, the United States of America has filed a Motion for

Substitution of Party requesting that the Court dismiss the named defendants from this action

with prejudice, and substitute the United States as defendant for all further proceedings.

## II. SMOKING REGULATIONS IN FEDERAL PRISONS

 On or about July 6, 1994, the Bureau of Prisons ("BOP") promulgated a regulation

governing smoking in federal prisons.  The regulation provided, in part:

> All areas of Bureau of Prisons facilities and vehicles are no smoking areas unless
> specifically designated as a smoking area by the Warden as set forth in § 551.163.

28 C.F.R. § 551.162.

> (b) At all low, medium, high, and administrative institutions other than
> medical referral centers, the Warden shall identify outdoor smoking areas
> and may, but is not required to, designate a limited number of indoor
> smoking areas where the needs of effective operation so require, especially
> for those who may be employed in, or restricted to, a nonsmoking area for
> an extended period of time.

> (c) To the maximum extent practicable nonsmoking inmates shall be housed
> in nonsmoking living quarters.

28 C.F.R. § 551.163.

 On or about June 21, 2002, FCI McKean issued an Institution Supplement on Smoking

and Non-Smoking Areas.  The Supplement provided:

---

[1]Although plaintiff named only an unidentified "Medical Director," the docket sheet has
recently been changed to name Newton E. Kendig as that defendant.

3a.    <u>Staff</u>: FCI, McKean and FPC [Federal Prison Camp], McKean have been designated as non-smoking institutions. Staff are prohibited from smoking inside of buildings or entrance-ways of the camp facility or main institution.

3b(2).

(a) Housing Units: Smoking is only permitted in inmate rooms as designated by the Unit Manager of each unit. In the event that the inmate room is assigned to one inmate smoker and one non-smoker, the room will be designated a non-smoking room. There is no smoking in the common areas, other multi-purpose areas, or entrance-ways of the housing units.

(*See* Institution Supplement MCK 1640.03, Smoking and Non-Smoking Areas (attached as Exhibit 3a to Declaration of Gary Grimm.))

## III.    PLAINTIFF'S ADMINISTRATIVE TORT CLAIM

On January 29, 2004, plaintiff filed an Administrative Tort Claim with the Northeast Regional Office of the BOP, in which he complained of exposure to second-hand smoke. (*See* Administrative Tort Claim, Case No. TRT-NER-2004-01684 at 1 (attached as Exhibit 1b to Declaration of Joyce Horikawa.)) He alleged that, as a result of his exposure to ETS, he suffered from nausea, inability to eat, headaches, chest pains, difficulty breathing, numbness in his limbs, teary eyes, itching, burning skin, dizziness, sore throat, coughing and production of sputum. He also claimed he was more likely to suffer additional complications in the future. (*See id.*) Notably absent from the tort claim was any allegation that he was subjected to retaliation for complaining of the exposure to ETS. (*See id.*; Declaration of Joyce Horikawa, ¶ 6 (attached as Exhibit 1.))

In a memorandum dated June 24, 2004, plaintiff's administrative tort claim was denied. (*See* Memorandum dated June 24, 2005 denying tort claim no. TRT-NER-2004-01684 (attached as Exhibit 1c to Declaration of Joyce Horikawa.)) The denial advised plaintiff that an

-4-

investigation into his claim revealed that the Warden, in compliance with BOP policy, designated

the upper cells of each housing unit and one cell on each lower range for handicapped inmates as

indoor smoking areas. (*See id.*)  It also advised that inmates found smoking in prohibited areas

were subject to disciplinary action. (*See id.*)  The memorandum went on to state that the Warden

at FCI McKean took reasonable steps to ensure inmates were not exposed to second-hand smoke.

(*See id.*)  It further noted that plaintiff's medical records did not indicate that he suffered from the

injuries described in his administrative tort claim. (*See id.*)

On July 7, 2004, Plaintiff signed an Acknowledgment of Receipt of Denial of Tort Claim

form, indicating he received the June 24, 2004 memorandum from the Northeast Regional

Counsel. (*See* Acknowledgment of Receipt of Denial of Tort Claim (attached as Exhibit 1d to

Declaration of Joyce Horikawa.))[2]  On December 28, 2004, a few months after plaintiff received

notice of the denial, he filed a Complaint in this action.  Plaintiff subsequently filed a Motion to

Amend Complaint Correcting Typographical Error and Adding Cure to Jurisdictional Deficiency,

which was granted by Order dated May 9, 2005.

## APPLICABLE LEGAL STANDARDS

## I.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The party asserting the existence of federal jurisdiction bears the burden of proving that

jurisdiction over the subject matter actually exists. *Int'l Ass'n of Machinists & Aerospace*

---

[2]Although not relevant for the purposes of this FTCA action, plaintiff also filed a Request
for Administrative Remedy, and appealed the denials of that request. (*See* Administrative
Remedy, Case No. 321868-F1 (attached as Exhibit 1e to Declaration of Joyce Horikawa);
Regional Administrative Remedy Appeal, Case Number 321868-R1, and Response (attached as
Exhibit 1f to Declaration of Joyce Horikawa); Central Office Administrative Remedy Appeal,
Case Number 321868-A1, and Response (attached as Exhibit 1g to Declaration of Joyce
Horikawa.))

*Workers v. Northwest Airlines,* 673 F.2d 700, 711 n.16 (3d Cir. 1982); *Shepherdson v. Local Union No. 401,* 823 F. Supp. 1245, 1248 (E.D. Pa. 1993). When considering a challenge to a court's jurisdiction under Fed. R. Civ. P. 12(b)(1), a court ordinarily need not limit its inquiry to the facts as pled in the complaint. *Land v. Dollar,* 330 U.S. 731, 735 (1947). Rather, "[t]he court may inquire by affidavits or otherwise, into the facts as they exist." *Id.* at 735 n.4. Such inquiry is permissible because a federal court must assure itself that it has jurisdiction over the case, and it may even resolve factual disputes in doing so. *See Boyle v. The Governor's Veterans Outreach & Assistance Ctr.,* 925 F.2d 71, 74 (3d Cir. 1991) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)).

## II.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A motion to dismiss under Rule 12(b)(6) is the appropriate method by which to challenge the legal sufficiency of claims in a complaint. *See* Fed. R. Civ. P. 12(b)(6); *Raines v. Haverford College,* 849 F. Supp. 1009, 1010 (E.D. Pa. 1994). Although courts reviewing Rule 12(b)(6) motions generally consider only the allegations in the complaint, courts are also free to examine any attached exhibits attached, other undisputed documents relied on by the plaintiff, other items appearing in the record of the case, and matters of public record. *Raines,* 849 F. Supp. at 1019; *see also Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Indeed, if a court could not consider such documents, "'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which [he] relied.'" *Interfaith Community Org. v. AlliedSignal, Inc.,* 928 F. Supp. 1339, 1345 (D.N.J. 1996) (quoting *Dykes v. Southeastern Pa. Trans. Auth.,* 68 F.3d 1564, 1567 n.3 (3d Cir. 1995)).

While courts considering motions to dismiss have a limited role, these courts should grant such motions where it is clear that no relief could be granted under any set of facts that are consistent with the allegations of a complaint. *AlliedSignal*, 928 F. Supp. at 1346. The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff has any chance of doing so. *Id.; Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## III.    MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). That is, Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The plaintiff cannot merely rest on allegations in his complaint. *Id.* at 324. To defeat a motion for summary judgment, "the nonmoving party must adduce more than a mere scintilla of evidence in his favor." *Williams v. Borough of Chester,* 891 F.2d 458, 460 (3d Cir. 1989).

## <u>ARGUMENT</u>

## I.    THIS ACTION MUST BE LIMITED TO ONLY THOSE CLAIMS THAT WERE FULLY EXHAUSTED IN THE ADMINISTRATIVE TORT CLAIM

To the extent that plaintiff alleges that he has been or will be retaliated against for filing this lawsuit or administrative grievances, such a claim should be dismissed because it was not included in his administrative tort claim. Likewise, plaintiff's claims should not be construed to allege a violation of the BOP smoking policy that went into effect in March 2004, because he did not raise and exhaust this issue through the administrative tort claim process. Indeed, the FTCA

specifically requires that a claimant present an administrative tort to the appropriate

administrative agency, and that the tort claim must be finally denied by the agency before a civil

action may be initiated:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant **shall have first presented the claim to the appropriate Federal agency and his claims shall have been finally denied by the agency in writing and sent by certified or registered mail.**

28 U.S.C. § 2675(a) (emphasis added).  This is "the balance struck by Congress in the context of

tort claims against the Government" and courts "are not free to construe it so as to defeat its

obvious purpose, which is to encourage the prompt presentation of claims."  *United States v.*

*Kubrick,* 444 U.S. 111, 117 (1979).

The administrative exhaustion requirement is clear and mandatory.  *See McNeil v. United*

*States,*  508 U.S. 106, 111 (1993) (explaining that statutory exhaustion requirement "is

unambiguous.  We are not free to rewrite the statutory text."); *Wujick v. Dale & Dale, Inc.,* 43

F.3d 790, 793-94 (3d Cir. 1994) (noting that administrative exhaustion under FTCA is mandatory

and the Supreme Court "firmly rejected the 'no harm, no foul' reasoning"); *Bialowas v. United*

*States,* 443 F.2d 1047, 1049 (3d Cir. 1971) (requiring a claim be submitted to and finally denied

by the appropriate federal agency before filing a lawsuit).  Because the FTCA represents a

conditional limited waiver of sovereign immunity, the requirement of administrative exhaustion

is jurisdictional and cannot be waived.  *See, e.g., Livera v. First National State Bank of New*

*Jersey,* 879 F.2d 1186, 95 (3d Cir. 1989); *Bialowas,* 443 F.2d 1047, 1049.

-8-

A complainant's failure to allege exhaustion of administrative remedies, therefore, requires dismissal of the complaint for lack of subject matter jurisdiction. *See Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980) (dismissing *pro se* complaint for failure to allege exhaustion of administrative remedies).

With respect to alleged retaliation for filing this lawsuit or for filing administrative remedies or tort claims regarding ETS exposure, plaintiff failed to file an administrative tort claim pursuant to 28 U.S.C. § 2675(a). (*See* Administrative Tort Claim, Case No. TRT-NER-2004-01684 at 1 (attached as Exhibit 1b to Declaration of Joyce Horikawa); Declaration of Joyce Horikawa, ¶ 6 (attached as Exhibit 1.)) The filing of a complaint that includes the allegation of retaliation does not excuse the requirement of prior exhaustion of administrative tort remedies under 28 U.S.C. § 2675. *See Henderson v. United States*, 785 F.2d 121, 125 (4th Cir. 1986) (filing of state court personal injury action does not satisfy exhaustion requirement); *Flickinger v. United States*, 523 F.Supp. 1372, 1377 (W.D.Pa. 1981) (same). Moreover, plaintiff's administrative tort claim was filed on January 20, 2004. (*See* Administrative Tort Claim, Case No. TRT-NER-2004-01684 at 1 (attached as Exhibit 1b to Declaration of Joyce Horikawa.)) Therefore, any injury or incident alleged in this lawsuit is limited to that which occurred on or before January 20, 2004. Because the BOP changed its smoking policy in March 2004, any allegation that the conditions at FCI McKean violated the new smoking policy should be dismissed from this lawsuit.

Because plaintiff failed to exhaust the issues of retaliation and violation of the smoking policy that went into effect on March 24, 2004, these allegations should be dismissed with prejudice for lack of subject matter jurisdiction.

## II. DECISIONS MADE BY PRISON OFFICIALS REGARDING SMOKING WITHIN A PRISON FACILITY FALL WITHIN THE DISCRETIONARY FUNCTION EXCEPTION TO THE FTCA

As sovereign, the United States is immune from suit except as it consents to be sued, and the terms of its consent, as set forth by Congress, define the limits of the federal courts' subject matter jurisdiction to decide suits brought against the United States. *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *see also United States v. Mitchell,* 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The FTCA creates a limited waiver of sovereign immunity for claims against the United States only for the negligence of its officers or employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b); *see generally, United States v. Orleans,* 425 U.S. 807, 813 (1976) (limited waiver).

There are, however, exceptions to this waiver of sovereign immunity. The discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), is perhaps the most important of these exclusions to the United States' liability under the FTCA. Specifically, the discretionary function exception expressly states that the FTCA does not apply to the following:

> any claim based upon an act or omission of an employee of the Government exercising due care, in the execution of a statute or regulation . . . or ***based on the exercise or performance or the failure to exercise or perform a discretionary function or duty*** on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (emphasis added). The purpose of the exception is to prevent "judicial second-guessing of legislative and administrative decisions that are grounded in social, economic, and political policies through the medium of an action in tort." *United States v.*

*Gaubert*, 499 U.S. 315, 323, (1991) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). When claims fall within the discretionary function exception, the United States cannot be held liable, as it has not waived its sovereign immunity for such claims, and the courts therefore lack subject matter jurisdiction over the claims. *Montez v. U.S.*, 359 F.3d 392, 395 (6th Cir. 2004); *Alfrey v. U.S.*, 276 F.3d 557, 561 (9th Cir. 2002).

The United States Supreme Court has formulated a two-part test for determining whether a government act falls within the discretionary function exception to FTCA liability. *See Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988); *Gaubert*, 499 U.S. at 322-23 (1991). Under this test, a court must first determine whether the conduct involved an element of judgment or choice by the employee. *See Gaubert,* 499 U.S. at 322. "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* (internal quotation omitted). If, however, there is no statute, regulation, or policy that specifically prescribes a course of action, and the employee's conduct is the product of judgment or choice, the first prong of the *Berkovitz-Gaubert* test is satisfied. Such judgment is involved in the "day-to-day management decisions" that require a choice between a range of permissible alternative courses. *Scrima v. Hasty,* No. 97-CIV. 8433, 1998 WL 661478, at *2 (S.D.N.Y. Sept. 24, 1998).

If the challenged act satisfies this first requirement, a court must then proceed to the second part of the test, which requires a determination as to whether the employee's judgment or choice is of the kind that Congress intended to shield from FTCA liability; that is, if it was grounded in social, economic, and political policy. *Berkovitz*, 486 U.S. at 536; *Gaubert*, 499

-11-

U.S. at 322-23; *Gollehon Farming v. United States*, 17 F. Supp. 2d 1145, 1154 (D. Mont. 1998). Discretionary acts are protected from liability if they are within the range of choice accorded by federal policy and law and are the results of policy determinations. *Varig Airlines*, 467 U.S. at 820. Additionally, if a regulation gives an employee discretion, "the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation" is inextricably intertwined with the policy considerations which lead to the creation of the regulation. *Gaubert*, 499 U.S. at 324.[3]

Courts have further clarified that when determining whether government action is grounded in considerations of policy, the focus is not on whether the government employee involved ***actually*** weighed social, economic, or political policy considerations before acting. *Ochran v. United States*, 117 F.3d 495, 499 (11th Cir. 1997). Rather, the focus is on the general nature of the judgment involved and whether it may be "susceptible to policy analysis." *Id.* (quoting *Gaubert*, 499 U.S. at 325). A "policy analysis" may include the weighing of competing interests or the examination of economic constraints in light of the needs of the public. *Gollehon Farming*, 17 F. Supp. 2d at 1154.

The operation of a federal prison involves a wide range of social and economic considerations, with social concerns and considerations that are markedly different from the issues that arise in the operation of any other organization. *Jones v. North Carolina Prisoners'*

---

[3] Once a particular function is found to be discretionary, a negligence claim will fail, even if the BOP abused its discretion or was negligent in the performance of its discretionary functions. *Bailor v. Salvation Army*, 51 F.3d at 685; *see, e.g., Dykstra v. United States Bureau of Prisons*, 140 F.3d 791, 795-97 (8th Cir. 1998) (no claim under FTCA for BOP's alleged negligence in failing to protect inmate from assault by another inmate because a decision whether to place an inmate in protective custody is the exercise of a discretionary function).

*Labor Union, Inc.*, 433 U.S. 119, 129 (1977). The Supreme Court has repeatedly recognized that broad deference should be afforded to the discretion exercised by prison administrators in adopting and executing policies and practices which address the day-to-day problems in operating a corrections facility. *See, e.g., Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

The duty of care owed by the BOP to the inmate population is broadly set forth at 18 U.S.C. § 4042, which requires only that the BOP must provide "suitable quarters and provide for the safekeeping, care, and subsistence of all [federal inmates]." "While it is true that the statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) (affirming application of discretionary function exception to FTCA). The absence of specific guidelines for appropriate conduct in administering these duties, therefore, leaves judgment or choice to BOP officials.

With respect to the use of tobacco products during the relevant time period, BOP staff are guided by the applicable regulation and policy set forth at 28 C.F.R. § 551.160, *et seq.* Under 28 C.F.R. § 551.162, "[a]ll areas of Bureau of Prisons facilities and vehicles are no smoking areas unless specifically designated as a smoking area by the Warden as set forth in § 551.163." In turn, 28 C.F.R. § 551.163 recognizes the ability of a prison warden to exercise discretion in making determinations regarding the use of tobacco products by staff and inmates:

> (b)   At all low, medium, high, and administrative institutions other than medical referral centers, the Warden shall identify outdoor smoking areas and ***may, but is not required to, designate a limited***

-13-

> ***number of indoor smoking areas*** where the needs of effective
> operation so require, especially for those who may be employed in, or
> restricted to, a nonsmoking area for an extended period of time.
>
> (c)  ***To the maximum extent practicable*** nonsmoking inmates shall
> be housed in nonsmoking living quarters.

28 C.F.R. § 551.163 (emphasis added).   The regulations thus permit the warden at each BOP

institution to designate -- in his or her discretion -- outdoor smoking areas as well as a limited

number of indoor smoking areas, and to determine an institutionally-viable solution for housing

nonsmoking inmates.  However, the regulation is silent as to ***how*** its provisions are to be

specifically implemented or enforced; a warden is not "bound to act in a particular way."

*Gaubert*, 499 U.S. at 329;  28 C.F.R. § 551.160, *et seq.*

In this case, the decisions made at FCI McKean regarding smoking within the facility

satisfy both prongs of the *Berkovitz-Gaubert* test, and therefore are excepted from the FTCA's

waiver of liability.  Regarding the first prong, the Warden of FCI McKean exercised his

discretion and issued an Institution Supplement on June 21, 2002 that provided as follows:

> 3a.  Staff: FCI, McKean and FPC [Federal Prison Camp], McKean have been
> designated as non-smoking institutions.  Staff are prohibited from smoking
> inside of buildings or entrance-ways of the camp facility or main institution.
>
> 3b.  <u>Inmates</u>:
>
> (2)  <u>Main Institution</u>:
>
> > (a)  Housing Units: Smoking is only permitted in inmate rooms as designated
> > by the Unit Manager of each unit.  In the event that an inmate room is
> > assigned to one inmate smoker and one non-smoker, the room will be
> > designated a non-smoking room.
> >
> > (b)  Other Buildings: All other institution buildings and entrance-ways to these
> > buildings are designated as non-smoking.

-14-

(*See* Institution Supplement MCK 1640.3, Smoking and Non-Smoking Areas (attached as Exhibit 3a to Declaration of Gary Grimm.))  The Institution Supplement further delegated the discretionary duty of designating smoking areas within an inmate housing unit to each Unit Manager at FCI McKean.  (*See id.*)  Both the regulation and Institution Supplement are silent as to how their provisions are to be specifically implemented or enforced.  *See* 28 C.F.R. § 551.160, *et seq.*

The Institution Supplement plainly reflects the choice presented to wardens in 28 C.F.R. §255.162, which states that a warden "may" – but is not required to – "designate a limited number of indoor smoking areas."[4]  The BOP regulations provide no guidance as to why, or by what means, a warden may choose to implement a particular smoking policy, but leave those decisions to the individuals at each facility who are best able to make those determinations.  *Id.*

The decision to implement the rules governing smoking also satisfies the second prong of the *Berkovitz-Gaubert* test, *i.e.*, that the discretionary conduct was "based on considerations of public policy."  *Gaubert*, 499 U.S. at 322.  Here, the very nature of the conduct regulated by the statute – the use of tobacco products by staff and inmates  – involved public policy considerations in balancing the interests of staff and inmates with long histories of legal nicotine addiction, with the interests of all staff and inmates to work and live in a habitable environment.  *See* 28 C.F.R. § 551.160, *et seq.*  During the time in question, the use of tobacco products was

---

[4]This is in contrast to the directive that "a Warden *shall* identify outdoor smoking areas," *see* 28 C.F.R. § 255.162, which immediately precedes the use of the discretionary "may" in the same regulation subsection. In interpreting this portion of § 255.162(b), the court in *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998), held that one prison warden did not have the discretion to institute a prison-wide ban on smoking, but was *required* to identify outdoor smoking areas to accommodate smoking prisoners.

not a criminal act, and the regulations/smoking policies considered several interests including: (i) rights of staff employed at FCI McKean; (ii) rights of inmates incarcerated at FCI McKean; and (iii) the health concerns of all who live and work at FCI McKean.  (*See* Declaration of John LaManna, ¶¶ 9-10 (attached as Exhibit 4.))[5]

In this case, it was the determination of the Warden at FCI McKean to permit the sale of tobacco products at FCI McKean, and to designate certain areas within the buildings at FCI McKean for smoking.  It was the Warden's determination that in limited circumstances, smoking inmates would be housed with non-smoking inmates and, in such cases, those rooms would be "non-smoking rooms."  Neither determination was contrary to BOP regulations or the Institution Supplement.  To the contrary, each of these acts comported with BOP regulations, and each act involved exactly the type of discretionary judgment that 28 U.S.C. § 2680(a) was designed to protect.  That plaintiff may disagree with these determinations does not remove the discretionary character, nor does it invalidate the public policy issues underlying these choices.

## III.    PLAINTIFF HAS FAILED TO STATE A *PRIMA FACIE* CASE OF NEGLIGENCE

Plaintiff's claims should be dismissed because, in addition to falling within the discretionary function exception to the FTCA, they do not meet the requirements of a negligence claim under Pennsylvania law.  A party must establish the following four (4) elements to

---

[5]Plaintiff's insinuation that staff at FCI McKean had a non-discretionary duty to curtail the sale of all tobacco products and house all non-smoking inmates separately from smoking inmates misconstrues the smoking regulation and institution supplement.  Similarly, plaintiff's argument that staff failed to prevent tobacco smoke from traveling to non-designated smoking areas places an additional duty upon staff not set forth in policy, regulation or statute.  *See* 28 C.F.R. § 551.160, *et seq.*

establish a claim for negligence in Pennsylvania: (i) a duty or obligation recognized by law; (ii) a breach of that duty; (iii) a causal connection between the conduct and resulting injury; and (iv) actual damages. *Ferry v. Fisher*, 709 A.2d 399, 402 (Pa. Super. 1998) (citing PROSSER & KEETON ON TORTS, § 30 (5th ed. 1984)). Plaintiff here cannot establish any of these elements.

With respect to duty, plaintiff cites the Institution Supplement, in which Unit Managers were delegated the discretionary task of designating certain rooms in the inmate housing units as smoking rooms. The Institution Supplement states that in the event a smoker is assigned to the same room as a non-smoker, the room will be designated a non-smoking room. The Institution Supplement also prohibits staff from smoking inside buildings or in the entrance-ways of the main institution. (*See* Institution Supplement MCK 1640.3, Smoking and Non-Smoking Areas (attached as Exhibit 3a to Declaration of Gary Grimm.)) Contrary to the allegations set forth in Complaint, as amended, the Institution Supplement does not prohibit staff from assigning a non-smoking inmate to the same room as a smoking inmate. Counsel is aware of no similar duties imposed on individuals under Pennsylvania law. Accordingly, plaintiff has failed to establish even the first element of a negligence claim.

Because plaintiff has failed to establish a duty, as explained above, he cannot establish a breach of that duty under Pennsylvania law. Even assuming that he could establish the first element, however, there is no evidence of a breach. The duty of care owed by the BOP to federal prisoners is governed by 18 U.S.C. § 4042, independent of any inconsistent state rule. *See United States v. Muniz*, 374 U.S. 150, 164 (1963). *Flechsig v. United States*, 991 F.2d 300, 303-04 (6th Cir. 1993). The statute provides, in pertinent part:

The Bureau of Prisons, under the direction of the Attorney General, shall –

-17-

(2)  provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

(3)  provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;

18 U.S.C. §§ 4042(a)(2) and (a)(3).  This section has been interpreted as requiring the BOP to exercise "ordinary diligence."  *Cowart v. United States*, 617 F.2d 112, 116 (5th Cir. 1980); *Herrington v. United States*, No. 83 Civ. 8007, 1984 WL 1279, at *2 (S.D.N.Y. Nov. 28, 1984) (under 18 U.S.C. § 4042, government owes federal prisoners a duty of "ordinary care").

Although the BOP had a duty to exercise ordinary care, there is no evidence that it breached this duty with respect to the sale of tobacco products, the assignment of inmates to housing units, or the instruction of staff to refrain from smoking inside housing units or buildings at FCI McKean.  Remarkably absent from plaintiff's medical records is any indication he suffered from nausea, an inability to eat, headaches, chest pains, difficulty breathing, numbness in his limbs, teary eyes, itching, burning skin, dizziness, sore throat, coughing and the production of sputum.  (*See* Plaintiff's Prison Medical Records (attached as Exhibit 2a to Declaration of Dawn M. Marini.))   Nor is there any evidence showing he is at greater risk of developing additional complications in the future.  (*See id.*)

Even assuming that plaintiff could establish a duty and a breach of duty, he has failed to establish an actual injury.  Under Pennsylvania law, no cause of action arises in a personal injury action until there has been an actual injury.  *Emert v. Larami Corp.*, 200 A.2d 901 (Pa. 1964). "The mere happening of an accident does not entitle the injured person to a verdict." *Engel v. Parkway Co.*, 439 Pa. 559, 562 (1970).  Although plaintiff alleges he is at risk of developing

-18-

future serious health problems, he has failed to establish that any of these medical issues manifested prior to the date he filed his administrative tort claim or this civil action. Indeed, a review of his prison medical record shows that from July 1997 through January 20, 2004, he had yet to report a medical complaint connected with ETS exposure. (*See* Plaintiff's Prison Medical Records (attached as Exhibit 2a to Declaration of Dawn M. Marini.))

With respect to proximate causation, the absence of an actual injury – as well as plaintiff's history of marijuana use – make it extremely speculative that his future injuries will be causally linked to ETS exposure. Plaintiff's failure to plead actual injury defeats any argument concerning proximate cause. Indeed, the test for proximate causation is whether a defendant's acts or omissions were a substantial factor in bringing about a plaintiff's harm. *Blum v. Merrell Dow Pharmaceuticals Inc.,* 705 A.2d 1314, 1316 (Pa.Super. 1997). "[A] cause can be found to be substantial so long as it is significant or recognizable; [thus,] it need not be quantified as considerable or large." *Jeter v. Owens-Corning Fiberglass Corp.,* 716 A.2d 633, 636 (Pa. Super. 1998). Factors that a court may use to determine whether an act is a substantial factor in causing a plaintiff's harm include: (i) the number of other factors which contribute in producing the harm and extent of the effect which they have in producing it, (ii) whether the defendant's conduct created a force or series of forces that are in continuous and active operation up to the time of the harm, or has created a situation that is harmless unless acted upon by other forces for which the actor is not responsible, and (iii) lapses of time. *See* Restatement (Second) of Torts § 433; *Talarico v. Bonham,* 650 A.2d 1192, 1195-96 (Pa. Commw. 1994).

Here, the BOP's duty to exercise ordinary care must be viewed in light of the fact that from July 1997 until January 2004, plaintiff did not express any concerns related to ETS or the

-19-

sale of tobacco products. (*See* Plaintiff's Prison Medical Records (attached as Exhibit 2a to Declatation of Dawn M. Marini); Declaration of Joyce Horikawa, ¶ 6 (attached as Exhibit 1.))[6] Accordingly, there is no evidence that the acts or omission of BOP staff may proximately cause plaintiff's speculative future injuries.

In short, plaintiff has not stated a legally valid claim under Pennsylvania law where he has failed to set forth duty, breach, causation or actual injury. Plaintiff's Complaint, as amended, is therefore subject to dismissal on this basis, as well as the discretionary function exception to the FTCA.[7]

---

[6]Plaintiff did not file his first Administrative Remedy Request regarding ETS until January 8, 2004. (*See* Administrative Remedy, Case No. 321868-F1 (attached as Exhibit 1e to Declaration of Joyce Horikawa.))

[7]Plaintiff's claims should also be dismissed because they purport to be based on violations of federal regulations or policies, and such a suit cannot be maintained under the FTCA. The FTCA enables private individuals to sue the United States "under circumstances where the United States if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Accordingly, only torts that allege a violation recoverable under state tort law may be maintained under the FTCA. Indeed, it is well-settled that violations of federal statutory or constitutional rights are not actionable under the FTCA. *Carlson v. Green*, 446 U.S. 15, 19 (1980); *U.S. Gold and Silver Investments, Inc. v. United States*, 885 F.2d 620 (9th Cir. 1989). In a civil action filed under the FTCA, the Third Circuit held that "[p]laintiffs may not base their claims [under the FTCA] on alleged breaches of a duty arising solely out of federal law when there is no corresponding duty under state tort law." *Cecile Industries, Inc. v. United States*, 793 F.2d 97, 99 (3d Cir. 1986) (*quoting Blessing v. United States*, 447 F.Supp. 1160, 1186 n.37 (E.D.Pa. 1978)). This action should be dismissed because it does not allege a tort under Pennsylvania law based on negligent or wrongful conduct; rather, it is based solely on the alleged violation of a duty imposed by federal regulation.

## **CONCLUSION**

For all the foregoing reasons, this Court should dismiss plaintiff's Complaint and

Amended Complaint with prejudice.  In the alternative, the Court should grant summary

judgment in the United States' favor and against plaintiff.

                                      Respectfully submitted,

                                      MARY BETH BUCHANAN
                                      United States Attorney

                                      /s/ Megan E. Farrell
                                      MEGAN E. FARRELL
                                      Assistant U.S. Attorney
                                      Western District of PA
                                      700 Grant St., Suite 4000
                                      Pittsburgh, PA 15219
                                      (412) 894-7429
                                      PA ID # 76972

                                      Counsel for the United States of America

Dated: January 3, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of January, 2006, a true and correct copy of the

within United States' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and

Brief in Support thereof was served via first-class mail upon the following:

> Demetrius Brown
> #21534-039
> FCI Ray Brook
> P.O. Box 9001
> Raybrook, NY 12977


/s/ Megan E. Farrell
MEGAN E. FARRELL
Assistant U.S. Attorney