# Exhibit 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEMETRIUS BROWN,

        Plaintiff,

- v -

        C. A. No. 04-379(Erie)

UNITED STATES DEPARTMENT
    OF JUSTICE, et al.,
        Defendants.

### DECLARATION OF DANIEL SCHNEIDER

Daniel Schneider, pursuant to 28 U.S.C. § 1746, declares as follows:

1.   I am currently employed as a Discipline Hearing Officer (DHO), at the Federal Correctional Institution (FCI), McKean, Pennsylvania. Prior to this, I was employed from approximately October 3, 1993, through approximately January 22, 2000, as the Unit Manager for Unit 3 at FCI McKean.[1] I have been employed with the Bureau of Prisons at FCI McKean since approximately July 31, 1989.

2.   During the period of time I served as Unit Manager of Unit 3 at FCI McKean, it was my responsibility, pursuant to Bureau of Prisons Program Statement 1640.03, and Institution Supplement MCK 1640.03, Smoking/No-Smoking Areas, to designate smoking and non-smoking areas within Unit 3.

---

[1] Unit 3 is currently identified as Unit C. Sometime in either the late 1990s or 2000, the housing units converted from a numerical to an alphabetical identification system.

1

3. As an exercise of the discretion vested in me under the above-referenced Program Statement and Institution Supplement, I determined that smoking was generally prohibited within the housing unit; however, as smoking areas, I designated the inmate rooms on the upper tier in which all roommates were smokers. To the extent possible, non-smoking inmates were not housed with smoking inmates. If a room was assigned to both smokers and non-smokers, that room was designated as a no-smoking room. While I was the Unit Manager of Unit 3, all 100 level rooms were located on the lower tier and all 200 level rooms were located on the upper tier.

4. While I was Unit Manager of Unit 3, the housing unit was staffed during regular working hours by the members of the unit team, which consisted of one Unit Manager, two Case Managers, two Correctional Counselors and one unit secretary. In addition, numerous members of the institution executive staff and various support staff from other departments within FCI McKean would have occasion to enter and conduct business within the housing unit during regular working hours. Unit 3 was also staffed 24 hours each day by two Unit Officers. One Unit Officer was specifically assigned to the A side of the housing unit, and the other Unit Officer was specifically assigned to the B side of the housing unit (Unit C was divided into two halves, identified as A and B). Each Unit Officer assigned to Unit 3 was responsible for

2

patrolling their specific side of the unit, accounting for inmates assigned to the unit, and tending to safety and security needs for all staff and inmates assigned to that particular side of the unit. All staff within the housing unit were responsible for ensuring the institution rules and regulations were enforced. Among the rules enforced by the institution staff while working within Unit 3 was the rule governing designated smoking areas. If staff observed inmates smoking in non-designated areas, they could address the situation either informally, by reminding inmates of the rules and issuing warnings, or formally, by issuing incident reports. Also, if an inmate observed another inmate smoking in a non-smoking area, the inmate could report the smoking inmate to staff so appropriate action could be taken. If staff found evidence that an inmate was smoking in a non-smoking area, efforts would be made to reassign the inmate to a room on the upper tier, and away from the non-smoking inmates.

   5. The decision to designate the inmate rooms on the upper tier as smoking rooms was based upon the fact that cigarette smoke rises. I determined that non-smokers would be exposed to far less environmental tobacco smoke (ETS) if smoking was restricted to the rooms on the upper tier. Also, because of the various missions of FCI McKean and the transient nature of the inmate population in general, it was virtually impracticable to assign inmates to housing units based solely upon whether they

3

smoked or were non-smokers.

6. Based upon my experience as a Unit Manager, I believed that assigning smokers to rooms on the upper tier was the best solution within a limited number of feasible options.

7. To the best of my recollection, in 1998, inmates assigned to the Special Housing Unit (SHU) at FCI McKean, either in Administrative Detention (AD) or in Disciplinary Segregation (DS) status, were not permitted to smoke inside their cells.

8. I do not recall inmate Demetrius Brown, Register Number 21534-039; however, a review of his Unit History indicates that from July 8, 1997, through January 22, 2000, he was assigned to Unit 3.

9. I do not specifically recall inmate Brown complaining to me about ETS exposure. However, when inmates did come to me with complaints regarding involuntary ETS exposure, I would make every effort to accommodate their needs, such as effecting room re-assignments and directing inmates to smoke in designated smoking areas only.

> I declare under penalty of perjury that the foregoing is true and correct.

Signed, this 9th day of January, 2007.

Daniel Schneider
McKean, Pennsylvania

4