# Exhibit 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEMETRIUS BROWN,             :
                             :
           Plaintiff,        :
                             :
    - v -                    :   C. A. No. 04-379(Erie)
                             :
UNITED STATES DEPARTMENT     :
    OF JUSTICE, et al.,      :
           Defendants..      :

### DECLARATION OF ROBERT REOME

Robert Reome, pursuant to 28 U.S.C. § 1746, declares as follows:

1.  I am currently employed as a Unit Manager of Unit C at the Federal Correctional Institution (FCI), McKean, Pennsylvania, and Units E & F at the Federal Prison Camp (FPC), McKean, Pennsylvania. Prior to this, I was employed from November 26, 1995, until June 2004, as the Unit Manager of Unit A at FCI McKean.[1] I have been employed at FCI McKean since approximately December 1995. I have been employed with the Federal Bureau of Prisons since approximately October 27, 1980.

2.  I am familiar with the Bureau of Prisons and FCI McKean rules and policy governing smoking and non-smoking areas. Between June and July 15, 2004, Bureau of Prisons Program Statement 1640.03, Smoking/No-Smoking Areas (July 1, 1994), and

---

    Unit C was once known as Unit 3. However, sometime in either the late 1990s or early 2000, the housing units converted to an alphabet-based identification system.

1

FCI McKean Institution Supplements 1640.03 (December 8, 1997) and 1640.03 (June 21, 2002), delegated the responsibility for designating indoor smoking areas within inmate housing areas to the Unit Managers of each inmate housing unit. Thus, as Unit Manager of Unit C, I was responsible for designating the smoking areas within Unit C.

3. As an exercise of the discretion vested in me under the above-referenced Program Statement and Institution Supplement, I determined that smoking was generally prohibited within the housing unit; however, I designated as smoking areas, the inmate rooms located on the upper tier in which all roommates were smokers. To the extent possible, non-smoking inmates were not housed with smoking inmates. If a room was assigned to both smokers and non-smokers, that room was designated as a no-smoking room. While I was the Unit Manager of Unit C, all 100 level rooms were located on the lower tier and all 200 level rooms were located on the upper tier.

4. While I was Unit Manager of Unit C, the housing unit was staffed during regular working hours by the members of the unit team, which consisted of one Unit Manager, two Case Managers, two Correctional Counselors and one unit secretary. In addition, numerous members of the institution executive and various support staff from other departments within FCI McKean would have occasion to enter Unit C and conduct business within the unit

during regular working hours. Unit 3 was also staffed 24 hours each day by two Unit Officers. One Unit Officer was specifically assigned to the A side of the housing unit, and the other Unit Officer was specifically assigned to the B side of the housing unit (Unit C was divided into two halves, identified as A and B). Each Unit Officer assigned to Unit C was responsible for patrolling their specific side of the unit, accounting for inmates assigned to the unit, and tending to safety and security needs for all staff and inmates assigned to their particular side of the unit. All staff within Unit C were responsible for ensuring the institution rules and regulations were enforced. Among the rules enforced by the institution staff while working within Unit C was the rule governing designated smoking areas. If staff observed inmates smoking in non-designated areas, they could address the situation either informally, by reminding inmates of the rules and issuing warnings, or formally, by issuing incident reports. Also, if an inmate observed another inmate smoking in a non-smoking area, the inmate could report the smoking inmate to staff so appropriate action could be taken. If staff found evidence that an inmate was smoking in a non-smoking area, efforts would be made to reassign the inmate to a room on the upper tier, and away from the non-smoking inmates.

5. The decision to designate the inmate rooms in the upper tier as smoking rooms was based upon the fact that cigarette

3.

smoke rises. I determined that non-smokers would be exposed to far less environmental tobacco smoke (ETS) if smoking was restricted to the rooms on the upper tier. Also, because of the various missions of FCI McKean and the transient nature of inmates in general, it was virtually impracticable to assign inmates to housing units based solely upon whether they smoked or were non-smokers.

6. Based upon my experience as a Unit Manager, I believed that assigning smokers to rooms on the upper tier was the best solution within a limited number of feasible options.

7. To the best of my recollection, in 1998, inmates assigned to the Special Housing Unit (SHU) at FCI McKean, either in Administrative Detention (AD) or in Disciplinary Segregation (DS) status, were not permitted to smoke inside their cells.

8. I do not recall inmate Demetrius Brown, Register Number 21534-039; however, a review of his Unit History indicates that from January 22, 2000, through October 29, 2004, he was assigned to Unit C.

9. I do not recall receiving complaints from inmate Brown regarding ETS exposure. However, when inmates did come to me with complaints regarding involuntary ETS exposure, I would make every effort to accommodate their needs, such as effecting room re-assignments and directing inmates to smoke in designated smoking areas only.

4

I declare under penalty of perjury that the foregoing is true and correct.

Signed, this _____ day of January, 2007.

_____
Robert Reome
McKean, Pennsylvania

5