IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PENNSYLVANIA
ERIE DIVISION

DEMETRIUS BROWN,            )
    Plaintiff,          )
                        )
                        )
                        )
    v.                  )   C.A. No. 04-379 Erie
                        )
UNITED STATES,              )
U.S. JUSTICE DEPT.,         )
BUREAU OF PRISONS (BOP),    )
FCI McKEAN, HARLEY G. LAPPIN- )
Director of BOP, NEWTON E.  )
KENDIG- Medical Director of BOP)
D. SCOTT DODRILL- Northeast Reg-)
ional Director of BOP, JOHN J. )
LAMANNA- Warden of FCI McKean, )
    Defendants.         )

**AFFIDAVIT OF DEMETRIUS BROWN IN SUPPORT
OF HIS OPPOSITION TO DEFENDANTS MOTION
TO DISMISS OR, ALTERNATIVE MOTION FOR
SUMMARY JUDGMENT**

    I, DEMETRIUS BROWN, hereby affirm and declare under penalty of perjury, the following:

    1. I am the Plaintiff in the above named case. I am currently confined at the Bureau of Prisons Federal Correctional Institution (FCI) RayBrook. I am under sentence of the United States District Court for the District of Minnesota for a term of 360 months. I have been incarcerated for nearly 11 years in which a major portion of that time (7 years) has been served at the Bureau of Prisons Federal Correctional Institution (FCI) McKean.

2. Having entered into federal custody, I was initially incarcerated at FCI McKean beginning July 8, 1997. I was later transferred on October 29, 2004 to where I presently am, FCI RayBrook. It is from the perspective of both my incarcerations at FCI McKean and FCI RayBrook, do I now take account of.

3. I, having personal knowledge of persons, places, things, and events occurring at FCI McKean from July 8, 1997 to October 29, 2004, do so attest concerning the truth and correctness of submitted on behalf of Rosalind Bingham, Monica Recktenwald, Daniel Schneider, Robert Reome, and John J. LaManna.

4. In regards to the Declaration of Rosalind Bingham, I deny that Exhibit 1(e) is true and correct. I deny that Robert Reome was the Unit Manager of Unit C from the start of 1-22-2000 contiuing into 10-29-2004. I affirm that from the year 2000-2003, A. Bermudez was the Unit Manager for Unit C and from January of 2004 to June of 2004, Tina Murphy was the Unit Manager of Unit C. I affirm that before June, 2004, Robert Reome was the Unit Manager of Unit A and after June of 2004, he was the Unit Manager of Unit C.

5. In regards to the Declaration of Rosalind Bingham, I deny that Exhibit 1(g) is true and correct. I deny that the record for Inmate History Quarters is unknown as to an assignment for cell numbers during July 8, 1997 to May 20, 1998. I affirm however, that at some time during that space of time, I was celled in room 209 of Unit 3B (or Unit C, side B).

6. In regards to the Declaration of Monica Recktenwald, I deny that ¶3 is true and correct. I deny that "the exact room assignment for inmates incarcerated at FCI McKean could not be determined." I affirm that each Unit officer maintained a record book for assigning cells. That, cell numbers had always been maintained above door frames and that the institution when examining inmate accountability, determined by bed book counting whether inmates were housed accordingly as assigned.

7. In regards to the Declaration of Daniel Schneider, I deny that ¶3 is true and correct. I deny that Daniel Schneider designated the inmate rooms on the upper tier as smoking areas. I affirm that there is no policy or record other than Daniel Schneider's declaration stating he designated smoking to the upper tiers. I affirm that upon arriving at FCI McKean, I was initially housed in Unit 3B on the upper tier where there was smoking but, later moved to the lower tier where there was smoking also.

8. In regards to the Declaration of Daniel Schneider, I deny that ¶4 is true and correct. I deny that the rules governing designated smoking areas were enforced. I affirm that the enforcement of rules were too little or inadequate to make a difference. I affirm that staff would themselves break the rules against smoking by smoking in the office, in front of door ways, air ducts, and walkways where inmates were forced to pass.

9. In regards to the Declaration of Daniel Schneider, I deny that ¶5 is true and correct. I deny that cigarette smoke, necessarily

rises and that restricting smoking to upper tier rooms would expose non-smokers to far less ETS. I affirm that smoke fumes and that the 4,000 or so ingredients in tobacco smoke does not necessarily rise. I affirm that the separating of smokers from non-smokers by Units would have far exceeded in not exposing non-smoking inmates to tobacco smoke. Further, I deny that it may have been impracticable to assign inmates to housing units based solely upon whether they were smokers or non-smokers. I affirm that separating non-smokers from smokers had never been tried and could not have been judged as a failure where the health and safety of inmates were concerned.

10. In regards to the Declaration of Schneider, I deny that ¶9 is true and correct. I deny that it was necessary for myself to complain to DAniel Schneider about exposure to ETS when expecially I had been documented as a non-smoker. Yet, housed on the upper tier when arriving at FCI McKean. That, it had been evident of my displeasure with smoking due to my status as a non-smoker.

11. In regards to the Declaration of Robert Reome, I deny that ¶3 is true and correct. I deny that Robert Reome designated inmate rooms on upper tier as smoking areas. I affirm there is no policy or record other than Robert Reome's declaration stating he designated smoking to the upper tiers. I affirm that smoking was taking place in both upper and lower tiers before and after the arriving of Robert Reome to Unit C in June of 2004 as its Unit Manager.

12. In regards to the Declaration of Robert Reome, I deny that ¶4 is true and correct. I deny that the rules governing designated smoking areas were enforced. I affirm that the enforcement of rules were too little, or inadequate to make a difference. I affirm that staff, themselves, would break the rules against smoking by smoking in the office, in front of door ways, air ducts, and walkways where inmates were forced to pass.

13. In regards to the Declaration of Robert Reome, I deny that ¶5 is true and correct. I deny that cigarette smoke, necessarily rises and that restricting smoking to supper tier rooms would expose non-smokers to far less ETS. I affirm that smoke fumes and that the 4,000 or so ingredients in tobacco smoke does not necessarily rise. I affirm that separation of smokers from non-smokers by Units would have far exceeded in not exposing non-smoking inmates to tobacco smoke. Further, I deny that it may have been impracticable to assign inmates to housing Units based solely upon whether they were smokers or non-smokers. I affirm that separating non-smokers from smokers had never been tried and could not have been judged as a failure where the health and safety of inmates were concerned.

14. In regards to the Declaration of Robert Reome, I deny that ¶9 is true and correct. I deny that Robert Reome would have been the Unit Manager for Unit C during the time I filed my initial request to be separated from smokers on 12/25/03. I affirm that Robert Reome during the period I initially filed complaint against exposure to

ETS was the Unit Manager for Unit A. I affirm that even after Robert Reome transferred to Unit C, the record is documented that I am a non-smoker and that complaints were and are pending against exposure to ETS.

15. In regards to the Declaration of Dawn Marini, I deny that ¶3d is true and correct. I deny that on September 19, 1997, I sustained a superficial wound to my hand at my work assignment. I deny that I was working with a putty knife or that it slipped and went into my hand. I deny that I received any medical attention for this. I further deny that I am the Brown reported to have accidently cut his hand with a putty knife at work.

16. In regards to the Declaration of Dawn Marini, I deny that ¶3e is true and correct. I deny that on July 9, 2005, a bi-annual physical examination was conducted.

17. In regards to the Declaration of Dawn Marini, I deny that ¶3f is true and correct. I deny that on March 1, 2005, I reported staph exposure.

18. In regards to the Declaration of Dawn Marini, I deny that ¶3g is true and correct. I deny that an examination of the respiratory system; for intestinal infections, or communicable diseases.

19. In regards to the Declaration of Dawn Marini, I deny that ¶3i is true and correct. I deny that the rash (Pityriasis Rosea) developed after I ate sunflower seeds. I affirm that I was unsure as to what to call the disease and as to where it originated from. That, giving clues to Dawn Marini's questions concerning foods, change of

soaps, and clothing last wore, she concluded that none was the cause. That, Dr. Marini then diagnosed me with having Pityriasis Rosea, a skin disease with no definite known cause.

20. In regards to the Declaration of John J. LaMann, I deny that ¶3 is true and correct. I deny that use of tobacco products was guided by Bureau of Prisons regulations, 28 CFR §551.160 et. seq. I deny that FCI McKean's purpose was to protect the health and safety of both staff and inmates, equally. I affirm that staff were protected by smoking policies however, inmates were not protected in that inmates who were non-smokers were exposed to ETS as opposed to staff who were non-smokers.

21. In regards to the Declaration of John J. LaManna, I deny that ¶4 is true and correct. I deny that safety and security needs were effectively considered when designating smoking areas at FCI McKean. I affirm that the unique safety needs of myself as well as others who complained about ETS were ignored. I also affirm that staff would smoke in buildings and while on the compound, so therefore any consideration to enforcing staff members of the designated smoking areas were not considered.

22. In regards to the Declaration of John J. LaManna, I deny that ¶5 is true and correct. I deny that John J. LaManna had discretion to issue Institution Supplement §1640.03, whereby allowing smoking in federal buildings and on federal property. I affirm that Executive Order 13058 forbidded John J. LaManna to allow a smoking policy where smoking would be had by staff and inmates in federal buildings or on federal property.

23. In regards to the Declaration of John J. LaMann, I deny that ¶8 is true and correct. I deny that Inmates found in violation of smoking tobacco products were subject to disciplinary action. I affirm that there was virtually no enforcemetn of smoking policies.

24. In regards to the Magistrate Judge's report and recommendation as to the case of Keith Ellis v. United States of America, first, this case is purely on Tort grounds. While Plaintiff makes grounds under Title II Americans with Disability Act, Bivens, Title V of the ADA for Retaliation, as well as Tort. Second, the Ellis claims survived but, was dismissed for lack of jurisdiction due to the discretionary function exception. In Plaintiff's case, the statute of limitations defense by the Defendants does not request the outright dismissal of his claims as in Ellis. And, in addition Plaintiff's Tort claim makes his case around the mandatory duty of Defendants rather than a discretion. And, lastly Plaintiff survives under his other claims where as to the ADA claim, he was discriminated due to his disabilities and his Bivens claims for constitutional violations in which the Surgeon General has met out that <u>any</u> level of exosure to second-hand smoke is unreasonable. Therefore, the case in Ellis is inopposite to Plaintiff and does not need consideration.

I, <u>DEMETRIUS BROWN</u>, hereby affirm and declare under penalty of perjury, 28 U.S.C. §1746, that the foregoing is true and correct.

3-8-07
Dated                                                      /s/ Demetrius Brown


cc:file
db/db

3/12/07

Dear Clerk of Court;

    Enclosed you will find Proof of Service along with the undersign's Affidavit in Support of his Opposition to Defendants' Motion to Dismiss or, in the Alternative Motion for Summary Judgment. Also, enclosed are Exhibits #1-7 in Support of his Third Amended Complaint. Please file with the Court accordingly. Thank you.

                                            Sincerely,

                                        Demetrius Brown
                                        Reg. No. 21534-039
                                        FCI RayBrook
                                        P.O. Box 9001
                                        RayBrook, NY. 12977

cc:file
db/db

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

DEMETRIUS BROWN,
    Plaintiff,

v.    C.A. No. 04-379 Erie

U.S. JUSTICE DEPT., et. al.,
    Defendants.

### PROOF OF SERVICE

I, DEMETRIUS BROWN, do swear or declare that on this date, March 12 2007, as required by Fed.R.Civ.P., Rule 5, I have served the enclosed AFFIDAVIT OF DEMETRIUS BROWN IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVE MOTION FOR SUMMARY JUDGMENT and EXHIBITS #1-7 in support of his Third Amended Complaint on each party to the above proceeding or that of party's counsel, and on every person required to be served, by depositing an envelope containing the above documents in FCI RayBrook's internal mail system in the United States, mail properly addressed to each of them and with first-class postage prepaid.

The names and addresses of those served are as follows:

MEGAN E. FARRELL          at    700 Grant St. Suite 4000
Assistant U.S. Attorney         Pittsburgh, PA. 15219
Western District of Pennsylvania  (412) 894-7429
                                PA. Id. #76972

I declare under penalty of perjury that the foregoing is true and correct. Executed on  3-12-  , 2007

                                                  /s/ Demetrius Brown