**EXHIBIT 2**

2a. Title II of the Americans with
    Disability Act
2b. District of Columbia Law 8-262
    "Smoking Regulation Amendment Act of 1990"
2c. Department of Justice Regulation on Non-
    Discrimination on the Basis of Disability
    in State and Local Government Services
2d. Department of Justice Regulation on
    Smoking/NonSmoking Areas
2e. Bureau of Prisons Program Statement
    §1640.03
2f. Executive Order 13058
2g. FCI McKean Institution Supplement §1640.03

EXHIBIT 2a

**42 USCS § 12101**

12210. Illegal use of drugs
    (a) In general.
    (b) Rules of construction.
    (c) Health and other services.
    (d) ''Illegal use of drugs'' defined.
12211. Definitions
    (a) Homosexuality and bisexuality.
    (b) Certain conditions.
12212. Alternative means of dispute resolution
12213. Severability

### CROSS REFERENCES

This chapter is referred to in 2 USCS §§ 1302, 1331, 1371, 1434; 3 USCS §§ 402, 421; 16 USCS §§ 410aaa-41, 410aaa-52; 20 USCS §§ 1011, 1140c, 1415, 8507; 23 USCS § 133; 25 USCS § 2005; 26 USCS § 44; 29 USCS §§ 720, 721, 762, 764, 781, 793, 795, 3011; 42 USCS §§ 290bb-34, 608, 1760, 1786, 3796gg-7, 15007, 15024; 49 USCS §§ 5302, 5307, 5314, 5323, 5335, 47102.

## § 12101.  Congressional findings and purposes

**(a) Findings.** The Congress finds that—

(1) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

(6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7) individuals with disabilities are a discrete and insular minority who have

been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society;

(8) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(9) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

**(b) Purpose.** It is the purpose of this Act—

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

(July 26, 1990, P. L. 101-336, § 2, 104 Stat. 328.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**
"This Act", referred to in this section, is Act July 26, 1990, P. L. 101-336, 104 Stat. 327, popularly referred to as the Americans with Disabilities Act of 1990, which appears generally as 42 USCS §§ 12101 et seq. For full classification of such Act, consult USCS Tables volumes.

**Short title:**
Act July 26, 1990, P. L. 101-336, § 1(a), 104 Stat. 327, provides: "This Act [42 USCS §§ 12101 et seq. generally; for full classification, consult USCS Tables volumes] may be cited as the 'Americans with Disabilities Act of 1990'.".

**Other provisions:**
**GAO study of disability-related employment incentives.** Act Dec. 17, 1999, P. L. 106-170, Title III, § 303(a), 113 Stat. 1903, provides:
"(1) Study. As soon as practicable after the date of the enactment of this Act, the Comptroller General of the United States shall undertake a study to assess existing tax credits and other disability-related employment incentives under the Americans with Disabilities Act of 1990 (42 U.S.C. 12101

action under ADA (42 USCS §§ 12101 et seq.), even though he claims he is disabled within meaning of ADA, and food allowances were denied him, where problem with allowances was rectified to his satisfaction within matter of months, because there is no remaining claim that he was denied benefits because of disability. Hook v Mutha (2001, SD NY) 168 F Supp 2d 77.

**13. Miscellaneous**

Individual, who was dismissed, due to hypertension, from mechanic's job which required driving commercial motor vehicles, is not regarded as "having substantially limiting impairment" under Americans with Disabilities Act (42 USCS §§ 12101 et seq.). Murphy v UPS (1999) 527 US 516, 144 L Ed 2d 484, 119 S Ct 2133, 99 CDOS 4857, 99 Daily Journal DAR 6259, 9 AD Cas 691, 1999 Colo J C A R 3749, 12 FLW Fed S 435.

City and state officials shall install curb ramps or slopes on every city street, at any intersection having curbs or other barriers to access, where bids for resurfacing were let after January 26, 1992, where Justice Department regulations promulgated under 42 USCS § 12134 require installation of curb ramps or other sloped areas on "altered" streets, roads, and highways, and advocates for disabled claim this applies to resurfaced streets, because broad interpretation of regulation to include resurfaced streets is consistent with § 12101 statement of purpose specifically identifying "discriminatory effects of architectural barriers" as evil to be addressed. Kinney v Yerusalim (1993, ED Pa) 812 F Supp 547, 1 ADD 369, 2 AD Cas 444, affd (1993, CA3 Pa) 9 F3d 1067, 3 ADD 444, 2 AD Cas 1470, cert den (1994) 511 US 1033, 128 L Ed 2d 196, 114 S Ct 1545, 3 AD Cas 448.

Massachusetts statute, ALM GL c 123 § 18A, requiring patients in state mental health facilities to contribute to cost of representation, when representative is appointed by court, violates due process clause of Fourteenth Amendment and Americans with Disabilities Act, 42 USCS §§ 12101 et seq. T.P. v DuBois (1993, DC Mass) 843 F Supp 775, 5 ADD 764, 3 AD Cas 288.

In action alleging that provision of Georgia's Medicaid plan, by providing reimbursement for necessary liquid diet only to individuals in nursing homes, has tendency to isolate and segregate individuals with disabilities in contravention of intent of 42 USCS § 12101 to end such segregation, section

cited by plaintiff does not itself provide cause of action to him. Hodges v Smith (1995, ND Ga) 910 F Supp 646, 49 Soc Sec Rep Serv 866, 13 ADD 1100, 5 AD Cas 229.

Medical technologist's disclosure of his HIV status to supervisor was not result of job-related inquiry that was consistent with business necessity, as would require employer to keep confidential such disclosure under § 12101, where before disclosure employer made no inquiry into technologist's health, and information was obtained through private medical exam, which was non-work related. Ballard v Healthsouth Corp. (2001, ND Tex) 147 F Supp 2d 529, 11 AD Cas 1717.

In employee's suit for discrimination due to his disability under Americans with Disability Act (ADA), 42 USCS § 12101 et seq., where collective bargaining agreement covering employee prohibited discrimination against any employee, and employee alleged that he was fired, reinstated, and then fired again in retaliation for earlier discrimination claims, court found that (1) employee's hybrid claim under 29 USCS § 185 was barred by six month limitations period; (2) employee's claim filed with Maine Human Rights Commission (MHRC) gave adequate notice to union of employee's complaints, including his claim that union did not fairly represent him at second arbitration so as to constitute exhaustion of his administrative remedies; (3) employee's ADA claim adequately stated claims that union deliberately acquiesced in employer's discrimination and that union breached its duty of fair representation; and (4) his claim of retaliation was adequate where he alleged that union failed to assist him in grievance process. Greenier v Pace, Local No. 1188 (2002, DC Me) 201 F Supp 2d 172, 13 AD Cas 127.

Action brought by physician who claimed his license was revoked in violation of Americans with Disabilities Act, 42 USCS § 12101 et seq., was dismissed as barred by Rooker-Feldman doctrine. Harris v N.Y. State Dep't of Health (2002, SD NY) 202 F Supp 2d 143.

Where employee was assigned to smoke-free division to accommodate her asthma, under ADA, if she wished accommodation of being assigned to "totally" smoke-free building she had to make that request; employer, who would not be held liable for failing to provide accommodation that employee had not requested in first place, was granted summary judgment. Thorner-Green v N.Y. City Dep't of Corr. (2002, ED NY) 207 F Supp 2d 11.

## § 12102.  Definitions

As used in this Act:

> (1) Auxiliary aids and services. The term "auxiliary aids and services" includes—

(A) qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments;

(B) qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments;

(C) acquisition or modification of equipment or devices; and

(D) other similar services and actions.

(2) Disability. The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

(3) State. The term "State" means each of the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands, the Trust Territory of the Pacific Islands, and the Commonwealth of the Northern Mariana Islands.

(July 26, 1990, P. L. 101-336, § 3, 104 Stat. 329.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**
"This Act", referred to in this section, is Act July 26, 1990, P. L. 101-336, 104 Stat. 327, popularly referred to as the Americans with Disabilities Act of 1990, which appears generally as 42 USCS §§ 12101 et seq. For full classification, consult USCS Tables volumes.

**Other provisions:**
**Termination of Trust Territory of the Pacific Islands.** For termination of Trust Territory of the Pacific Islands, see note preceding 48 USCS § 1681.

### CROSS REFERENCES

This section is referred to in 20 USCS §§ 1003, 1228c, 2302, 9202; 29 USCS § 2801; 40 USCS § 550; 47 USCS § 255; 42 USCS §§ 280B-1c, 3796gg-7, 3796hh, 12211, 12581, 12594.

### RESEARCH GUIDE

**Federal Procedure:**
8 Moore's Federal Practice (Matthew Bender 3d ed.), Jury Trial of Right § 38.33.

10 Moore's Federal Practice (Matthew Bender 3d ed.), Judgments; Costs § 54.171.

19 Moore's Federal Practice (Matthew Bender 3d ed.), Reviewability of Issues § 205.07.

6 Fed Proc L Ed, Civil Rights §§ 344, 346.

**Am Jur:**
45A Am Jur 2d, Job Discrimination §§ 16–21, 27–104, 168–213.

45B Am Jur 2d, Job Discrimination § 821.

45C Am Jur 2d, Job Discrimination §§ 2539–2541, 2543, 2544, 2654, 2657, 2661, 2664, 2699, 2717, 2733, 2798.

42 USCS § 12131                                    PUBLIC HEALTH AND WELFARE

### § 12131. Definition

As used in this title:

(1) Public entity. The term "public entity" means—

(A) any State or local government;

(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 USCS § 24102(4)]).

(2) Qualified individual with a disability. The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

(July 26, 1990, P. L. 101-336, Title II, Subtitle A, § 201, 104 Stat. 337.)

#### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This title", referred to in this section, is Title II of Act July 26, 1990, P. L. 101-336, which appears as 42 USCS §§ 12131 et seq.

**Explanatory notes:**

In para. (1)(C), "49 USCS § 24102(4)" has been inserted in brackets pursuant to § 6(b) of Act July 5, 1994, P. L. 103-272, which appears as a note preceding 49 USCS § 101. Section 1 of such Act enacted Subtitles II, III, and V–X of Title 49 as positive law, and § 6(b) of such Act provided that a reference to a law replaced by § 1 of such Act is deemed to refer to the corresponding provision enacted by such Act.

**Effective date of section:**

This section became effective 18 months after enactment, pursuant to § 205 of Act July 26, 1990, P. L. 101-336, which appears as a note to this section.

**Other provisions:**

**Effective date of 42 USCS §§ 12131–12134.** Act July 26, 1990, P. L. 101-336, Title II, Subtitle A, § 205, 104 Stat. 338, provides:

"(a) General rule. Except as provided in subsection (b), this subtitle [42 USCS §§ 12131 et seq.] shall become effective 18 months after the date of enactment of this Act.

"(b) Exception. Section 204 [42 USCS § 12134] shall become effective on the date of enactment of this Act.".

**Community-based alternatives for individuals with disabilities.** Ex. Or. No. 13217 of June 18, 2001, 66 Fed. Reg. 33155 provides:

"By the authority vested in me as President by the Constitution and the laws of the United States of America, and in order to place qualified individuals with disabilities in community settings whenever appropriate, it is hereby ordered as follows:

of N.Y. Health Sci. Ctr (2001, ND NY) 166 F Supp 2d 663.

Where disabled persons alleged State violated Americans with Disabilities Act of 1990 (ADA), 42 USCS §§ 12131, et seq. by collecting fees for parking placards, proposed class of approximately 75,000

individuals met numerosity, commonality, and typicality requirements for class certification under Fed. R. Civ. P. 23(a). Marcus v Dep't of Revenue (2002, DC Kan) 206 FRD 509, 13 AD Cas 55, costs/fees proceeding, motion gr, dismd (2002, DC Kan) 209 F Supp 2d 1179.

## § 12132. Discrimination

Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

(July 26, 1990, P. L. 101-336, Title II, Subtitle A, § 202, 104 Stat. 337.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This title", referred to in this section, is Title II of Act July 26, 1990, P. L. 101-336, 104 Stat. 337, which appears as 42 USCS §§ 12131 et seq.

**Effective date of section:**

This section became effective 18 months after enactment, pursuant to § 205 of Act July 26, 1990, P. L. 101-336, which appears as a note to 42 USCS § 12131.

### CROSS REFERENCES

This section is referred to in 2 USCS § 1331; 3 USCS § 421; 42 USCS §§ 12133, 12142, 12143, 12144, 12146, 12147, 12148, 12162.

### RESEARCH GUIDE

**Federal Procedure:**

6 Moore's Federal Practice (Matthew Bender 3d ed.), Intervention § 24.02.

21 Fed Proc L Ed, Job Discrimination § 50:212.

32 Fed Proc L Ed, Transportation § 76:163.

**Am Jur:**

45A Am Jur 2d, Job Discrimination §§ 29, 36–39, 96.

61A Am Jur 2d, Pleading § 777.

Am Jur 2d, New Topic Service, Americans with Disabilities Act §§ 2, 251, 254, 259, 260, 263, 284, 307, 322, 332, 383, 391, 394, 405, 414, 431, 433, 440, 452, 455, 458–460, 466, 468, 471, 473, 488, 502, 613, 647, 726.

**Forms:**

5 Fed Procedural Forms L Ed, Civil Rights §§ 10:245–253, 321, 341.

11B Am Jur Legal Forms 2d, Leases of Real Property §§ 161:971–981.

**Annotations:**

Who is qualified individual with disability, for purposes of Americans with Disabilities Act of 1990, as amended (ADA) (42 USCS §§ 12101 et seq.)—Supreme Court cases. 143 L Ed 2d 1133.

The Propriety, Under ERISA (29 USCS §§ 1001 et seq.) and the Americans With Disabilities Act (42 USCS §§ 12101 et seq.) of Capping Health Insurance Coverage for HIV–Related Claims. 131 ALR Fed 191.

flicted with Americans With Disabilities Act because §§ 21-24 prevented individuals who could not live on farm or perform both daily or routine substantial physical exertion and administration from owning in limited liability format South Dakota agricultural land for feeding of livestock if such livestock are purchased in spring and sold in fall. S.D. Farm Bureau v Hazeltine (2002, SD) 2002 DSD 13, 202 F Supp 2d 1020, 13 AD Cas 136.

ADA (42 USCS §§ 12101 et seq.) does not prevent state supreme court from disciplining attorney who suffered from depression for numerous acts of misconduct. People v Reynolds (1997, Colo) 933 P2d 1295, 21 ADD 762.

State conservatorship laws do not violate ADA (42 USCS §§ 12101 et seq.) since statutes do not act to deny ward any benefits or to exclude him from any program but merely seek to protect ward and his property when he cannot do so himself. State ex rel. McCormick v Burson (1994, Tenn App) 894 SW2d 739, 7 ADD 54, app den (Feb 21, 1995).

State lottery commission, as public entity that furnished lottery devices and services through contract vendors, had legal duty under Title II of ADA (42 USCS §§ 12131 et seq.) to issue appropriate administrative rules and regulations that require its lottery retail licensees to comply with ADA and make their facilities accessible to persons with disabilities as condition of licensure. Paxton v State Dep't of Tax & Revenue (1994) 192 W Va 213, 451 SE2d 779, 7 ADD 894, 3 AD Cas 1689.

ADA Title II (42 USCS §§ 12131 et seq.) was intended to prevent consistent and discriminatory denial of access and does not apply to isolated act of simple negligence by correctional facility in failing to clear ice and snow from handicapped parking area. Pack v Arkansas Valley Correctional Facility (1995, Colo App) 894 P2d 34, 10 ADD 418, 4 AD Cas 248, reh den (Mar 16, 1995).

## § 12133. Enforcement

The remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. 794a) shall be the remedies, procedures, and rights this title provides to any person alleging discrimination on the basis of disability in violation of section 202 [42 USCS § 12132].

(July 26, 1990, P. L. 101-336, Title II, Subtitle A, § 203, 104 Stat. 337.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This title", referred to in this section, is Title II of Act July 26, 1990, P. L. 101-336, 104 Stat. 337, which appears as 42 USCS §§ 12131 et seq.

**Effective date of section:**

This section became effective 18 months after enactment, pursuant to § 205 of Act July 26, 1990, P. L. 101-336, which appears as a note to 42 USCS § 12131.

### CROSS REFERENCES

This section is referred to in 2 USCS § 1331; 3 USCS § 421; 42 USCS §§ 12203, 12209.

### RESEARCH GUIDE

**Federal Procedure:**

6 Moore's Federal Practice (Matthew Bender 3d ed.), Intervention § 24.02.

8 Moore's Federal Practice (Matthew Bender 3d ed.), Jury Trial of Right § 38.33.

6 Fed Proc L Ed, Civil Rights § 11:347.

21 Fed Proc L Ed, Job Discrimination § 50:212.

**Am Jur:**

45A Am Jur 2d, Job Discrimination § 29.

Am Jur 2d, New Topic Service, Americans with Disabilities Act §§ 2, 251, 254, 259, 260, 263, 273, 284, 304, 307, 322, 332, 433, 613, 647, 726.

OPPORTUNITIES FOR DISABLED                                   **42 USCS § 12134**

## § 12134. Regulations

(a) **In general.** Not later than 1 year after the date of enactment of this Act [enacted July 26, 1990], the Attorney General shall promulgate regulations in an accessible format that implement this subtitle. Such regulations shall not include any matter within the scope of the authority of the Secretary of Transportation under section 223, 229, or 244 [42 USCS § 12143, 12149, or 12164].

(b) **Relationship to other regulations.** Except for "program accessibility, existing facilities", and "communications", regulations under subsection (a) shall be consistent with this Act and with the coordination regulations under part 41 of title 28, Code of Federal Regulations (as promulgated by the Department of Health, Education, and Welfare on January 13, 1978), applicable to recipients of Federal financial assistance under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794). With respect to "program accessibility, existing facilities", and "communications", such regulations shall be consistent with regulations and analysis as in part 39 of title 28 of the Code of Federal Regulations, applicable to federally conducted activities under such section 504.

(c) **Standards.** Regulations under subsection (a) shall include standards applicable to facilities and vehicles covered by this subtitle, other than facilities, stations, rail passenger cars, and vehicles covered by subtitle B. Such standards shall be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board in accordance with section 504(a) of this Act [42 USCS § 12204(a)].

(July 26, 1990, P. L. 101-336, Title II, Subtitle A, § 204, 104 Stat. 337.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This subtitle", referred to in this section, is Subtitle A of Title II of Act July 26, 1990, P. L. 101-336, 104 Stat. 337, which appears as 42 USCS §§ 12131 et seq.

"This Act", referred to in this section, is Act July 26, 1990, P. L. 101-336, 104 Stat. 327, popularly referred to as the Americans with Disabilities Act of 1990, which appears generally as 42 USCS §§ 12101 et seq. For full classification, consult USCS Tables volumes.

"Subtitle B", referred to in this section, is Subtitle B of Title II of Act July 26, 1990, P. L. 101-336, 104 Stat. 338, which appears as 42 USCS §§ 12141 et seq.

**Effective date of section:**

This section became effective on enactment, pursuant to § 205 of Act July 26, 1990, P. L. 101-336, which appears as a note to 42 USCS § 12131.

### CODE OF FEDERAL REGULATIONS

Office of Thrift Supervision, Department of the Treasury—Contracting outreach programs, 12 CFR Part 517.

Department of Justice–Nondiscrimination on the basis of disability in State and local government services, 28 CFR Part 35.

5

**42 USCS § 12202**                                    PUBLIC HEALTH AND WELFARE

## § 12202.  State immunity.

A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act. In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

(July 26, 1990, P. L. 101-336, Title V, § 502, 104 Stat. 370.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This Act", referred to in this section, is Act July 26, 1990, P. L. 101-336, 104 Stat. 327, popularly referred to as the Americans with Disabilities Act of 1990, which appears generally as 42 USCS §§ 12101 et seq. For full classification, consult USCS Tables volumes.

### CROSS REFERENCES

This section is referred to in 29 USCS §§ 791, 793, 794.

### RESEARCH GUIDE

**Federal Procedure:**

1 Fed Proc L Ed, Access to District Courts § 1:487.
6 Fed Proc L Ed, Civil Rights § 11:347.

**Am Jur:**

Am Jur 2d, New Topic Service, Americans with Disabilities Act §§ 181, 224, 308, 610. 781.

**Forms:**

11B Am Jur Legal Forms 2d, Leases of Real Property §§ 161:971–981.

### INTERPRETIVE NOTES AND DECISIONS

1. Eleventh Amendment immunity
2. —Constitutionality of abrogation

**1. Eleventh Amendment immunity**

Although units of local governments, such as cities and counties, are "state actors" for purposes of Federal Constitution's Fourteenth Amendment, Constitution's Eleventh Amendment does not extend its state immunity from suit by private individuals in federal court to units of local government; these entities are subject to private claims for damages under Americans with Disabilities Act (42 USCS §§ 12101 et seq.) without Congress' ever having to rely on § 5 of the Fourteenth Amendment to render them so. Board of Trustees v Garrett (2001) 531 US 356, 148 L Ed 2d 866, 121 S Ct 955, 2001 CDOS 1471, 2001 Daily Journal DAR 1857, 11 AD Cas 737, 2001 Colo J C A R 968, 14 FLW Fed S 92 (criticized in Adam v Auditor of Ohio (2002, ND Ohio) 2002 US Dist LEXIS 20187).

Eleventh Amendment provides state employers with immunity from suit for ADA (42 USCS §§ 12101 et seq.) violations. Palesch v Missouri Comm'n on Human Rights (2000, CA8 Mo) 233 F3d 560, 85 BNA FEP Cas 75, 81 CCH EPD ¶ 40680.

States enjoy Eleventh Amendment immunity from suits brought in federal court by private individuals seeking money damages under Title V of ADA (42 USCS § 12203), at least where claims are predicated on alleged violations of Title I (42 USCS §§ 12111 et seq.). Demshki v Monteith (2001, CA9 Cal) 255 F3d 986, 2001 CDOS 5548, 2001 Daily Journal DAR 6849, 11 AD Cas 1702.

Colorado was entitled to Eleventh Amendment immunity with regard to plaintiffs' claims that fee charged by state for handicapped parking placards violated ADA (42 USCS §§ 12101 et seq.). Thompson v Colorado (2001, CA10 Colo) 258 F3d 1241, 12 AD Cas 168, 2001 Colo J C A R 3954, amd, reh den (2001, CA10 Colo) 13 AD Cas 192, 2001 Colo

Robinson v Kansas (2000, DC Kan) 117 F Supp 2d 1124).

Section 12202 of ADA (42 USCS § 12202) did not validly abrogate state's' sovereign immunity. Reickenbacker v Foster (2001, CA5 La) 274 F3d 974, 12 AD Cas 916 (criticized in Mitchell v Mass. Dep't of Corr. (2002, DC Mass) 190 F Supp 2d 204) and (criticized in Kiman v N.H. Dep't of Corr. (2002, CA1 NH) 301 F3d 13, 13 AD Cas 783).

Congress did not act pursuant to valid grant of power when it attempted to abrogate state's immunity under ADA (42 USCS § 12202). Garrett v Univ. of Ala. at Birmingham Bd. of Trs. (2001, CA11 Ala) 276 F3d 1227, 12 AD Cas 1119, 15 FLW Fed C 167.

Regardless of whether general abrogation of state immunity for all actions under Title II of Americans with Disabilities Act, 42 USCS § 12131 et seq., exceeded congressional authority, or whether such abrogation applied to actions alleging misconduct which was not unconstitutional, it was clearly within remedial power of Congress under U.S. Const. amend XIV, § 5, to subject state corrections department and officials to prisoner's suit alleging violation of constitutional ban against cruel and unusual punishment based on their alleged failure to accommodate prisoner's disabling disease. Kiman v N.H. Dep't of Corr. (2002, CA1 NH) 301 F3d 13, 13 AD Cas 783.

Congress is within its remedial powers in subjecting states to private suit under Title II of Americans with Disabilities Act, 42 USCS § 12131 et seq., at least as Title II is applied to cases in which court identifies constitutional violation by state. Kiman v N.H. Dep't of Corr. (2002, CA1 NH) 301 F3d 13, 13 AD Cas 783.

State transportation department employee's ADA (42 USCS §§ 12101 et seq.) claim is dismissed, even though 42 USCS § 12202 clearly was intended to abrogate states' Eleventh Amendment immunity, because such abrogation was not valid exercise of Congress's power under § 5 of Fourteenth Amendment. Cooley v Mississippi DOT (2000, SD Miss) 96 F Supp 2d 565, 10 AD Cas 1024 (criticized in Cisneros v Wilson (2000, CA10 NM) 226 F3d 1113, 10 AD Cas 1668, 2000 Colo J C A R 5271) and affd without op (2001, CA5 Miss) 254 F3d 70.

Virginia is immune from suit by state inmate complaining of disability discrimination, where ADA (42 USCS §§ 12101 et seq.) creates new substantive rights and clearly exceeds scope of Fourteenth Amendment, because Title II (42 USCS §§ 12131 et seq.) of ADA is not appropriate legislation under Congress's power under § 5 of Fourteenth Amendment, and attempt to abrogate states' Eleventh Amendment immunity in § 12202 must fail. Bane v Virginia Dep't of Corrections (2000, WD Va) 110 F Supp 2d 469.

Hearing-impaired doctor's claim that Puerto Rico failed to provide him with reasonable accommodation during court hearing is dismissed, even though it is clear Congress stated its unequivocal intent to abrogate states' sovereign immunity when it enacted ADA (42 USCS §§ 12101 et seq.), where it appears Congress's desire was to achieve consistency between federally funded programs covered by Rehabilitation Act (29 USCS §§ 701 et seq.) and other government programs, because these suggestions do not serve to extend Congress's remedial authority under § 5 of Fourteenth Amendment, and Puerto Rico enjoys Eleventh Amendment immunity. Badillo-Santiago v Andreu-Garcia (2001, DC Puerto Rico) 167 F Supp 2d 194, 12 AD Cas 868.

## § 12203. Prohibition against retaliation and coercion

(a) **Retaliation.** No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

(b) **Interference, coercion, or intimidation.** It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

(c) **Remedies and procedures.** The remedies and procedures available under sections 107, 203, and 308 of this Act [42 USCS §§ 12117, 12133, 12188] shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to title I, title II and title III [42 USCS §§ 12111 et seq., 12131 et seq., 12181 et seq.], respectively.

(July 26, 1990, P. L. 101-336, Title V, § 503, 104 Stat. 370.)

**42 USCS § 12209**                    PUBLIC HEALTH AND WELFARE

### CROSS REFERENCES

This section is referred to in 2 USCS § 1435.

### RESEARCH GUIDE

**Federal Procedure:**
21 Fed Proc L Ed, Job Discrimination §§ 50:305, 306.

**Am Jur:**
45A Am Jur 2d, Job Discrimination § 71.
45B Am Jur 2d, Job Discrimination § 1762.

**Forms:**
11B Am Jur Legal Forms 2d, Leases of Real Property §§ 161:971–981.

**Law Review Articles:**
Oyer; Schaefer. Sorting, Quotas, and the Civil Rights Act of 1991: who hires when it's hard to fire? 45 JL & Econ 41, April 2002.

## § 12210.  Illegal use of drugs

**(a) In general.** For purposes of this Act, the term "individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.

**(b) Rules of construction.** Nothing in subsection (a) shall be construed to exclude as an individual with a disability an individual who—

(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

(2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or

(3) is erroneously regarded as engaging in such use, but is not engaging in such use;

except that it shall not be a violation of this Act for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in paragraph (1) or (2) is no longer engaging in the illegal use of drugs; however, nothing in this section shall be construed to encourage, prohibit, restrict, or authorize the conducting of testing for the illegal use of drugs.

**(c) Health and other services.** Notwithstanding subsection (a) and section 511(b)(3) [42 USCS § 12211(b)(3)], an individual shall not be denied health services, or services provided in connection with drug rehabilitation, on the basis of the current illegal use of drugs if the individual is otherwise entitled to such services.

**(d) "Illegal use of drugs" defined.** (1) In general. The term "illegal use of drugs" means the use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act (21 U.S.C. 812). Such term does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.

OPPORTUNITIES FOR DISABLED                    **42 USCS § 12210, n 2**

(2) Drugs. The term "drug" means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act [21 USCS § 812].

(July 26, 1990, P. L. 101-336, Title V, § 510, 104 Stat. 375.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This Act", referred to in this section, is Act July 26, 1990, P. L. 101-336, 104 Stat. 327, popularly referred to as the Americans with Disabilities Act of 1990, which appears generally as 42 USCS §§ 12101 et seq. For full classification, consult USCS Tables volumes.

### CROSS REFERENCES

This section is referred to in 29 USCS §§ 791, 793, 794.

### RESEARCH GUIDE

**Am Jur:**

45A Am Jur 2d, Job Discrimination §§ 168–213, 406.

Am Jur 2d, New Topic Service, Americans with Disabilities Act §§ 2, 56, 105, 656, 660.

**Forms:**

11B Am Jur Legal Forms 2d, Leases of Real Property §§ 161:971–981.

**Law Review Articles:**

Addiction as disability: the protection of alcoholics and drug addicts under the Americans with Disabilities Act of 1990. 44 Vand L Rev 713, April 1991.

### INTERPRETIVE NOTES AND DECISIONS

1. Current drug user
2. Drug rehabilitation services

**1. Current drug user**

Individual may be considered "current drug user" and therefore not protected by ADA (42 USCS §§ 12101 et seq.), even though he was participating in drug rehabilitation program and did not use drugs on day in question, where drug use was sufficiently recent to justify reasonable belief that it was ongoing problem rather than past problem. Wormley v Arkla, Inc. (1994, ED Ark) 871 F Supp 1079, 8 ADD 465, 3 AD Cas 1703, 66 BNA FEP Cas 1205.

Rehabilitation center's complaint alleging that city zoning appeals board discriminated against it due to animus against drug-addicted individuals may proceed, even assuming that phrase "currently engaging in illegal use of drugs" would have some application in context of governmental action impacting availability of drug rehabilitation services, where center's potential clients are for most part unknown, because it cannot be said at this stage of litigation that center's potential clients are current drug users precluded from protection of ADA (42 USCS

§§ 12101 et seq.) by § 12210(a). Discovery House, Inc. v Consolidated City of Indianapolis (1999, ND Ind) 43 F Supp 2d 997 (criticized in Pearson v Indiana High Sch. Ath. Ass'n (2000, SD Ind) 2000 US Dist LEXIS 11913) and (criticized in Turner v Marion County Sheriff Dep't (2000, SD Ind) 94 F Supp 2d 966) and (criticized in Boczar v Kingen (2000, SD Ind) 2000 US Dist LEXIS 11615) and (criticized in Curry v Consol. City of Indianapolis (2002, SD Ind) 2002 US Dist LEXIS 7083).

**2. Drug rehabilitation services**

Individuals participating in drug rehabilitation program which did not tolerate drug use were "qualified individuals" within meaning of ADA (42 USCS §§ 12101 et seq.), and inevitable small percentage of failures who were not drug-free did not defeat rights of majority of participants who were drug-free and therefore disabled under statute. Innovative Health Sys. v City of White Plains (1997, CA2 NY) 117 F3d 37, 23 ADD 197, 7 AD Cas 1284 (criticized in Clark v Chicago (2000, ND Ill) 2000 US Dist LEXIS 21515).

ADA § 510(c) (42 USCS § 12210(c)) does not

Case 1:04-cv-00379-SJM-SPB Document 32-3 Filed 03/15/2007 Page 15 of 53

obligate employer to refer employee found in possession of marijuana to employee assistance program for drug rehabilitation where employee never contacted program for help, and employee was therefore not "entitled" to receive drug rehabilitation services since he had not applied for program or met its admissions criteria. Baustian v Louisiana (1996, ED La) 929 F Supp 980, 16 ADD 461, 5 AD Cas 1886, subsequent app (1997, CA5 La) 108 F3d 332.

## § 12211. Definitions

**(a) Homosexuality and bisexuality.** For purposes of the definition of "disability" in section 3(2), [42 USCS § 12102(2)], homosexuality and bisexuality are not impairments and as such are not disabilities under this Act.

**(b) Certain conditions.** Under this Act, the term "disability" shall not include—

(1) transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders;

(2) compulsive gambling, kleptomania, or pyromania; or

(3) psychoactive substance use disorders resulting from current illegal use of drugs.

(July 26, 1990, P. L. 101-336, Title V, § 511, 104 Stat. 376.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

"This Act", referred to in this section, is Act July 26, 1990, P. L. 101-336, 104 Stat. 327, popularly referred to as the Americans with Disabilities Act of 1990, which appears generally as 42 USCS §§ 12101 et seq. For full classification, consult USCS Tables volumes.

### RESEARCH GUIDE

**Am Jur:**

45A Am Jur 2d, Job Discrimination §§ 168–213.

Am Jur 2d, New Topic Service, Americans with Disabilities Act §§ 2, 4, 6, 7, 216, 660.

**Forms:**

11B Am Jur Legal Forms 2d, Leases of Real Property §§ 161:971–981.

### INTERPRETIVE NOTES AND DECISIONS

ADA (42 USCS §§ 12101 et seq.) does not recognize transsexualism as covered disability, but rather specifically exempts this condition from coverage. James v Ranch Mart Hardware (1994, DC Kan) 8 ADD 232, 3 AD Cas 1855, 66 BNA FEP Cas 1338.

## § 12212. Alternative means of dispute resolution

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under this Act.

(July 26, 1990, P. L. 101-336, Title V, § 513, 104 Stat. 377.)

EXHIBIT 2b

# SUBTITLE H
# TOBACCO SMOKING, SALES, DISTRIBUTION, REGULATION, AND SETTLEMENT.

## CHAPTER 17

### RESTRICTIONS ON TOBACCO SMOKING.

#### Subchapter I.   General.

Section
1701.    Findings and purpose.
1702.    Definitions.
1703.    Smoking restrictions.
1703.01.  Designated nonsmoking areas in restaurants; new construction and major renovation to existing restaurants; smoking areas.
1703.02.  Regulation of smoking in any District of Columbia workplace.
1703.03.  Prohibition of employment discrimination on the basis of tobacco use.
1704.    "No Smoking" signs.
1705.    Enforcement.
1706.    Penalties.
1707.    Severability.
1708.    Exceptions.
1709.    Tobacco smoking education and smoking cessation programs.
1710.    Smoking prohibitions pursuant to existing law.

#### Subchapter II.   Distribution of Free Cigarettes.

1731.    Distribution of free cigarettes prohibited;  penalty.

#### SUBCHAPTER I.   GENERAL.

### §–1701.   Findings and purpose.

(a) The Council of the District of Columbia finds that the inhalation of concentrated smoke resulting from the smoking of tobacco in facilities in which the public congregates is a clear danger to health and a cause of inconvenience and discomfort to persons present in such facilities.

(b) The purpose of this subchapter is to protect the public health, comfort, and environment by prohibiting smoking in certain facilities, vehicles, and restaurants open to or used by the general public.

(c) Except to the extent that § 8 of D.C. Law 3–22 modifies the Fire Prevention Code approved pursuant to the Construction Codes Approval and Amendments Act of 1986, this subchapter is intended to complement the provisions of Part 2 of those regulations and the provisions of §§ 35–251 to 35–253, which regulate public conduct on public passenger vehicles.  It is not the intent of this subchapter to derogate in any manner from the provisions of the Fire Prevention Code approved pursuant to the Construction Codes Approval and Amendments Act of 1986 or from § 35–251(b)(1).

(Mar. 28, 1979, D.C. Law 3–22, § 2, 26 DCR 390; Mar. 21, 1987, D.C. Law 6–216, § 3(g), 34 DCR 1072; Mar. 29, 1988, D.C. Law 7–100, § 2(a), 35 DCR 1182.)

663

**Notes of Decisions**

general 1

___

**In general**

Nonsmoking inmates, who were in custody of endant District of Columbia Department of rrections, and who alleged that defendant lated their Eighth Amendment and statutory hts by exposing them to environmental tobac-smoke (ETS), commonly known as second-and smoke, were entitled to permanent injunc-in requiring defendant to take all steps neces-ty to assure that plaintiff inmates would be

assigned sleeping quarters with other nonsmok-ers and to otherwise enforce its nonsmoking policy in those areas where plaintiff inmates were compelled to be; thus, where it was re-quired for them to use common areas with smoking prisoners, institution would be re-quired to enforce its nonsmoking policy. U.S.C.A. Const.Amend. 8; D.C.Code 1981, § 6–911 et seq. Crowder v. District of Colum-bia, 1997, 959 F.Supp. 6, reversed 139 F.3d 940, 329 U.S.App.D.C. 247, certiorari denied 119 S.Ct. 125, 525 U.S. 851, 142 L.Ed.2d 101. Civil Rights ⟺ 265

## 7–1702. Definitions.

For the purpose of this subchapter:

(1) "Educational facility" means any enclosed indoor area used primarily as a library or for instruction of enrolled students, including day care centers, nursery schools, elementary schools, and secondary schools, except smoking lounges or specific smoking areas approved by the principal or president of the school, college, or university pursuant to guidelines established by the Board of Education, in the case of a public school, or by the trustees or other governing body, in the case of a college, university, or private educational institution. The term "educational facility" shall include all enclosed indoor areas supportive of instruction, including, but not limited to, classrooms, cafeterias, study areas and libraries, but excluding faculty lounges and specific areas approved by the principal of a given school pursuant to guidelines established by the Superintendent of Schools or the head of such private institutions.

(2) "Health care facility" means any institution providing individual care or treatment of diseases or other medical, physiological, or psychological conditions, including, but not limited to, hospitals, clinics, laboratories, nursing homes or homes for the aged or chronically ill, but excluding private medical offices.

(3) "Mayor" means the Mayor of the District of Columbia or his designated agent.

(4) "Person" means any individual, firm, partnership, association, corpora-tion, company or organization of any kind, including a government agency to which the health and safety laws of the District of Columbia may be applied.

(5) "Restaurant" means a restaurant as defined in § 25–101(43), and any other establishments licensed by the District of Columbia in the business of preparing or serving food to the public. The term "restaurant" shall include coffee shops, cafeterias, luncheonettes, eateries, and soda fountains. The term "restaurant" shall not include sidewalks, terraces, or space used by restaurants to provide outdoor facilities, nightclubs, or taverns.

(6) "Retail store" means any establishment whose primary purpose is to sell or offer for sale to consumers, not for resale, any goods, wares, merchan-dise or food for consumption off the premises, and all activities, operations

§ 7-1702                                                    HEALTH CARE AND SAFE

and services connected therewith or incidental thereto. The term "re
store" shall not include separate areas of a retail store which are used a
restaurant.

(7) "Smoking" or "to smoke" means the act of puffing, having in, o
possession, holding or carrying a lighted or smoldering cigar, cigarette, p
or smoking equipment of any kind or lighting a cigar, cigarette, pip
smoking equipment of any kind.

(Sept. 28, 1979, D.C. Law 3–22, § 3, 26 DCR 390; Mar. 29, 1988, D.C. Law 7–
§ 2(b), 35 DCR 1182.)

### Historical and Statutory Notes

**Prior Codifications**
  1981 Ed., § 6–912.
  1973 Ed., § 6–822.

**Legislative History of Laws**
  For legislative history of D.C. Law 3–22, see
Historical and Statutory Notes following
§ 7–1701.

  For legislative history of D.C. Law 7–100
Historical and Statutory Notes follo
§ 7–1703.01.

**Delegation of Authority**
  Delegation of authority under D.C. Law 3
the District of Columbia Smoking Restri
Act of 1979, see Mayor's Order 90–192, De
ber 13, 1990.

### Cross References

**Section References**

This section is referred to in § 7–1703.

### Library References

**Key Numbers**
  Health and Environment ⟜25.6(5.1).
  Westlaw Key Number Search: 199k25.6(5.1).

**Encyclopedias**
  C.J.S. Health and Environment §§ 91, 129 to
  130.

**Other References**
  1990 WESTLAW Citations 360240.

## § 7-1703.  Smoking restrictions.

Smoking shall be prohibited in the following:

(1) Any elevator, except in a single-family dwelling;

(2) Any public selling area of a retail store, except in a tobacco shop
store primarily concerned with selling tobacco and smoking equipmen

(3) Any public assembly or hearing room which is owned or leased by a
branch, agency, or instrumentality of the District of Columbia governmen
this subsection shall not apply to the District of Columbia National Gua
Armory or to the Robert F. Kennedy Memorial Stadium;

(4) Any educational facility except as provided in § 7–1702(1);

(5) While transporting passengers within the corporate limits of the D
trict of Columbia, any passenger vehicle owned or operated by the Distric
Columbia government, or any passenger vehicle for hire regulated und
§ 47–2829, except that smoking with the prior consent of all occupants of
vehicle shall be permitted when the vehicle is a limousine;

666

(6) Any area of a health care facility frequented by the general public, including hallways, waiting rooms and lobbies. The operator of a health care facility may designate separate areas as smoking areas.

(A) When a health care facility permits patients to smoke in bed space areas, such facility shall make a reasonable effort to determine a patient's individual nonsmoking or smoking preference and assign patients who are to be placed in bed space areas utilized by 2 or more patients to a bed space area with patients who have a similar smoking preference.

(B) Hospital staff, visitors and the general public shall not smoke in bed space areas utilized by nonsmoking patients. "No Smoking" signs shall be conspicuously posted in such bed space areas.

(7) Any restaurant except as permitted in § 7–1703.01.

(8) Any public or private workplace, except as provided in § 7–1703.02.

Sept. 28, 1979, D.C. Law 3–22, § 4, 26 DCR 390; Mar. 29, 1988, D.C. Law 7–100, § 2(c), 35 DCR 1182; May 2, 1991, D.C. Law 8–262, § 2(a), 37 DCR 8434.)

### Historical and Statutory Notes

**Prior Codifications**
1981 Ed., § 6–913.
1973 Ed., § 6–823.

**Legislative History of Laws**
For legislative history of D.C. Law 3–22, see Historical and Statutory Notes following § 7–1701.
For legislative history of D.C. Law 7–100, see Historical and Statutory Notes following § 7–1703.01.

For legislative history of D.C. Law 8–262, see Historical and Statutory Notes following § 7–1703.02.

**Delegation of Authority**
Delegation of authority under D.C. Law 3–22, the District of Columbia Smoking Restriction Act of 1979, see Mayor's Order 90–192, December 13, 1990.

### Library References

**Key Numbers**
Health and Environment ⬅25.6(5.1).
Westlaw Key Number Search: 199k25.6(5.1).

**Encyclopedias**
C.J.S. Health and Environment §§ 91, 129 to 130.

**Treatises and Practice Aids**
398 Practising Law Institute Litigation and Administrative Practice: Litigation 391.
375 Practising Law Institute Litigation and Administrative Practice: Litigation 119.
352 Practising Law Institute Litigation and Administrative Practice: Litigation 207.

## § 7–1703.01.  Designated nonsmoking areas in restaurants;  new construction and major renovation to existing restaurants;  smoking areas.

(a) Except as provided in subsection (b) of this section, the owner, manager, or person in charge of any restaurant having a seating capacity of 50 or more shall designate at least 25% of the total seating capacity as a nonsmoking area. Bar and lounge seating in the restaurant is excluded from this total seating capacity calculation. Smoking shall be prohibited in these nonsmoking areas even if, after a certain hour, food is no longer served.

(b) Any new construction for the purpose of establishing a restaurant or major renovation, performed on or after March 29, 1988, to an existing restaurant, which has a seating capacity of 50 or more, shall contain a

nonsmoking area that is at least 50% of the total seating capacity. Bar lounge seating in the restaurant is excluded from this total seating cap calculation. Smoking shall be prohibited in these nonsmoking areas eve after a certain hour, food is no longer served. In accordance with § 7–170 the Mayor shall define the term "major renovation".

(c)(1) In areas where smoking is permitted pursuant to any provision o subchapter, physical barriers or separate rooms may be used to the gre extent possible to minimize the smoke in adjacent nonsmoking areas. V tion shall be in compliance with the District of Columbia laws and governing indoor ventilation.

(2) No area shall be designated as a smoking area where smokin prohibited by the Fire Marshal or by other District of Columbia laws or

(3) Smoking areas shall comply with all laws and rules of the Distri Columbia.

(Sept. 28, 1979, D.C. Law 3–22, § 4a, as added Mar. 29, 1988, D.C. Law 7–100, 35 DCR 1182.)

### Historical and Statutory Notes

**Prior Codifications**
1981 Ed., § 6–913.1.

**Legislative History of Laws**
Law 7–100, the "District of Columbia Smoking Restriction Act of 1979 Amendment Act of 1987," was introduced in Council and assigned Bill No. 7–218, which was referred to the Committee on Public Works. The Bill was adopted on first and second readings on January 5, 1988

and January 19, 1988, respectively. Sig the Mayor on February 11, 1988, it signed Act No. 7–144 and transmitted Houses of Congress for its review.

**Delegation of Authority**
Delegation of authority under D.C. La the District of Columbia Smoking Res Act of 1979, see Mayor's Order 90–192, ber 13, 1990.

### Cross References

**Section References**

This section is referred to in § 7–1703.

### Library References

**Key Numbers**
Health and Environment ⊛25.6(5.1).
Westlaw Key Number Search: 199k25.6(5.1).

**Encyclopedias**
C.J.S. Health and Environment §§ 91, 130.

## § 7–1703.02.  Regulation of smoking in any District of Columbia place.

(a) Any private or public employer in the District of Columbia ("Dis shall, within 3 months of May 2, 1991, adopt, implement, and main written smoking policy that contains the following provisions:

(1) Designation of an area in the workplace where smoking m permitted. In an area where smoking is permitted, a physical barrie separate room shall be used to minimize smoke in any nonsmoking Ventilation shall be in compliance with the District laws and rule govern indoor ventilation.

(2) Notification to employees orally and in writing by conspicuously posting the employer's smoking policy within 3 weeks after the smoking policy is adopted. Any person in the workplace shall be subject to the posted smoking policy of the employer.

(b) The designation of a smoking area in the workplace affects employment relations and shall be a subject of collective bargaining in accordance with § 1–617.08(b).

(c) Nothing in the Smoking Regulation Amendment Act of 1990 shall be construed to prevent the owner or person in charge of a building or any part of a building from prohibiting smoking throughout the building or in any part of the building over which she or he has control.

(Sept. 28, 1979, D.C. Law 3–22, § 4b, as added May 2, 1991, D.C. Law 8–262, § 2(b), 37 DCR 8434.)

### Historical and Statutory Notes

**Prior Codifications**

1981 Ed., § 6–913.2.

**Legislative History of Laws**

Law 8–262, the "Smoking Regulation Amendment Act of 1990," was introduced in Council and assigned Bill No. 8–581, which was referred to the Committee on Public Works. The bill was adopted on first and second readings

on November 20, 1990, and December 4, 1990, respectively. Signed by the Mayor on December 14, 1990, it was assigned Act No. 8–278 and transmitted to both Houses of Congress for its review.

**References in Text**

The "Smoking Regulation Amendment Act of 1990", referred to in (c), is D.C. Law 8–262.

### Cross References

**Section References**

This section is referred to in § 7–1703.

### Library References

**Key Numbers**

Health and Environment ⚖25.6(5.1).
Westlaw Key Number Search: 199k25.6(5.1).

**Encyclopedias**

C.J.S. Health and Environment §§ 91, 129 to 130.

## § 7–1703.03. Prohibition of employment discrimination on the basis of tobacco use.

(a) No person shall refuse to hire or employ any applicant for employment, discharge or otherwise discriminate against any employee with respect to compensation or any other term, condition, or privilege of employment, on the basis of the use by the applicant or employee of tobacco or tobacco products. Nothing in this section shall be construed as limiting a person from establishing or enforcing workplace smoking restrictions that are required or permitted by this subchapter or other District or federal laws, or in establishing tobacco-use restrictions or prohibitions that constitute bona fide occupational qualifications.

(b) Any employee or applicant for employment who is aggrieved by a violation of subsection (a) of this section shall have a private cause of action against a person. An employee or applicant for employment shall pursue and exhaust all remedies available pursuant to any collective bargaining agreement,

grievance procedure, or other established means of resolving employer-emplo ee disputes, to resolve a violation of subsection (a) of this section, prio commencing a civil action.

(c) Any employee or applicant for employment who is aggrieved by a vio tion of subsection (a) of this section shall be entitled to recover any dama including lost or back wages or salary. The court, in its discretion, may all the prevailing party a reasonable attorney's fee as part of the costs.

(Sept. 28, 1979, D.C. Law 3–22, § 4(b), as added Mar. 17, 1993, D.C. Law 9–240, § 2 DCR 627.)

### Historical and Statutory Notes

**Prior Codifications**
1981 Ed., § 6–913.3.

**Legislative History of Laws**
Law 9–240, the "Prohibition of Employment Discrimination on the Basis of Tobacco Use Amendment Act of 1992," was introduced in Council and assigned Bill No. 9–504, which was

referred to the Committee on Public Wo The Bill was adopted on first and second ings on December 1, 1992, and December 1992, respectively. Signed by the Mayor January 5, 1993, it was assigned Act No. 9– and transmitted to both Houses of Congress its review. D.C. Law 9–240 became effective March 17, 1993.

## § 7–1704. "No Smoking" signs.

(a) In any place, elevator, or vehicle in which smoking is prohibited, owner, manager, or person in charge of the place, elevator, or vehicle shall p or cause to be posted signs that read, "No Smoking Under Penalty of Law "No Smoking Except in Smoking Areas", or "Smoking in Accordance Wh Employer's Smoking Policy Only". In any place, elevator, or vehicle whe smoking is restricted, the sign shall include the following warning: "Smoki causes lung cancer, heart disease, emphysema, and may cause fetal injur premature birth, and low birth weight in pregnant women." Signs posted sha clearly state the maximum fine for a violation of this subchapter. Signs sha be visible to the public at the entrance to the area and on the interior of t area in sufficient number in a manner that gives notice to the public of t applicable law.

(b) Where smoking is prohibited pursuant to this subchapter all signs poste shall include the internationally recognized no smoking symbol. Where smo ing is restricted pursuant to this subchapter all signs posted shall include t internationally recognized smoking symbol.

(c) It shall be unlawful for any person to obscure, remove, deface, mutila or destroy any sign posted in accordance with the provisions of this subchapte

(Sept. 28, 1979, D.C. Law 3–22, § 5, 26 DCR 390; Mar. 29, 1988, D.C. Law 7–10 § 2(e), 35 DCR 1182; May 2, 1991, D.C. Law 8–262, § 2(c), 37 DCR 8434; Mar. 1993, D.C. Law 9–223, § 2, 40 DCR 590.)

### Historical and Statutory Notes

**Prior Codifications**
1981 Ed., § 6–914.
1973 Ed., § 6–824.

**Legislative History of Laws**
For legislative history of D.C. Law 3–22, Historical and Statutory Notes follow § 7–1701.

BACCO SMOKING RESTRICTIONS                              § 7–1705

For legislative history of D.C. Law 7–100, see
Historical and Statutory Notes following
§ 1703.01.

For legislative history of D.C. Law 8–262, see
Historical and Statutory Notes following
§ 1703.02.

Law 9–223, the "Smoking Regulation Amend-
ment Act of 1992," was introduced in Council
and assigned Bill No. 9–496, which was re-
ferred to the Committee on Public Works. The
bill was adopted on first and second readings

on December 1, 1992, and December 15, 1992,
respectively. Signed by the Mayor on Decem-
ber 31, 1992, it was assigned Act No. 9–354 and
transmitted to both Houses of Congress for its
review. D.C. Law 9–223 became effective on
March 17, 1993.

**Delegation of Authority**
   Delegation of authority under D.C. Law 3–22,
the District of Columbia Smoking Restriction
Act of 1979, see Mayor's Order 90–192, Decem-
ber 13, 1990.

### Cross References

Section References

This section is referred to in § 7–1706.

### Library References

Key Numbers
Health and Environment ⚖25.6(5.1).
Westlaw Key Number Search: 199k25.6(5.1).

Encyclopedias
   C.J.S. Health and Environment §§ 91, 129 to
130.

## § 7–1705.  Enforcement.

(a) The owner, lessee, manager, operator or other person in charge of a
facility or vehicle where smoking is prohibited pursuant to this chapter shall:

   (1) Post and maintain the appropriate "No Smoking" signs; and

   (2) Ask persons observed smoking in violation of this subchapter to refrain
from smoking.

(b) Whenever the owner, lessee, manager or operator of a facility covered by
this subchapter requires a license issued by the District of Columbia govern-
ment in order to operate the facility, the owner, lessee, manager or operator
shall comply with this subchapter as a requirement for receiving or renewing
a license.  Where an on-site inspection is required prior to issuance or
renewal of a license, the inspector should certify that the appropriate signs have
been posted.  In those cases where an on-site inspection is not needed, a signed
statement by the applicant that he has complied with this subchapter shall
constitute sufficient evidence of compliance as required in this subsection.
Violation of this subchapter shall be grounds for license suspension or revoca-

(c) The Mayor is authorized to promulgate any regulations needed to carry
out the provisions of this subchapter.

(d) An aggrieved person or class of persons may bring an action in the
Superior Court of the District of Columbia for injunctive relief to prevent any
owner, lessee, manager, operator or person otherwise in charge of a facility or
vehicle where smoking is prohibited pursuant to this subchapter from violating,
or continuing to violate, any provision of this subchapter.  For the purposes of
this subsection, an "aggrieved person" shall be defined as any person subjected
to tobacco smoke due to failure to comply with this subchapter.

Oct. 28, 1979, D.C. Law 3–22, § 6, 26 DCR 390; Mar. 29, 1988, D.C. Law 7–100,
§ 4, 35 DCR 1182.)

§ 7–1705 HEALTH CARE AND S...

## Historical and Statutory Notes

**Prior Codifications**

1981 Ed., § 6–915.

1973 Ed., § 6–825.

**Legislative History of Laws**

For legislative history of D.C. Law 3–22, see Historical and Statutory Notes following § 7–1701.

For legislative history of D.C. Law ... Historical and Statutory Notes ... § 7–1703.01.

**Delegation of Authority**

Delegation of authority under D.C. L... the District of Columbia Smoking R... Act of 1979, see Mayor's Order 90–19... ber 13, 1990.

## Cross References

**Section References**

This section is referred to in § 7–1703.01.

## Library References

**Key Numbers**

Health and Environment ⚊25.6(9).

Westlaw Key Number Search: 199k25.6(9).

**Encyclopedias**

C.J.S. Health and Environment §§ ... 105, 150 to 154.

## § 7–1706. Penalties.

(a) Any person who violates any provision of this subchapter, other th... of D.C. Law 3–22, by:

(1) Smoking in a posted "No Smoking" area or defacing or remo... "No Smoking" sign, or failing to post warning signs as set fo... § 7–1704(a) shall, upon conviction, be punishable by a fine of not les... $10 nor more than $50 for a 1st offense; and not less than $50 nor mor... $100 for each 2nd or subsequent offense; or

(2) Obscuring, removing, defacing, mutilating or destroying any sig... ed in accordance with the provisions of this subchapter shall, upon c... tion, be punishable by a fine of not more than $300; or

(3) Failing to post or cause to be posted or to maintain "No Smo... signs and by failing to warn a smoker observed to be smoking in viola... this subchapter to stop smoking, as required by this subchapter, shall... conviction, be punishable by a fine of not more than $300. Each and... day that the violation continues shall constitute a separate offense, an... penalties provided for in this paragraph shall be applicable to each se... offense; provided, that such penalties shall not be levied against any em... ee or officer of any branch, agency or instrumentality of the Dist... Columbia government.

(b) The Mayor is authorized to establish procedures for the issuanc... citation to any person who violates this subchapter requiring the person... collateral in accordance with § 16–704 to assure the person's appearance... Superior Court of the District of Columbia to answer the citation, an... collateral may be forfeited in lieu of an appearance as the Court may...

(c) Issuances of citations pursuant to subsection (b) of this section sha... constitute arrests nor shall forfeitures of collateral pursuant to said sub... constitute convictions. Records which may be maintained in connectio...

672

§ 7–1708

implementation of this section shall not constitute records of arrest under § 1–113.02, relating to arrest records, or paragraph (4) of § 5–113.01.

(d) Civil fines, penalties, and fees may be imposed as alternative sanctions for infraction of the provisions of this subchapter, or any rules or regulations issued under the authority of this subchapter, pursuant to § 2–1801.01 et seq. Adjudication of any infraction of this subchapter shall be pursuant to § 2–1801.01 et seq.

(Sept. 28, 1979, D.C. Law 3–22, § 7, 26 DCR 390; Oct. 5, 1985, D.C. Law 6–42, § 411, 32 DCR 4450; Mar. 29, 1988, D.C. Law 7–100, § 2(g), 35 DCR 1182; May 2, 1991, D.C. Law 8–262, § 2(d), 37 DCR 8434.)

### Historical and Statutory Notes

**Prior Codifications**
1981 Ed., § 6–916.
1973 Ed., § 6–826.

**Legislative History of Laws**
For legislative history of D.C. Law 3–22, see Historical and Statutory Notes following § 7–1701.

Law 6–42, the "Department of Consumer and Regulatory Affairs Civil Infractions Act of 1985," was introduced in Council and assigned Bill No. 6–187, which was referred to the Committee on Consumer and Regulatory Affairs. The Bill was adopted on first and second readings on June 25, 1985, and July 9, 1985, respec-

tively. Signed by the Mayor on July 16, 1985, it was assigned Act No. 6–60 and transmitted to both Houses of Congress for its review.

For legislative history of D.C. Law 7–100, see Historical and Statutory Notes following § 7–1703.01.

For legislative history of D.C. Law 8–262, see Historical and Statutory Notes following § 7–1703.02.

**Delegation of Authority**
Delegation of authority under D.C. Law 3–22, the District of Columbia Smoking Restriction Act of 1979, see Mayor's Order 90–192, December 13, 1990.

### Library References

**Key Numbers**
Health and Environment ⚖25.6(9).
Westlaw Key Number Search: 199k25.6(9).

**Encyclopedias**
C.J.S. Health and Environment §§ 104 to 105, 150 to 154.

## § 7–1707.  Severability.

If any provision of this subchapter, or its application to a particular person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of this subchapter.

(Oct. 28, 1979, D.C. Law 3–22, § 9, 26 DCR 390.)

### Historical and Statutory Notes

**Prior Codifications**
1981 Ed., § 6–917.
1973 Ed., § 6–827.

**Legislative History of Laws**
For legislative history of D.C. Law 3–22, see Historical and Statutory Notes following § 7–1701.

**Delegation of Authority**
Delegation of authority under D.C. Law 3–22, the District of Columbia Smoking Restriction Act of 1979, see Mayor's Order 90–192, December 13, 1990.

## § 7–1708.  Exceptions.

This subchapter shall not prohibit smoking in the following areas:

(1) An area where smoking is permitted by any provision of this subchap-

673

§ 7–1708

**HEALTH CARE AND S**

(2) A tobacco shop or store primarily concerned with selling tobac
smoking equipment;

(3) Upon the stage by performers during the course of any the
performance if smoking is part of the theatrical production;

(4) A tavern or nightclub as defined in § 25–103(17) and (23), respec
or

(5) A room or hall that is used for private social functions, which i
weddings, banquets, and parties.

(Sept. 28, 1979, D.C. Law 3–22, § 10, as added Mar. 29, 1988, D.C. Law 7–100
35 DCR 1182.)

### Historical and Statutory Notes

**Prior Codifications**

1981 Ed., § 6–918.

**Legislative History of Laws**

For legislative history of D.C. Law 7–100, see Historical and Statutory Notes following § 7–1703.01.

**References in Text**

• Section 25–103, referred to in paragraph (4) of this section, is part of Title 25, D.C. Code,

which title was amended and enacted
Law 13–298. For disposition of the
matter of former Title 25, see the Di
Table preceding § 25–101.

**Delegation of Authority**

Delegation of authority under D.C. L
the District of Columbia Smoking Re
Act of 1979, see Mayor's Order 90–192
ber 13, 1990.

### Library References

**Key Numbers**

Health and Environment ☞25.6(7).
Westlaw Key Number Search: 199k25.6(7).

**Encyclopedias**

C.J.S. Health and Environment §§ 98,

## § 7–1709.  Tobacco smoking education and smoking cessation program

The Mayor shall establish, in conjunction with the District of Col
Commissioner of Public Health or any other agencies or departments o
District, a program to educate the general public on the issue of smokin
involuntary smoking, the health risks involved, and the requirements o
subchapter, explaining what the subchapter does and why it is important
Mayor shall establish a smoking cessation program that provides free co
ing, information, and whatever other assistance is deemed necessary b
District of Columbia Commissioner of Public Health for the purpose of a
ing, upon request, persons residing in the District of Columbia to stop sm
tobacco products.

(Sept. 28, 1979, D.C. Law 3–22, § 11, as added Mar. 29, 1988, D.C. Law 7–100,
35 DCR 1182.)

### Historical and Statutory Notes

**Prior Codifications**

1981 Ed., § 6–919.

**Legislative History of Laws**

For legislative history of D.C. Law 7–100, see Historical and Statutory Notes following § 7–1703.01.

**Delegation of Authority**

Delegation of authority under D.C. La
the District of Columbia Smoking Res
Act of 1979, see Mayor's Order 90–192,
ber 13, 1990.

674

TOBACCO SMOKING RESTRICTIONS                    § 7–1731

## § 7–1710.  Smoking prohibitions pursuant to existing law.

Nothing in this subchapter shall make lawful smoking in any place in which smoking is prohibited pursuant to § 6–1401 et seq., § 35–251(b), or any other District of Columbia or federal law.

(Sept. 28, 1979, D.C. Law 3–22, § 12, as added Mar. 29, 1988, D.C. Law 7–100, § 2(j), 35 DCR 1182.)

### Historical and Statutory Notes

**Prior Codifications**

1981 Ed., § 6–920.

**Legislative History of Laws**

For legislative history of D.C. Law 7–100, see Historical and Statutory Notes following § 7–1703.01.

**Delegation of Authority**

Delegation of authority under D.C. Law 3–22, the District of Columbia Smoking Restriction Act of 1979, see Mayor's Order 90–192, December 13, 1990.

### SUBCHAPTER II.  DISTRIBUTION OF FREE CIGARETTES.

## § 7–1731.  Distribution of free cigarettes prohibited;  penalty.

(a) No person, agent, or employee of any person shall, in the course of doing business, distribute any free cigarettes or other tobacco product to any person in any public street, public sidewalk, public park, playground, in a public building, other public property, or private property open to the public, except that free cigarettes or other tobacco products may be distributed at a tobacco store, a convention, or a conference catering to adults.

(b) Any person who violates subsection (a) of this section shall, upon conviction, be fined not less than $250 for each violation.

(May 2, 1991, D.C. Law 8–262, § 5, 37 DCR 8434.)

### Historical and Statutory Notes

**Prior Codifications**

1981 Ed., § 6–920.1.

**Emergency Act Amendments**

For temporary (90–day) requirement that certain manufacturers establish a reserve fund, see §§ 2 and 3 of the Tobacco Settlement Model Emergency Act of 1999 (D.C. Act 13–109, June 22, 1999, 46 DCR 5769).

For temporary (90–day) requirement that certain manufacturers establish a reserve fund, see

§§ 2 and 3 of the Tobacco Settlement Model Congressional Review Emergency Act of 1999 (D.C. Act 13–139, September 28, 1999, 46 DCR 7963).

**Legislative History of Laws**

For legislative history of D.C. Law 8–262, see Historical and Statutory Notes following § 7–1703.02.

EXHIBIT 2c

## §34.109    28 CFR Ch. I (7–1–04 Edition)

§34.109 Qualifications of peer reviewers.

The general reviewer qualification criteria to be used in the selection of peer reviewers are:

(a) Generalized knowledge of juvenile justice or related fields; and

(b) Specialized knowledge in areas or disciplines addressed by the application to be reviewed under a particular program.

(c) Must not have a conflict of interest (see OJP M7100.1C, par. 90).

Additional details concerning peer reviewer qualifications are provided in the OJJDP "Peer Review Guideline".

§34.110 Management of peer reviews.

A technical support contractor may assist in managing the peer review process.

§34.111 Compensation.

All peer reviewers will be eligible to be paid according to applicable regulations and policies concerning consulting fees and reimbursement for expenses. Detailed information is provided in the OJJDP "Peer Review Guideline".

Subpart C—Emergency Expedited Review [Reserved]

PART 35—NONDISCRIMINATION ON THE BASIS OF DISABILITY IN STATE AND LOCAL GOVERNMENT SERVICES

Subpart A—General

Sec.
35.101 Purpose.
35.102 Application.
35.103 Relationship to other laws.
35.104 Definitions.
35.105 Self-evaluation.
35.106 Notice.
35.107 Designation of responsible employee and adoption of grievance procedures.
35.108–35.129 [Reserved]

Subpart B—General Requirements

35.130 General prohibitions against discrimination.
35.131 Illegal use of drugs.
35.132 Maintenance of accessible features.
35.133 [Reserved]
35.134 Retaliation or coercion.
35.135 Personal devices and services.
35.136–35.139 [Reserved]

Subpart C—Employment

35.140 Employment discrimination prohibited.
35.141–35.148 [Reserved]

Subpart D—Program Accessibility

35.149 Discrimination prohibited.
35.150 Existing facilities.
35.151 New construction and alterations.
35.152–35.159 [Reserved]

Subpart E—Communications

35.160 General.
35.161 Telecommunication devices for the deaf (TDD's).
35.162 Telephone emergency services.
35.163 Information and signage.
35.164 Duties.
35.165–35.169 [Reserved]

Subpart F—Compliance Procedures

35.170 Complaints.
35.171 Acceptance of complaints.
35.172 Resolution of complaints.
35.173 Voluntary compliance agreements.
35.174 Referral.
35.175 Attorney's fees.
35.176 Alternative means of dispute resolution.
35.177 Effect of unavailability of technical assistance.
35.178 State immunity.
35.179–35.189 [Reserved]

Subpart G—Designated Agencies

35.190 Designated agencies.
35.191–35.999 [Reserved]

Appendix A to Part 35—Preamble to Regulation on the Nondiscrimination on the Basis of Disability in State and Local Government Services (Published July 26, 1991)

Authority: 5 U.S.C. 301; 28 U.S.C. 509, 510; Title II, Pub. L. 101–336 (42 U.S.C. 12134).

Source: Order No. 1512-91, 56 FR 35716, July 26, 1991, unless otherwise noted.

Subpart A—General

§35.101 Purpose.

The purpose of this part is to effectuate subtitle A of title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12131), which prohibits discrimination on the basis of disability by public entities.

## Department of Justice    §35.104

§35.102 Application.

(a) Except as provided in paragraph (b) of this section, this part applies to all services, programs, and activities provided or made available by public entities.

(b) To the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA (42 U.S.C. 12141), they are not subject to the requirements of this part.

§35.103 Relationship to other laws.

(a) Rule of interpretation. Except as otherwise provided in this part, this part shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 791) or the regulations issued by Federal agencies pursuant to that title.

(b) Other laws. This part does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them.

§35.104 Definitions.

For purposes of this part, the term—

Act means the Americans with Disabilities Act (Pub. L. 101–336, 104 Stat. 327, 42 U.S.C. 12101–12213 and 47 U.S.C. 225 and 611).

Assistant Attorney General means the Assistant Attorney General, Civil Rights Division, United States Department of Justice.

Auxiliary aids and services includes—

(1) Qualified interpreters, notetakers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments;

(2) Qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments;

(3) Acquisition or modification of equipment or devices; and

(4) Other similar services and actions.

Complete complaint means a written statement that contains the complainant's name and address and describes the public entity's alleged discriminatory action in sufficient detail to inform the agency of the nature and date of the alleged violation of this part. It shall be signed by the complainant or by someone authorized to do so on his or her behalf. Complaints filed on behalf of classes or third parties shall describe or identify (by name, if possible) the alleged victims of discrimination.

Current illegal use of drugs means illegal use of drugs that occurred recently enough to justify a reasonable belief that a person's drug use is current or that continuing use is a real and ongoing problem.

Designated agency means the Federal agency designated under subpart G of this part to oversee compliance activities under this part for particular components of State and local governments.

Disability means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.

(1)(i) The phrase physical or mental impairment means—

(A) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine;

(B) Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(ii) The phrase physical or mental impairment includes, but is not limited to, such contagious and noncontagious diseases and conditions as orthopedic, visual, speech and hearing impairments,

**§35.104**

**28 CFR Ch. I (7–1–04 Edition)**

cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

(iii) The phrase *physical or mental impairment* does not include homosexuality or bisexuality.

(2) The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(3) The phrase *has a record of such an impairment* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

(4) The phrase *is regarded as having an impairment means—*

(i) Has a physical or mental impairment that does not substantially limit major life activities but that is treated by a public entity as constituting such a limitation;

(ii) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(iii) Has none of the impairments defined in paragraph (1) of this definition but is treated by a public entity as having such an impairment.

(5) The term *disability* does not include—

(i) Transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders;

(ii) Compulsive gambling, kleptomania, or pyromania; or

(iii) Psychoactive substance use disorders resulting from current illegal use of drugs.

*Drug* means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. 812).

*Facility* means all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal

property, including the site where the building, property, structure, or equipment is located.

*Historic preservation programs* means programs conducted by a public entity that have preservation of historic properties as a primary purpose.

*Historic Properties* means those properties that are listed or eligible for listing in the National Register of Historic Places or properties designated as historic under State or local law.

*Illegal use of drugs* means the use of one or more drugs, the possession or distribution of which is unlawful under the Controlled Substances Act (21 U.S.C. 812). The term *illegal use of drugs* does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.

*Individual with a disability* means a person who has a disability. The term *individual with a disability* does not include an individual who is currently engaging in the illegal use of drugs when the public entity acts on the basis of such use.

*Public entity* means—

(1) Any State or local government;

(2) Any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(3) The National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act).

*Qualified individual with a disability* means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

*Qualified interpreter* means an interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary.

520

---

**Department of Justice**

**§35.130**

*Section 504* means section 504 of the Rehabilitation Act of 1973 (Pub. L. 93–112, 87 Stat. 394 (29 U.S.C. 794)), as amended.

*State* means each of the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands, the Trust Territory of the Pacific Islands, and the Commonwealth of the Northern Mariana Islands.

**§35.105 Self-evaluation.**

(a) A public entity shall, within one year of the effective date of this part, evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, make necessary modifications.

(b) A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments.

(c) A public entity that employs 50 or more persons shall, for at least three years following completion of the self-evaluation, maintain on file and make available for public inspection:

(1) A list of the interested persons consulted;

(2) A description of areas examined and any problems identified; and

(3) A description of any modifications made.

(d) If a public entity has already complied with the self-evaluation requirement of a regulation implementing section 504 of the Rehabilitation Act of 1973, then the requirements of this section shall apply only to those policies and practices that were not included in the previous self-evaluation.

(Approved by the Office of Management and Budget under control number 1190–0006)

[56 FR 35716, July 26, 1991, as amended by Order No. 1694–93, 58 FR 17521, Apr. 5, 1993]

**§35.106 Notice.**

A public entity shall make available to applicants, participants, beneficiaries, and other interested persons

information regarding the provisions of this part and its applicability to the services, programs, or activities of the public entity, and make such information available to them in such manner as the head of the entity finds necessary to apprise such persons of the protections against discrimination assured them by the Act and this part.

**§35.107 Designation of responsible employee and adoption of grievance procedures.**

(a) *Designation of responsible employee.* A public entity that employs 50 or more persons shall designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part, including any investigation of any complaint communicated to it alleging its noncompliance with this part or alleging any actions that would be prohibited by this part. The public entity shall make available to all interested individuals the name, office address, and telephone number of the employee or employees designated pursuant to this paragraph.

(b) *Complaint procedure.* A public entity that employs 50 or more persons shall adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by this part.

**§35.108–35.129 [Reserved]**

**Subpart B—General Requirements**

**§35.130 General prohibitions against discrimination.**

(a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

(b)(1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

521

**§35.130**

(iii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iv) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(v) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;

(vi) Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;

(vii) Deny a qualified individual with a disability the opportunity to participate as a member of planning or advisory boards;

(viii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

(2) A public entity may not deny a qualified individual with a disability the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities.

(3) A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration—

(i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

(ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or

(iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.

(4) A public entity shall not, in determining the site or location of a facility, make selections—

(i) That have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination; or

(ii) That have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities.

(5) A public entity, in the selection of procurement contractors, may not use criteria that subject qualified individuals with disabilities to discrimination on the basis of disability.

(6) A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability. The programs or activities of entities that are licensed or certified by a public entity are not, themselves, covered by this part.

(7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

(8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

(b) Nothing in this part prohibits a public entity from providing benefits,

---

**Department of Justice**

services, or advantages to individuals with disabilities, or to a particular class of individuals with disabilities beyond those required by this part.

(d) A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

(e)(1) Nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit provided under the ADA or this part which such individual chooses not to accept.

(2) Nothing in the Act or this part authorizes the representative or guardian of an individual with a disability to decline food, water, medical treatment, or medical services to the individual.

(f) A public entity or this part may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

(g) A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

**§35.131 Illegal use of drugs.**

(a) General. (1) Except as provided in paragraph (b) of this section, this part does not prohibit discrimination against an individual based on that individual's current illegal use of drugs.

(2) A public entity shall not discriminate on the basis of illegal use of drugs against an individual who is not engaging in current illegal use of drugs and who—

(i) Has successfully completed a supervised drug rehabilitation program or has otherwise been rehabilitated successfully;

(ii) Is participating in a supervised rehabilitation program; or

(iii) Is erroneously regarded as engaging in such use.

(b) Health and drug rehabilitation services. (1) A public entity shall not deny health services, or services provided in connection with drug rehabilitation, to an individual on the basis of that individual's current illegal use of drugs, if the individual is otherwise entitled to such services.

(2) A drug rehabilitation or treatment program may deny participation to individuals who engage in illegal use of drugs while they are in the program.

(c) Drug testing. (1) This part does not prohibit a public entity from adopting or administering reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual who formerly engaged in the illegal use of drugs is not now engaging in current illegal use of drugs.

(2) Nothing in paragraph (c) of this section shall be construed to encourage, prohibit, restrict, or authorize the conduct of testing for the illegal use of drugs.

**§35.132 Smoking.**

This part does not preclude the prohibition of, or the imposition of restrictions on, smoking in transportation covered by this part.

**§35.133 Maintenance of accessible features.**

(a) A public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.

(b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs.

[56 FR 35716, July 26, 1991, as amended by Order No. 1694-93, 58 FR 17521, Apr. 5, 1993]

**§35.134 Retaliation or coercion.**

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

## § 35.135

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

**§ 35.135 Personal devices and services.**

This part does not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs; individually prescribed devices, such as prescription eyeglasses or hearing aids; readers for personal use or study; or services of a personal nature including assistance in eating, toileting, or dressing.

**§§ 35.136–35.139 [Reserved]**

**Subpart C—Employment**

**§ 35.140 Employment discrimination prohibited.**

(a) No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity.

(b)(1) For purposes of this part, the requirements of title I of the Act, as established by the regulations of the Equal Employment Opportunity Commission in 29 CFR part 1630, apply to employment in any service, program, or activity conducted by a public entity if that public entity is also subject to the jurisdiction of title I.

(2) For the purposes of this part, the requirements of section 504 of the Rehabilitation Act of 1973, as established by the regulations of the Department of Justice in 28 CFR part 41, as those requirements pertain to employment, apply to employment in any service, program, or activity conducted by a public entity if that public entity is not also subject to the jurisdiction of title I.

## 28 CFR Ch. I (7–1–04 Edition)

**§§ 35.141–35.148 [Reserved]**

**Subpart D—Program Accessibility**

**§ 35.149 Discrimination prohibited.**

Except as otherwise provided in § 35.150, no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

**§ 35.150 Existing facilities.**

(a) General. A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. This paragraph does not—

(1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities;

(2) Require a public entity to take any action that would threaten or destroy the historic significance of an historic property; or

(3) Require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with § 35.150(a) of this part would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the head of a public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action would result in such an alteration or such burdens, a public entity shall take any other action that would

---

## Department of Justice

not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity.

(b) Methods—(1) General. A public entity may comply with the requirements of this section through such means as redesign of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities, construction of new facilities, use of accessible rolling stock or other conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities. A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section. A public entity, in making alterations to existing buildings, shall meet the accessibility requirements of § 35.151. In choosing among available methods for meeting the requirements of this section, a public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate.

(2) Historic preservation programs. In meeting the requirements of § 35.150(a) in historic preservation programs, a public entity shall give priority to methods that provide physical access to individuals with disabilities. In cases where a physical alteration to an historic property is not required because of paragraph (a)(2) or (a)(3) of this section, alternative methods of achieving program accessibility include—

(i) Using audio-visual materials and devices to depict those portions of an historic property that cannot otherwise be made accessible;

(ii) Assigning persons to guide individuals with handicaps into or through portions of historic properties that cannot otherwise be made accessible; or

(iii) Adopting other innovative methods.

---

## § 35.150

(c) Time period for compliance. Where structural changes in facilities are undertaken to comply with the obligations established under this section, such changes shall be made within three years of January 26, 1992, but in any event as expeditiously as possible.

(d) Transition plan. (1) In the event that structural changes to facilities will be undertaken to achieve program accessibility, a public entity that employs 50 or more persons shall develop, within six months of January 26, 1992, a transition plan setting forth the steps necessary to complete such changes. A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the development of the transition plan by submitting comments. A copy of the transition plan shall be made available for public inspection.

(2) If a public entity has responsibility or authority over streets, roads, or walkways, its transition plan shall include a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas.

(3) The plan shall, at a minimum—

(i) Identify physical obstacles in the public entity's facilities that limit the accessibility of its programs or activities to individuals with disabilities;

(ii) Describe in detail the methods that will be used to make the facilities accessible;

(iii) Specify the schedule for taking the steps necessary to achieve compliance with this section and, if the time period of the transition plan is longer than one year, identify steps that will be taken during each year of the transition period; and

(iv) Indicate the official responsible for implementation of the plan.

(4) If a public entity has already complied with the transition plan requirement of a Federal agency regulation implementing section 504 of the Rehabilitation Act of 1973, then the requirements of this paragraph (d) shall apply

## §35.151

only to those policies and practices that were not included in the previous transition plan.

(Approved by the Office of Management and Budget under control number 1190-0003)

[56 FR 35716, July 26, 1991, as amended by Order No. 1694-93, 58 FR 17521, Apr. 5, 1993]

### §35.151 New construction and alterations.

(a) *Design and construction.* Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall, except as provided in §35.150, be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992.

(b) *Alteration.* Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992.

(c) *Accessibility standards.* Design, construction, or alteration of facilities in conformance with the Uniform Federal Accessibility Standards (UFAS) (appendix A to 41 CFR part 101-19.6) or with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG) (appendix A to 28 CFR part 36) shall be deemed to comply with the requirements of this section with respect to those facilities, except that the elevator exemption contained at 4.1.3(5) and section 4.1.6(1)(k) of ADAAG shall not apply. Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.

(d) *Alterations: Historic properties.* (1) Alterations to historic properties shall comply, to the maximum extent feasible, with section 4.1.7 of UFAS or section 4.1.7 of ADAAG.

(2) If it is not feasible to provide physical access to an historic property in a manner that will not threaten or

### 28 CFR Ch. I (7-1-04 Edition)

destroy the historic significance of the building or facility, alternative methods of access shall be provided pursuant to the requirements of §35.150.

(e) *Curb ramps.* (1) Newly constructed or altered streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway.

(2) Newly constructed or altered street level pedestrian walkways must contain curb ramps or other sloped areas at intersections to streets, roads, or highways.

[56 FR 35716, July 26, 1991, as amended by Order No. 1694-93, 58 FR 17521, Apr. 5, 1993]

### §§35.152-35.159 [Reserved]

## Subpart E—Communications

### §35.160 General.

(a) A public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

(b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.

(2) In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities.

### §35.161 Telecommunication devices for the deaf (TDD's).

Where a public entity communicates by telephone with applicants and beneficiaries, TDD's or equally effective telecommunication systems shall be used to communicate with individuals with impaired hearing or speech.

### §35.162 Telephone emergency services.

Telephone emergency services, including all services, shall provide direct access to individuals who use TDD's and computer modems.

### Department of Justice

### §35.163 Information and signage.

(a) A public entity shall ensure that interested persons, including persons with impaired vision or hearing, can obtain information as to the existence and location of accessible services, activities, and facilities.

(b) A public entity shall provide signage at all inaccessible entrances to each of its facilities, directing users to an accessible entrance or to a location at which they can obtain information about accessible facilities. The international symbol for accessibility shall be used at each accessible entrance of a facility.

### §35.164 Duties.

This subpart does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with this subpart would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action required to comply with this subpart would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity.

## §35.171

## Subpart F—Compliance Procedures

### §§35.165-35.169 [Reserved]

### §35.170 Complaints.

(a) *Who may file.* An individual who believes that he or she or a specific class of individuals has been subjected to discrimination on the basis of disability by a public entity may, by himself or herself or by an authorized representative, file a complaint under this part.

(b) *Time for filing.* A complaint must be filed not later than 180 days from the date of the alleged discrimination, unless the time for filing is extended by the designated agency for good cause shown. A complaint is deemed to be filed under this section on the date it is first filed with any Federal agency.

(c) *Where to file.* An individual may file a complaint with any agency that he or she believes to be the appropriate agency designated under subpart G of this part, or with any agency that provides funding to the public entity that is the subject of the complaint, or with the Department of Justice for referral as provided in §35.171(a)(2).

### §35.171 Acceptance of complaints.

(a) *Receipt of complaints.* (1)(i) Any Federal agency that receives a complaint of discrimination on the basis of disability by a public entity shall promptly review the complaint to determine whether it has jurisdiction over the complaint under section 504.

(ii) If the agency does not have section 504 jurisdiction, it shall promptly determine whether it is the designated agency under subpart G of this part responsible for complaints filed against that public entity.

(2)(i) If an agency other than the Department of Justice determines that it does not have section 504 jurisdiction and is not the designated agency, it shall promptly refer the complaint, and notify the complainant that it is referring the complaint to the Department of Justice.

(ii) When the Department of Justice receives a complaint for which it does not have jurisdiction under section 504 and is not the designated agency, it

§ 35.172

## 28 CFR Ch. I (7-1-04 Edition)

shall refer the complaint to an agency that does have jurisdiction under section 504 or to the appropriate agency designated in subpart G of this part or, in the case of an employment complaint that is also subject to title I of the Act, to the Equal Employment Opportunity Commission.

(3)(i) If the agency that receives a complaint has section 504 jurisdiction, it shall process the complaint according to its procedures for enforcing section 504.

(ii) If the agency that receives a complaint does not have section 504 jurisdiction, but is the designated agency, it shall process the complaint according to the procedures established by this subpart.

(b) Employment complaints. (1) If a complaint alleges employment discrimination subject to title I of the Act, and the agency has section 504 jurisdiction, the agency shall follow the procedures issued by the Department of Justice and the Equal Employment Opportunity Commission under section 107(b) of the Act.

(2) If a complaint alleges employment discrimination subject to title I of the Act, and the designated agency does not have section 504 jurisdiction, the agency shall refer the complaint to the Equal Employment Opportunity Commission for processing under title I of the Act.

(3) Complaints alleging employment discrimination subject to this part, but not to title I of the Act shall be processed in accordance with the procedures established by this subpart.

(c) Complete complaints. (1) A designated agency shall accept all complete complaints under this section and shall promptly notify the complainant and the public entity of the receipt and acceptance of the complaint.

(2) If the designated agency receives a complaint that is not complete, it shall notify the complainant and specify the additional information that is needed to make the complaint a complete complaint. If the complainant fails to complete the complaint, the designated agency shall close the complaint without prejudice.

## § 35.172 Resolution of complaints.

(a) The designated agency shall investigate each complete complaint, attempt informal resolution, and, if resolution is not achieved, issue to the complainant and the public entity a Letter of Findings that shall include—

(1) Findings of fact and conclusions of law;

(2) A description of a remedy for each violation found; and

(3) Notice of the rights available under paragraph (b) of this section.

(b) If the designated agency finds noncompliance, the procedures in §§ 35.173 and 35.174 shall be followed. At any time, the complainant may file a private suit pursuant to section 203 of the Act, whether or not the designated agency finds a violation.

## § 35.173 Voluntary compliance agreements.

(a) When the designated agency issues a noncompliance Letter of Findings, the designated agency shall—

(1) Notify the Assistant Attorney General by forwarding a copy of the Letter of Findings to the Assistant Attorney General; and

(2) Initiate negotiations with the public entity to secure compliance by voluntary means.

(b) Where the designated agency is able to secure voluntary compliance, the voluntary compliance agreement shall—

(1) Be in writing and signed by the parties;

(2) Address each cited violation;

(3) Specify the corrective or remedial action to be taken, within a stated period, to come into compliance;

(4) Provide assurance that discrimination will not recur; and

(5) Provide for enforcement by the Attorney General.

## § 35.174 Referral.

If the public entity declines to enter into voluntary compliance negotiations or if negotiations are unsuccessful, the designated agency shall refer the matter to the Attorney General with a recommendation for appropriate action.

## Department of Justice

§ 35.190

## § 35.175 Attorney's fees.

In any action or administrative proceeding commenced pursuant to the Act or this part, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

## § 35.176 Alternative means of dispute resolution.

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Act and this part.

## § 35.177 Effect of unavailability of technical assistance.

A public entity shall not be excused from compliance with the requirements of this part because of any failure to receive technical assistance, including any failure in the development or dissemination of any technical assistance manual authorized by the Act.

## § 35.178 State immunity.

A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act. In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

## §§ 35.179-35.189   [Reserved]

## Subpart G—Designated Agencies

## § 35.190 Designated agencies.

(a) The Assistant Attorney General shall coordinate the compliance negotiations of Federal agencies with respect to State and local government components, and shall provide policy guidance and interpretations to designated agencies to ensure the consistent and effective implementation of the requirements of this part.

(b) The Federal agencies listed in paragraph (b)(1) through (b)(8) of this section shall have responsibility for the implementation of subpart F of this part for components of State and local governments that exercise responsibilities, regulate, or administer services, programs, or activities in the following functional areas.

(1) Department of Agriculture: All programs, services, and regulatory activities relating to farming and the raising of livestock, including extension services.

(2) Department of Education: All programs, services, and regulatory activities relating to the operation of elementary and secondary education systems and institutions, institutions of higher education and vocational education (other than schools of medicine, dentistry, nursing, and other health-related schools), and libraries.

(3) Department of Health and Human Services: All programs, services, and regulatory activities relating to the provision of health care and social services, including schools of medicine, dentistry, nursing, and other health-related schools, the operation of health care and social service providers and institutions, including "grass-roots" and community services organizations and programs, and preschool and daycare programs.

(4) Department of Housing and Urban Development: All programs, services, and regulatory activities relating to state and local public housing, and housing assistance and referral.

(5) Department of Interior: All programs, services, and regulatory activities relating to lands and natural resources, including parks and recreation, water and waste management, environmental protection, energy, historic and cultural preservation, and museums.

(6) Department of Justice: All programs, services, and regulatory activities relating to law enforcement, public safety, and the administration of

## §§ 35.191–35.999

justice, including courts and correctional institutions; commerce and industry, and general economic development, banking and finance, consumer protection, insurance, and small business; planning, development, and regulation (unless assigned to other designated agencies); state and local government support services (e.g., audit, personnel, comptroller, administrative services); all other government functions not assigned to other designated agencies.

(7) *Department of Labor:* All programs, services, and regulatory activities relating to labor and the work force.

(8) *Department of Transportation:* All programs, services, and regulatory activities relating to transportation, including highways, public transportation, mass transit, aviation, law enforcement, automobile licensing and inspection, and driver licensing.

(c) Responsibility for the implementation of subpart F of this part for components of State or local governments that exercise responsibilities, regulate, or administer services, programs, or activities relating to functions not assigned to specific designated agencies by paragraph (b) of this section may be assigned to other specific agencies by the Department of Justice.

(d) If two or more agencies have apparent responsibility over a complaint, the Assistant Attorney General shall determine which one of the agencies shall be the designated agency for purposes of that complaint.

§§ 35.191–35.999  [Reserved]

APPENDIX A TO PART 35—PREAMBLE TO REGULATION ON NONDISCRIMINATION ON THE BASIS OF DISABILITY IN STATE AND LOCAL GOVERNMENT SERVICES (PUBLISHED JULY 26, 1991)

NOTE: For the convenience of the reader, this appendix contains the text of the preamble to the final regulation on nondiscrimination on the basis of disability in State and local government services beginning at the heading "Section-by-Section Analysis" and ending before "List of Subjects in 28 CFR Part 35" (56 FR 35696, July 26, 1991).

## 28 CFR Ch. I (7-1-04 Edition)

SECTION-BY-SECTION ANALYSIS

*Subpart A—General*

*Section 35.101  Purpose*

Section 35.101 states the purpose of the rule, which is to effectuate subtitle A of title II of the Americans with Disabilities Act of 1990 (the Act), which prohibits discrimination on the basis of disability by public entities. This paragraph does not, however, apply to matters within the scope of the authority of the Secretary of Transportation under subtitle B of title II of the Act.

*Section 35.102  Application*

This provision specifies that, except as provided in paragraph (b), the regulation applies to all services, programs, and activities provided or made available by public entities, as that term is defined in §35.104 of the Rehabilitation Act of 1973 (29 U.S.C. 794), which prohibits discrimination on the basis of handicap in federally assisted programs and activities, already governs non-law receive Federal financial assistance. Title II of the ADA extends the prohibition of discrimination to include all services, programs, and activities provided or made available by State and local governments or any of their instrumentalities or agencies, regardless of the receipt of Federal financial assistance. Except as provided in §35.134, this part does not apply to anything in a public entity does. Title II coverage, however, is not limited to "Executive" agencies, but includes activities of the legislative and judicial branches of State and local governments. All governmental activities of public entities are covered, even if they are carried out by contractors. For example, a State is obligated by title II to ensure that the services, programs, and activities of a State park inn operated under contract by a private entity are in compliance with title II's requirements. The private entity operating the inn would also be subject to the obligations of public accommodations under title III of the Act and the Department's regulations at 28 CFR part 36.

Activities not covered by title I of the Act, there are two major categories of programs or activities covered by this regulation: those involving general public contact as part of an entity's operations and those directly administered by the entities for program beneficiaries and participants. Activities in the first category include communication with

## Department of Justice

the public (telephone contacts, office walk-ins, or interviews) and the public's use of the entity's facilities. Activities in the second category include programs that provide State or local government services or benefits.

Paragraph (b) of §35.102 explains that to the extent that the public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the Act, they are subject to the regulation of the Department of Transportation (DOT) at 49 CFR part 37, and are not covered by this part. The Department of Transportation's ADA regulation establishes specific requirements for construction of transportation facilities and acquisition of vehicles. Matters not covered by subtitle B, such as the provision of auxiliary aids, are covered by this part. For example, activities of DOT's regulation are not covered by subtitle B. DOT's regulation implementing subtitle B are not required to be included in the DOT's evaluation required by §35.105. In addition, activities not specifically addressed by DOT's ADA regulation also may be covered by DOT's ADA regulation would be covered by this part. These programs fall into two categories: programs of public entities that receive Federal financial assistance under section 504 for its federally assisted programs and activities at 49 CFR part 27. Like other recipients of Federal financial assistance, these programs would be covered by both the section 504 regulation and this part. Although airports operated by public entities are not subject to subpart F of this part, they are subject to subpart A of title II and to this rule.

Some commenters asked for clarification about the responsibilities of public school systems under section 504 and the ADA with respect to programs, services, and activities that are not covered by the Individuals with Disabilities Education Act (IDEA), including, for example, programs open to parents or to the public, graduation ceremonies, parent-teacher organization meetings, plays and other events open to the public, and adult education classes. Public school systems must comply with the ADA in all of their programs, or activities, including those that are open to parents or to the public. For instance, public school systems must provide program accessibility to parents and guardians with disabilities to these programs, services, or activities, and appropriate auxiliary aids and services when necessary to ensure effective communication, as long as the provision of the auxiliary aids results in neither in an undue burden or in a fundamental alteration of the program.

*Section 35.103  Relationship to Other Laws*

Section 35.103 is derived from sections 501 (a) and (b) of the ADA. Paragraph (a) of this section provides that, except as otherwise specifically provided by this part, title II of

the ADA is not intended to apply lesser standards than are required under title V of the Rehabilitation Act of 1973, as amended (29 U.S.C. 790-94), or the regulations implementing that title. The standards of title V of the Rehabilitation Act apply for purposes of the ADA to the extent that the ADA has not explicitly adopted a different standard than title V. Because title II of the ADA essentially extends the antidiscrimination prohibitions of section 504 to all activities of State and local governments, the standards adopted in this part are generally the same as those required under section 504 for federally assisted programs. Title II, however, also incorporates those provisions of titles I and III that are consistent with the regulations issued by the other agencies implementing section 504. Judiciary Committee report, H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 84 (1990) (hereinafter "Judiciary report") ; Education and Labor Committee report, H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 84 (1990) (hereinafter "Education and Labor report"). Therefore, this part also makes applicable the provisions derived from the regulations issued under those titles. The inclusion of specific language in this part, however, should not be interpreted as an indication that a requirement is not included in a regulation implementing section 504.

Paragraph (b) makes clear that Congress did not intend to displace any of the rights with disabilities. As discussed above, the standards of section 504 of title V of the Rehabilitation Act and the regulations (including section 504) are not necessarily the same as those required under section 504 for federally assisted programs and activities complies standards for processing complaints covered by both this part and section 504.

## Pt. 35, App. A

With respect to State law, a plaintiff may choose to pursue claims under a State law that does not confer substantive rights, or even confers fewer substantive rights, if the alleged violation is protected under the alternative law and the remedies are greater. For example, a person with a physical disability may prefer a State law that allows compensatory and punitive damages for discrimination on the basis of physical disability, but not on the basis of mental disability. In that situation, the State law would provide broader coverage, by excluding mental disabilities, but broader remedies, and an individual covered by both laws could choose to bring an action under both laws. Moreover, State tort claims confer greater rights. A plaintiff may join a State tort claim to a case brought under the

EXHIBIT 2d

## § 551.160

within 60 calendar days to a Bureau of Prisons inquiry concerning whether the victim and/or witness wishes to continue receiving notification of the inmate's release(s).

(c) A notification request by a victim and/or witness ordinarily terminates when the inmate has completed service of the sentence for the serious crime which resulted in the request for notification.

## Subpart N—Smoking/No Smoking Areas

SOURCE: 59 FR 34742, July 6, 1994, unless otherwise noted.

### § 551.160  Purpose and scope.

To advance towards becoming a clean air environment and to protect the health and safety of staff and inmates, the Bureau of Prisons will restrict areas and circumstances where smoking is permitted within its institutions and offices.

### § 551.161  Definitions.

For purpose of this subpart, *smoking* is defined as carrying or inhaling a lighted cigar, cigarette, pipe or other lighted tobacco products.

### § 551.162  Designated no smoking areas.

All areas of Bureau of Prisons facilities and vehicles are no smoking areas unless specifically designated as a smoking area by the Warden as set forth in § 551.163.

### § 551.163  Designated smoking areas.

(a) At all medical referral centers, including housing units, and at minimum security institutions, including satellite camps and intensive confinement centers, the Warden shall identify "smoking areas", ordinarily outside of all buildings and away from all entrances so as not to expose others to second-hand smoke.

(b) At all low, medium, high, and administrative institutions other than medical referral centers, the Warden shall identify outdoor smoking areas and may, but is not required to, designate a limited number of indoor smoking areas where the needs of effective operations so require, especially for those who may be employed in, or restricted to, a nonsmoking area for an extended period of time.

(c) To the maximum extent practicable nonsmoking inmates shall be housed in nonsmoking living quarters.

### § 551.164  Notice of smoking areas.

The Warden shall ensure that smoking areas are clearly identified by the appropriate placement of signs. The *absence* of a sign shall be interpreted as indicating a no smoking area. Appropriate disciplinary action shall be taken for failure to observe smoking restrictions.

EFFECTIVE DATE NOTE: At 69 FR 13737, Mar. 24, 2004, Subpart N to Part 551 was revised, effective July 15, 2004. For the convenience of the user the revised text follows:

## Subpart N—Smoking/No Smoking Areas

### § 551.160  Purpose and scope.

To advance towards becoming a clean air environment and to protect the health and safety of staff and inmates, the Bureau of Prisons will restrict areas and circumstances where smoking is permitted within its institutions and offices.

### § 551.161  Definitions.

For purpose of this subpart, *smoking* is defined as carrying or inhaling a lighted cigar, cigarette, pipe, or other lighted tobacco products.

### § 551.162  Designated smoking areas.

(a) The Warden must designate a smoking area for use in instances where smoking is part of an authorized inmate religious activity.

(b)(1) The Warden may designate only outdoor smoking areas for general inmate use (that is, for smoking which is not part of an authorized religious activity). These smoking areas must be clearly identified.

(2) The Warden, with the Regional Director's concurrence, may choose not to designate smoking areas for general use. Once this occurs, the Regional Director's concurrence is required if the Warden later chooses to designate smoking areas for general use at the institution.

## PART 552—CUSTODY

### Subpart A [Reserved]

## Bureau of Prisons, Justice

### Subpart B—Searches of Housing Units, Inmates, and Inmate Work Areas

Sec.
552.10  Purpose and scope.
552.11  Body searches of inmates.
552.12  Close observation.
552.13  X-ray, major instrument, fluoroscope, or surgical intrusion.
552.14  Search of inmate housing and work areas.

### Subpart C—Use of Force and Application of Restraints on Inmates

552.20  Purpose and scope.
552.21  Types of force.
552.22  Principles governing the use of force and application of restraints.
552.23  Confrontation avoidance procedures.
552.24  Use of four-point restraints.
552.25  Use of chemical agents or non-lethal weapons.
552.26  Medical attention in use of force and application of restraints incidents.
552.27  Documentation of use of force and application of restraints incidents.

### Subpart D—Hostage Situation Management

552.30  Purpose and scope.
552.31  Negotiations.
552.32  Hostages.
552.33  Media.

### Subpart E—Suicide Prevention Program

552.40  Purpose and scope.
552.41  Policy.
552.42  Program Coordinator.
552.43  Procedures.
552.44  Housing suicidal inmates.
552.45  Authority and responsibility.
552.46  Suicide watches.
552.47  Custodial issues.
552.48  Transfer of inmates to other institutions.
552.49  Analysis of suicides.

AUTHORITY: 5 U.S.C. 301; 18 U.S.C. 3621, 3624, 4001, 4042, 4081, 4082 (Repealed in part to offenses committed on or after November 1, 1987), 5006–5024 (Repealed October 12, as to offenses committed after that date), 5039; 28 U.S.C. 509, 510; 28 CFR 0.95–0.99.

SOURCE: 45 FR 33941, May 20, 1980, unless otherwise noted.

## Subpart A [Reserved]

**EXHIBIT 2e**



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | HSD |
| **NUMBER:** | 1640.03 |
| **DATE:** | July 1, 1994 |
| **SUBJECT:** | Smoking/No Smoking Areas |

**EFFECTIVE DATE:**  August 1, 1994

---

1.  **[PURPOSE AND SCOPE §551.160.  To advance towards becoming a clean air environment and to protect the health and safety of staff and inmates, the Bureau of Prisons will restrict areas and circumstances where smoking is permitted within its institutions and offices.]**

In correctional institutions, smoking prohibitions (no smoking areas) shall apply equally to staff and inmates.  In administrative buildings, the provisions of this Program Statement shall apply to staff in those areas under the Bureau's control.

The hazards of tobacco smoke are now well established by medical and public health authorities.  The risks posed to nonsmokers by passive inhalation of environmental tobacco smoke (ETS) are of particular concern.  The Surgeon General has concurred with scientific research which indicates that "involuntary smoking is a cause of disease, including lung cancer, in healthy nonsmokers."  On January 7, 1993, the Environmental Protection Agency (EPA) officially endorsed a report by an outside panel of scientific advisers to the agency, which stated "exposure to second-hand cigarette smoke causes lung cancer in adults and greatly increases the risk of respiratory illness in children."

Consistent with the implications raised by this report, and the advisories given by health authorities, the Bureau of Prisons has established a long-range goal of creating a smoke-free workplace and clean air environment.  To achieve this objective, the Bureau

has established the Office of Health Promotion and Disease
Prevention to help individuals develop a healthier lifestyle,
including smoking cessation.


**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

2. DIRECTIVES AFFECTED

   a.  Directive Rescinded

       P.S. 1640.02    Smoking/No Smoking Areas (11/16/89)

   b.  Directives Referenced

       P.S. 5270.07    Inmate Discipline and Special Housing Units
                       (12/29/87)
       P.S. 1232.03    Personal Computers (06/15/90)

       Comptroller General Decision B-231453, Smoking Cessation
       Program for Federal Employees (02/03/89)

       Office of Personnel Management FPM Letter 792-20,
       Clarification of FPM Chapter 792, Federal Employees Health
       and Counseling Programs (05/17/89)

   c.  Rules cited in the Program Statement are contained in 28
CFR 551.160-164.

3.  STANDARDS REFERENCED

   a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions: 3-4363.

   b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities: 3-ALDF-4E-33.

   c.  Joint Commission on Accreditation of Healthcare
Organizations, 1993 Accreditation Manual For Hospitals, Volume I:
MA.1.3.14, MA.1.3.14.1.

4.  [DEFINITIONS §551.161.  For purpose of this subpart, smoking
is defined as carrying or inhaling a lighted cigar, cigarette,
pipe or other lighted tobacco products.]

   a.  Warden ordinarily refers to Chief Executive Officers,
including Camp Superintendents, Staff Training Center Directors,
Regional Directors, and the Director or Assistant Directors
(including General Counsel) in the Central Office.

   b.  Administrative areas include Central Office, regional
offices,  Management/Training Centers, UNICOR Product Support
Centers, UNICOR Regional Marketing Centers, Community Corrections

c.  Hall and corridor are defined as areas which join two separate sections or rooms.

d.  Kitchen and food preparation areas are defined as all areas within the institution's Food Service Department, including food storage areas and pantry areas for satellite food delivery, such as those found in special housing units.

e.  Medical and dental delivery areas are defined as all areas within the institution's Health Services Department, including waiting areas and satellite treatment rooms, such as those found in satellite camps, UNICOR, and special housing units, where medical and dental treatment and care occur.

5.  [DESIGNATED NO SMOKING AREAS §551.162.  All areas of Bureau of Prisons facilities and vehicles are no smoking areas unless specifically designated as a smoking area by the Warden as set forth in §551.163.]

Section §551.163 is contained in Section 6 of this Program Statement.

6.  [DESIGNATED SMOKING AREAS §551.163.]  Ordinarily, an outdoor area, away from combustible materials, shall be designated as a smoking area.

[a. At all medical referral centers, including housing units, and at minimum security institutions, including satellite camps and intensive confinement centers, the Warden shall identify "smoking areas," ordinarily outside of all buildings and away from all entrances so as not to expose others to second-hand smoke.]

In rare and extenuating circumstances, in accordance with Joint Commission on Accreditation of Healthcare Organizations (JCAHO) guidelines, Wardens at medical referral centers may allow terminally ill and psychiatric patients to smoke indoors. Authorization shall be granted only after a physician's order has been written.  The designated smoking area shall be located away from other patients in a well ventilated space, so others are not exposed to second-hand smoke.

[b.  At all low, medium, high, and administrative institutions other than medical referral centers, the Warden shall identify outdoor smoking areas and may, but is not required to, designate a limited number of indoor smoking areas where the needs of effective operations so require, especially for those who may be employed in, or restricted to, a nonsmoking area for an extended period of time.]

Indoor smoking areas shall be well ventilated to the outdoors. Smoking shall not be permitted in the following areas:

♦ Elevators
♦ Storage rooms and warehouses
♦ Libraries
♦ Dining facilities
♦ Kitchen and food preparation areas
♦ Medical/dental care delivery areas
♦ Institution/Government vehicles
♦ Administrative areas and offices
♦ Auditoriums
♦ Classrooms and conference rooms
♦ Gymnasiums and exercise rooms
♦ Restrooms
♦ Areas containing computer assets, in accordance with the requirements of the Program Statement on Personal Computers.

Smoking shall also not be permitted in halls or corridors, unless the Warden determines it is absolutely necessary to maintain the effective operations of the institution.

In selected areas meeting the requirements of Section 6.b., where staff are confined for extended periods, the Warden may, but is not required to, establish smoking areas depending upon the preference of the personnel involved. Ordinarily, nonsmoking employees' preference shall be the determining factor. Nonsmoking staff shall not normally be assigned, over their objection, to an indoor workspace where smoking is permitted. Normal office and administrative areas, whether occupied by individual or multiple smokers or nonsmokers, shall be nonsmoking.

Prior to designating a smoking area, the Warden shall review the physical layout and function of the institution, with particular attention to:

♦ Hazardous environmental factors. Special caution must be used in any area which has, or may contain, significant quantities of readily combustible or explosive liquids, gases, vapors, or solid waste.

♦ Ventilation and human density during use of the area. Smoking is not permitted in congested areas with poor ventilation or where ventilation systems may carry smoke to nonsmoking areas.

♦ Housekeeping, sanitation, and protection of property. In areas where smoking is permitted, sufficient ashtrays and other provisions for the safe and sanitary disposal of hot ashes must

be considered.

♦   Types of physical barriers separating adjacent areas. In general, areas with incomplete physical separation (e.g., with low modular office walls) shall be considered as one area.

♦   Activities undertaken in the area.  Smoking is not permitted in areas used for medical or dental treatment, physical exercise, or food preparation, service, and storage.

♦   Ability of occupants to remove themselves voluntarily from the immediate environment.  Special consideration must be given to areas where smoking staff and inmates may be confined for extended periods.

**[c.   To the maximum extent practicable nonsmoking inmates shall be housed in nonsmoking living quarters.]**

In low, medium, high, and administrative institutions (other than medical referral centers) with common living areas for large numbers of inmates (e.g., jails, dormitories), living facilities, to the extent practicable, shall be separated into smoking and nonsmoking areas sufficient to accommodate all nonsmokers. When feasible, separate dormitories shall be provided for nonsmoking inmates desiring such housing.

d.   At all administrative buildings (defined in Section 4), smoking areas for staff shall be established outside of all buildings and away from all entrances, so as not to expose others to second-hand smoke.

7.   **[NOTICE OF SMOKING AREAS §551.164.   The Warden shall ensure that smoking areas are clearly identified by the appropriate placement of signs.   The absence of a sign shall be interpreted as indicating a no smoking area.   Appropriate disciplinary action shall be taken for failure to observe smoking restrictions.]**

8.   SMOKING CESSATION PROGRAMS.   Each institution is encouraged to offer smoking cessation programs to both staff and inmates. Institutions, using existing resources, may pay for the costs of a smoking cessation program.

9.   INSTITUTION SUPPLEMENT REQUIRED.   Each institution shall develop an Institution Supplement containing information on its smoking restrictions and identifying smoking areas within the institution.   A copy of the Institution Supplement shall be forwarded to the Regional Health Systems Administrator.

P.S. 1640.03
July 1, 1994
Page 6

10.   EXISTING LABOR-MANAGEMENT AGREEMENTS.   Existing labor-management agreements regarding the implementation of a smoke-free environment shall be honored except to the extent that such agreements would permit indoor smoking in derogation of this Program Statement for more than one year beyond the effective date of this directive.

11.   EFFECTIVE DATE.   The provisions of this Program Statement become effective August 1, 1994.   Where special implementation problems exist, the Medical Director, upon written request from a Warden through the appropriate Regional Director, may allow an extension of up to six months for compliance.


\s\
Kathleen M. Hawk
Director

**EXHIBIT 2f**

Pursuant to Executive Order 13058, "Protecting Federal Employees and the Public From Exposure to Tobacco Smoke in the Federal Workplace" (3 CFR, 1997 Comp., p. 216), it is the policy of the executive branch to establish a smoke-free environment for Federal employees and members of the public visiting or using Federal facilities. The smoking of tobacco products is prohibited in all interior space owned, rented, or leased by the executive branch of the Federal Government, and in any outdoor areas under executive branch control in front of air intake ducts.

41   CFR § 101–20.105–3(a).

EXHIBIT 2g



U.S. Department of Justice

**Federal Bureau of Prisons**

*Federal Correctional Institution McKean*

*Bradford, Pennsylvania 16701-0950*

Number : MCK        1640.03

Date        :        December 8, 1997

Subject  :        **SMOKING AND NON-SMOKING AREAS**

# Institution Supplement

1.  **PURPOSE:**   To establish smoking and non-smoking areas for staff and inmates at the Federal Correctional Institution, (FCI), and Federal Prison Camp, (FPC), McKean.

2.  **DIRECTIVES REFERENCED:**

    a.  Directives Referenced:
        P.S. 1640.03,  Smoking/No Smoking Areas

    b.  Directives Rescinded:
        I.S. 1640.2, Smoking/No Smoking Areas, dated December 27, 1995

3.  **PROCEDURE:**

    a.  Staff:  FCI, McKean and FPC, McKean have been designated as non-smoking institutions.  Staff are prohibited from smoking inside of buildings or entrance-ways of the camp facility or main institution.

    b.  Inmates:

        (1)  Camp:  All buildings at FPC, McKean are designated as non-smoking. Smoking is prohibited in the entrance ways of all buildings. Housing unit A and unit B are also designated as non-smoking.

        (2)  Main Institution:

            (a)  Housing Units:  Smoking is only permitted in inmate rooms as designated by the unit manager of each unit. In the event that the inmate room is assigned to one inmate smoker and one non-smoker, the room will be designated a non-smoking room. There

---

**DISTRIBUTION:**
Master File, Warden's Staff, Department Heads, AFGE Local

 

MCK 1640.3
Page 2

In the event that the inmate room is assigned to one inmate smoker and one non-smoker, the room will be designated a non-smoking room. There is no smoking in the common areas, other multi-purpose areas, or entrance-ways of the housing units.

(b)     Other Buildings:  All other institution buildings and entrance-ways to these building are designated as non-smoking.

(3)     UNICOR:  Smoking in UNICOR is prohibited except in a clearly marked area at the east end of the factory.

4.     OPI:  Health Services

John E. Hahn, Warden

1640.03

June 21, 2002

**SMOKING AND
NON-SMOKING AREAS**

1.    **PURPOSE**:   To establish smoking and non-smoking areas for staff and inmates at the Federal Correctional Institution, (FCI), and Federal Prison Camp, (FPC), McKean.

2.    **DIRECTIVES REFERENCED**:

   a.    Directives Referenced:
         P.S. 1640.03,  Smoking/No Smoking Areas

   b.    Directives Rescinded:
         I.S. 1640.03 Smoking/No Smoking Areas, dated December 8, 1997

3.    **PROCEDURE**:

   a.    Staff:   FCI, McKean and FPC, McKean have been designated as non-smoking institutions.  Staff are prohibited from smoking inside of buildings or entrance-ways of the camp facility or main institution.

   b.    Inmates:

      (1)    Camp:  All buildings at FPC, McKean are designated as non-smoking. Smoking is prohibited in the entrance ways of all buildings. Housing unit A and unit B are also designated as non-smoking.

      (2)    Main Institution:

         (a)    Housing Units:  Smoking is only permitted in inmate rooms as designated by the unit manager of each unit. In the event that the inmate room is assigned to one inmate smoker and one non-smoker, the room will be designated a non-smoking room.

---

**DISTRIBUTION:**
Master File, Warden's Staff, Department Heads, AFGE Local

There is no smoking in the common areas, other multi-purpose areas, or entrance-ways of the housing units.

MCK 1640.3
Page 2

   (b)    Other Buildings:  All other institution buildings and entrance-ways to these building are designated as non-smoking.

  (3)    <u>UNICOR</u>:  Smoking in UNICOR is prohibited except in a clearly marked area at the east end of the factory.

4.   <u>OPI</u>:  Health Services

John J. LaManna, Warden