**EXHIBIT 3**

3a. Declaration of Clarence Fisher
3b. Declaration of Antoinio Walker and
    Joseph Cofield
3c. Declaration of William Freeman, Chad
    Belcher, Douglas Jones-Bey, and
    Gregory Marley
3d. Interview with Austin Nwanze and Docket
    Sheet of Austin Nwanze et. al.
3e. Affidavit of Demetrius Brown, Rodney
    Montgomery, Benjamin Wherry, James
    Larkin, and Anthony Kirksey

**EXHIBIT 3a**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

DEMETRIUS BROWN,               )
         Plaintiff,            )
                              )
                              )    C.A. No. 04-379 Erie
      v.                      )
                              )
UNITED STATES JUSTICE DEPT.,  )
et. al.,                      )
         Defendants.          )

## DECLARATION OF CLARENCE FISHER

I, <u>CLARENCE FISHER</u>, make the following declaration under the penalty of perjury:

1. I am an inmate currently incarcerated in the Bureau of Prisons at FCI RayBrook. My registration number is 42243-060. I am currently serving a 33 month sentence for violation of supervised release.

2. Prior to my current prison term for violation of supervised release, I had served a sentence of 77 months. During the service of this prison sentence, I was incarcerated at several other prisons from time to time. Among them was FCI McKean.

3. I was incarcerated at FCI McKean from the early summer of 1997 to the fall of 1998. I was housed in Unit CB and the Unit Manager there was Mr. Daniel Schneider.

4. During my stay at FCI McKean, I came to know inmate Demetrius Brown, Reg. No. 21534-039. I knew him well enough

to converse and have him regularly as my partner in the game of cards.

5. During this period, I was assigned to a cell on the first level in the 100 series of Unit C side B, cell #103. I know that Demetrius Brown was assigned to a cell on the 2nd level in the 200 series of Unit C side B, cell #209.

6. I know that from the time I was at FCI McKean, Demetrius Brown had for been for the majority of times assigned to 2nd level cells, specifically cell #209, prior to moving in the summer of 1998 to cell #126 on the first level.

I, CLARENCE FISHER, declare under the penalty of perjury, 28 U.S.C. §1746, that the foregoing is true and correct.

2/20/07
_____
Dated

_Clarence Fisher_

cc: file
db/db

**EXHIBIT 3b**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION


DEMETRIUS BROWN,                    )
        Plaintiff,                  )
                                    )
                                    )    C.A. No. 04-379 Erie
        v.                          )
                                    )
UNITED STATES JUSTICE DEPT.,        )
et. al.,                            )
        Defendants.                 )


## DECLARATION OF ANTONIO WALKER


I, <u>ANTONIO WALKER</u>, make the following declaration under the penalty of perjury:

1. I am an inmate currently incarcerated at FCI RayBrook. My registration number is 36475-060. I am currently serving a sentence of        months.

2. Prior to my incarceration at FCI RayBrook, I was incarcerated at FCI McKean from December of 1997 to January of 2005. I was housed in Unit AB. The Unit Manager during this period was Robert Reome. Mr. Reome was the Unit Manager from the time I arrived at FCI McKean to until June of 2004. He then transferred to Unit C as the Unit Manager for it.

3. At some time after arriving to FCI McKean, I came to know Demetrius Brown. I knew him upon coming in contact with him while working in the CMS facilities. We both worked in CMS for a period

of time before I left and went to work in Unicor. Demetrius Brown
did not ever go to work in Unicor. As far as I knew, he later
left CMS and went to work as a Law Clerk in the Institution. However,
I did know a Thomas Brown who was housed in Unit AB, the same as
I, and who also worked in Unicor, the same as I. There may be some
confusion as to the names Brown as I am aware but, Demetrius Brown
Reg. No. 21534-039, is not Thomas Brown Reg. No. 42134-061 and vice-
versa.

    4. The time that I spent at FCI McKean and even arriving at
FCI RayBrook, I've known Demetrius Brown to be a non-smoker. I have
never seen him smoke cigarettes or tobacco products nor have I heard
of him smoking cigarettes or tobacco products. But, I cannot say
the same for the majority of other inmates and staff at FCI McKean.
The environment of the Institution, in many instances, was very
stressful and to my estimation caused many people both staff and
inmates to resort to smoking cigarettes or tobacco products.

    5. While housed in Unit AB, before June, 2004, I witnessed
first hand, inmates freely walking about inside the Unit smoking
cigarettes or tobacco products. I seen inmates smoking cigarettes
or tobacco products on the upper and lower tiers. I seen inmates
smoking cigarettes or tobacco products in the common area where
the pool table and excercise equipment, and T.V's were. I seen

inmates smoking cigarettes or tobacco products in the laundry room, mop room, microwave room, and telephone room.

6. During my stay at FCI McKean, before June of 2004, I witnessed first hand, inmates freely walking about outside the Units onto the prison compound and yard, smoking cigarettes or tobacco products. I seen inmates smoking cigarettes or tobacco products standing in front of the entrance ways to the Units; CMS Building; Laundry; Psychology Office; Commissary Building; Kitchen; Officer's Lounge; Chapel; Education Building; Medical Building; Receiving and Delivering (R & D); Records Office; and Mailroom. That, there was a smoking recepticle or ash can in front of every entrance named. That, there was a cadre of workers stationed to sweep up all dropped cigarette butts or ther tobacco products waisted onto the compound or yard.

7. During my stay at FCI McKean, before June of 2004, I witnessed first hand, staff or correctional officers (employees of the Bureau of Prisons) freely go about smoking cigarettes or tobacco products while sitting in the Unit Office with the door wide open. I seen staff or correctional officers stand outside the Unit in front of the entrance way and in front of the air ducts while smoking cigarettes or tobacco products. I seen staff or correctional officers walk about the prison compound while smoking cigarettes or tobacco products. I seen staff or correctional

officers smoking cigarettes or tobacco products while standing

in front of the entrance ways to CMS; Lieutenant's Office; "Shake

Down Shack"; Laundry; Psychology Office; Commissary; Kitchen;

Officer's Lounge; Chapel; Education Building; Unicor; Hobbycraft

Building; Barbershop; Recreation Building; Segregated Housing Unit

(SHU); Medical Building; Receiving and Delivering (R&D); Records

Office; and Mailroom. That, there was a smoking recepticle or ash

can in front of every entrance named. That, there were cadre of

workers stationed to sweep up all dropped cigarette butts or other

tobacco products wasted onto the compound or yard.

    8. During my stay at FCI McKean, after June of 2004, concrete

landing pads were installed outside the Units whereupon all ash cans

were removed in front of buildings and placed onto the landing pads

only a few feet away. Inmates were then required to smoke cigarettes

or tobacco products while standing on the landing pads during

10 minute intervals at every hour on the half hour, if of course

they were smokers. Staff, in addition, were required to smoke cigar-

ettes or tobacco products while standing on the landing pads at

breaks, if they were smokers. However, I would see inmates,

who were smokers, still smoke cigarettes or tobacco products while

in the Unit. I would see staff or correctional officer, who were

smokers, still smoke cigarettes or tobacco products while in their

offices, standing in front of the entrance ways to buildings or

in front of air ducts to the Units.

9. Some of the staff or correctional officers that I would see smoking during my stay at FCI McKean while in the places mentioned above, at various times during their work hours, were: Lieutenant Roy, Correctional Officer Chester, Correctional Officer Hicks (formerly Pabon by marriage), Correctional Officer Thompson, Correctional Officer Hydak, Correctional Officer Machesnie, Correctional Officer nicknamed "Super Cop"; and others not immediately known by name at this time.

I, <u>ANTONIO WALKER</u>, hereby affirm and declare under penalty of perjury, 28 U.S.C. §1746, that the foregoing is true and correct.

<u>3-8-07</u>
Dated

cc:file
db/db

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION


DEMETRIUS BROWN,                    )
      Plaintiff,                    )
                       )
                       )    C.A. No. 04-379 Erie
    v.                              )
                       )
UNITED STATES JUSTICE DEPT.        )
et. al.,                            )
         Defendants.                )


### DECLARATION OF JOSEPH COFIELD

I, JOSEPH COFIELD, make the following declaration under the penalty of perjury:

1. I am an inmate currently incarcerated at FCI RayBrook. My registration number is 52907-060. I am currently serving a sentence of 210 mos. for violation of drug laws against the United States.

2. Prior to my incarceration at FCI RayBrook, I was incarcerated at FCI McKean from April of 1998 to January of 2001. I was housed in Unit AB and then Unit AA prior to being transferred. The Unit Manager during this period was Robert Reome.

3. While housed in Units AA & AB, after April of 1998, I witnessed first hand, inmates freely walking about inside the Unit smoking cigarettes or tobacco products. I seen inmates smoking cigarettes or tobacco products on the upper and lower tiers. I seen inmates smoking cigarettes or tobacco products in the common area where the pool table and exercise equipment, and T.V.'s were. I seen

inmates smoking cigarettes or tobacco products in the laundry room, mop room, microwave room, and telephone room.

4. During my stay at FCI McKean, after April of 1998, I witnessed first hand, inmates freely walking about outside the Units onto the prison compound and yard, smoking cigarettes or tobacco products. I seen inmates smoking cigarettes or tobacco products standing in front of the entrance ways to the Units; CMS Building; Laundry; Psychology Office; Commissary Building; Kitchen; Officer's Lounge; Chapel; Education Building; Medical Building; Receiving and Deliverying (R & D); Records Office; and Mailroom. That, there was a smoking recepticle or ash can in front of every entrance named. That, there was a cadre of workers stationed to sweep up all dropped cigarette butts or ther tobacco products waisted onto the compound or yard.

5. During my stay at FCI McKean, after April of 1998, I witnessed first hand, staff or correctional officers (employees of the Bureau of Prisons) freely go about smoking cigarettes or tobacco products while sitting in the Unit Office with the door wide open. I seen staff or correctional officers stand outside the Unit in front of the entrance way and in front of the air ducts while smoking cigarettes or tobacco products. I seen staff or correctional officers walk about the prison compound while smoking cigarettes or tobacco products. I seen staff or correctional

officers smoking cigarettes or tobacco products while standing in front of the entrance wayw of CMS; Lieutenant's Officer; "Shake Down Shack"; Laundry; Psychology Officer; Commissary; Kitchen; Officer's Lounge; Chapel; Education Building; Unicor; Hobbycraft Building; Barbershop; Recreation Building; Segregated Housing Unit (SHU); Medical Building; Receiving and Delivering (R&D); Records Officer; and Mailroom. That, there was a smoking recepticle or ash can in front of every entrance named. That, there were a cadre of workers stationed to sweep up all dropped cigarette butts or other tobacco products wasted onto the compound or yar.

6. Some of the staff or correctional officers that I would see smoking during my stay at FCI McKean while in the places mentioned above, at various times during their work hours, were: Lieutenant Roy, Correctional Officer Chester, Correctional Officer Hicks (formerly Pabon by marriage), Correctional Officer Thompson, Correctional Officer nicknamed "Super Cop"; and others not immediately known by name at this time.

I, JOSEPH COFIELD, hereby affirm and declare under penalty of perjury, 28 U.S.C. §1746, that the foregoing is true and correct.

2/23/07
Dated

Joseph Cofield

cc:file
db/db

**EXHIBIT 3c**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION


DEMETRIUS BROWN,                    )
          Plaintiff,               )
                                   )
                                   )    C.A. No. 04-379 Erie
        v.                         )
                                   )
UNITED STATES JUSTICE DEPT.        )
et. al.,                           )
          Defendants.              )


### DECLARATION OF WILLIAM FREEMAN

I, WILLIAM FREEMAN, make the following declaration under
the penalty of perjury:

1. I am an inmate currently incarcerated at FCI RayBrook.
My registration number is 13995-039. I am currently serving a
sentence of 40 years for a drug conspiracy.

2. During the service of my sentence, I have been incarcer-
ated at several other prisons. The last, before coming to FCI
RayBrook, was FCI McKean.

3. I was incarcerated at FCI McKean from March of 2002
to July of 2005. I was housed in Unit CB prior to my transfer
from FCI McKean to FCI RayBrook. The Unit Manager there was
Robert Reome.

4. During my stay at FCI McKean, before June of 2004, I've
witnessed first hand inmates freely walking about inside the
housing unit smoking cigarettes or tobacco products. I have seen inmates

smoke cigarettes on the upper and lower tiers of the units (particularly Unit CB). I have seen inmates smoking cigarettes or tobacco products in the common area where the pool table, exercise equipment and T.V.'s were located. I've seen inmates smoking cigarettes or tobacco products in the laundry room, mop room, microwave room, and telephone room.

5. During my stay at FCI McKean, before June 2004, I've witnessed first hand inmates freely walking about the outside, on the prison compound and yard, smoking cigarettes or tobacco products. I've seen inmates smoking cigarettes or tobacco products standing in front of the entrance ways to the Units; Chapel; Education Building, Medical Building; Recreation Building; Barber Shop; Hobbycraft Building; and Unicor Building.

6. During my stay at FCI McKean, before June 2004, I've witnessed first hand staff or correctional officers freely smoking cigarettes or tobacco products about in the unit. I've seen correctional officers smoking cigarettes or tobacco products while sitting in the Unit Office with the door wide open. I've seen correctional officers stand outside the unit in front of the entrance ways and in front of the Unit's air ducts smoking cigarettes or tobacco products. I've seen correctional officers walk the compound while smoking cigarettes or tobacco prodcuts. I've seen correctional officers stand in front of the entrance ways of the CMS Building; Lieutenant's Office; "Shake Down Shack"; Laundry; Commissary; Officer's Dining Hall; Chapel; Education Building; Unicor Building; Hobbycraft Building; Barbershop; Recreation Building; Medical

Building; Receiving and Delivering (R&D), Mailroom & Records Office.

7. During my stay at FCI McKean, after June 2004, inmates were required to smoke out on an outside landing pad at 10 minute intervals of every hour on the half hour. However, I've seen inmates who would still smoke cigarettes or tobacco products while in the Unit. I've seen staff or correctional officers who would still smoke cigarettes or tobacco products while in their offices. I've seen staff who would still smoke cigarettes or tobacco products while standing in front of Unit air ducts and entrance ways.

8. Some of the staff or correctional officers that I've seen smoking during my stay at FCI McKean while in the places mentioned above at the various times during their work hours were: Lieutenant Roy, Correctional Officer Chester, Correctional Officer Hicks (formerly Pabon by marriage), Correctional Officer Thompson, Correctional Officer Hydak, Correctional Officer Machesnie, Education Staff Chris Strade; and others not immediately recalled by name at this time.


I, WILLIAM FREEMAN, hereby affirm and declare under penalty of perjury, 28 U.S.C. §1746, that the foregoing is true and correct.


2-27-07
Dated

William Freeman


cc:file
db/db

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION


DEMETRIUS BROWN,             )
     Plaintiff,        )
                         )
                         )   C.A. No. 04-379 Erie
      v.                 )
                         )
UNITED STATES JUSTICE DEPT.,  )
et. al.,                )
     Defendants.       )


## DECLARATION OF CHAD BELCHER


    I, <u>CHAD BELCHER</u>    , make the following declaration under the penalty of perjury:

    1. I am an inmate currently incerated at FCI RayBrook. My registration number is 09866-040. I am currently serving a sentence of 219 mos. for violation of drug laws against the United States.

    2. Prior to my incarceration at FCI RayBrook, I was incarcerated at FCI McKean from September 1, 2000 to February of 2005. I was housed in Unit AA . The Unit Manager during this period was Mr. Robert Reome.

    3. While housed in Unit AA , before June of 2004, I witnessed first hand, inmates freely walking about inside the Unit smoking cigarettes or tobacco products. I seen inmates smoking cigarettes or tobacco products on the upper and lower tiers. I seen inmates smoking cigarettes or tobacco products in the common area where the pool table and exercise equipment, and T.V.'s were. I seen

inmates smoking cigarettes or tobacco products in the laundry room, mop room, microwave room, and telephone room.

4. During my stay at FCI McKean, before June of 2004 , I witnessed first hand, inmates freely walking about outside the Units onto the prison compound and yard, smoking cigarettes or tobacco products. I seen inmates smoking cigarettes or tobacco products standing in front of the entrance ways to the Units; CMS Building; Laundry; Psychology Office; Commissary Building; Kitchen; Officer's Lounge; Chapel; Education Building; Medical Building; Receiving and Deliverying (R & D); Records Office; and Mailroom. That, there was a smoking recepticle or ash can in front of every entrance named. That, there was a cadre of workers stationed to sweep up all dropped cigarette butts or ther tobacco products waisted onto the compound or yard.

5. During my stay at FCI McKean, before June of 2004, I witnessed first hand, staff or correctional officers (employees of the Bureau of Prisons) freely go about smoking cigarettes or tobacco products while sitting in the Unit Office with the door wide open. I seen staff or correctional officers stand outside the Unit in front of the entrance way and in front of the air ducts while smoking cigarettes or tobacco products. I seen staff or correctional officers walk about the prison compound while smoking cigarettes or tobacco products. I seen staff or correctional

officers smoking cigarettes or tobacco products while standing
in front of the entrance ways to CMS; Lieutenant's Office; "Shake
Down Shack"; Laundry; Psychology Office; Commissary; Kitchen;
Officer's Lounge; Chapel; Education Building; Unicor; Hobbycraft
Building; Barbershop; Recreation Building; Segregated Housing Unit
(SHU); Medical Building; Receiving and Delivering (R&D); Records
Office; and Mailroom. That, there was a smoking recepticle or ash
can in front of every entrance named. That, there were cadre of
workers stationed to sweep up all dropped cigarette butts or other
tobacco products wasted onto the compound or yard.

6. During my stay at FCI McKean, after June of 2004, concrete
landing pads were installed outside the Units whereupon all ash cans
were removed in front of buildings and placed onto the landing pads
only a few feet away. Inmates were then required to smoke cigarettes
or tobacco products while standing on the landing pads during
10 minute intervals at every hour on the half hour, if of course
they were smokers. Staff, in addition, were required to smoke cigar-
ettes or tobacco products while standing on the landing pads at
breaks, if they were smokers. However, I would see inmates,
who were smokers, still smoke cigarettes or tobacco products while
in the Unit. I would see staff or correctional officer, who were
smokers, still smoke cigarettes or tobacco products while in their
offices, standing in front of the entrance ways to buildings or
in front of air ducts to the Units.

7. Some of the staff or correctional officers that I would see smoking during my stay at FCI McKean while in the places mentioned above, at various times during their work hours, were: Lieutenant Roy, Correctional Officer Chester, Correctional Officer Hicks (formerly Pabon by marriage), Correctional Officer Thompson, Correctional Officer Hydak, Correctional Officer Machesnie, Correctional Officer nicknamed "Super Cop"; and others not immediately known by name at this time.

I, __CHAD BELCHER__, hereby affirm and declare under penalty of perjury, 28 U.S.C. §1746, that the foregoing is true and correct.

_2·22·07_
Dated

_Chad Belcher_

cc:file
db/db

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION


DEMETRIUS BROWN,                )
      Plaintiff,          )
                               )
                               )    C.A. No. 04-379 Erie
     v.                       )
                               )
UNITED STATES JUSTICE DEPT.,    )
et. al.,                        )
      Defendants.          )


### DECLARATION OF DOUGLAS JONES-BEY


I, DOUGLAS JONES-BEY   , make the following declaration under
the penalty of perjury:

1. I am an inmate currently incarcerated at FCI RayBrook.
My registration number is 03964-007 . I am currently serving a sent-
ence of 3-9 years for the crime of Robbery in the District of Columbia.

2. Prior to my incarceration at FCI RayBrook, I was incarcer-
ated at FCI McKean from July of 2002 to September of 2005.
I was housed in Unit CB . The Unit Manager during this period was
Robert Reome. Before June of 2004 the Unit Manager was Tina Murphy.
Before January of 2004, the Unit Manager was Mr. A. Bermudez.

3. While housed in Unit CB , before June of 2004, I witnessed
first hand, inmates freely walking about inside the Unit smoking
cigarettes or tobacco products. I seen inmates smoking cigarettes
or tobacco products on the upper and lower tiers. I seen inmates
smoking cigarettes or tobacco products in the common area where
the pool table and exercise equipment, and T.V.'s were. I seen

inmates smoking cigarettes or tobacco products in the laundry room, mop room, microwave room, and telephone room.

4. During my stay at FCI McKean, before June of 2004, I witnessed first hand, inmates freely walking about outside the Units onto the prison compound and yard, smoking cigarettes or tobacco products. I seen inmates smoking cigarettes or tobacco products standing in front of the entrance ways to the Units; CMS Building; Laundry; Psychology Office; Commissary Building; Kitchen; Officer's Lounge; Chapel; Education Building; Medical Building; Receiving and Delivering (R & D); Records Office; and Mailroom. That, there was a smoking recepticle or ash can in front of every entrance named. That, there was a cadre of workers stationed to sweep up all dropped cigarette butts or ther tobacco products waisted onto the compound or yard.

5. During my stay at FCI McKean, before June of 2004, I witnessed first hand, staff or correctional officers (employees of the Bureau of Prisons) freely go about smoking cigarettes or tobacco products while sitting in the Unit Office with the door wide open. I seen staff or correctional officers stand outside the Unit in front of the entrance way and in front of the air ducts while smoking cigarettes or tobacco products. I seen staff or correctional officers walk about the prison compound while smoking cigarettes or tobacco products. I seen staff or correctional

officers smoking cigarettes or tobacco products while standing
in front of the entrance ways to CMS; Lieutenant's Office; "Shake
Down Shack"; Laundry; Psychology Office; Commissary; Kitchen;
Officer's Lounge; Chapel; Education Building; Unicor; Hobbycraft
Building; Barbershop; Recreation Building; Segregated Housing Unit
(SHU); Medical Building; Receiving and Delivering (R&D); Records
Office; and Mailroom. That, there was a smoking recepticle or ash
can in front of every entrance named. That, there were cadre of
workers stationed to sweep up all dropped cigarette butts or other
tobacco products wasted onto the compound or yard.

    6. During my stay at FCI McKean, after June of 2004, concrete
landing pads were installed outside the Units whereupon all ash cans
were removed in front of buildings and placed onto the landing pads
only a few feet away. Inmates were then required to smoke cigarettes
or tobacco products while standing on the landing pads during
10 minute intervals at every hour on the half hour, if of course
they were smokers. Staff, in addition, were required to smoke cigar-
ettes or tobacco products while standing on the landing pads at
breaks, if they were smokers. However, I would see inmates,
who were smokers, still smoke cigarettes or tobacco products while
in the Unit. I would see staff or correctional officer, who were
smokers, still smoke cigarettes or tobacco products while in their
offices, standing in front of the entrance ways to buildings or
in front of air ducts to the Units.

7. Some of the staff or correctional officers that I would see smoking during my stay at FCI McKean while in the places mentioned above, at various times during their work hours, were: Lieutenant Roy, Correctional Officer Chester, Correctional Officer Hicks (formerly Pabon by marriage), Correctional Officer Thompson, Correctional Officer Hydak, Correctional Officer Machesnie, Correctional Officer nicknamed "Super Cop"; Correctional Officer Tammy (known only by first name); and others not immediately known.

I, <u>DOUGLAS JONES-BEY</u>, hereby affirm and declare under penalty of perjury, 28 U.S.C. §1746, that the foregoing is true and correct.

<u>2/27/07</u>
Dated

cc:file
db/db

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

DEMETRIUS BROWN,                     )
      Plaintiff,                     )
                           )
                           )    C.A. No. 04-379 Erie
      v.                               )
                           )
UNITED STATES JUSTICE DEPT.,         )
et. al.,                             )
         Defendants.                  )

## DECLARATION OF GREGORY MARLEY

    I, GREGORY MARLEY_____ , make the following declaration under
the penalty of perjury:

    1. I am an inmate currently incarcerated at FCI RayBrook.
My registration number is 15010-424. I am currently serving a sent-
ence of 84 months for Felon in Possession of a Firearm.

    2. Prior to my incarceration at FCI RayBrook, I was incarcer-
ated at FCI McKean from February of 2004 to September of 2005.
I was housed in Unit CA. The Unit Manager during this period was
Robert Reome. Before June of 2004 the Unit Manager was Tina Murphy.

    3. While housed in Unit CA, before June of 2004, I witnessed
first hand, inmates freely walking about inside the Unit smoking
cigarettes or tobacco products. I seen inmates smoking cigarettes
or tobacco products on the upper and lower tiers. I seen inmates
smoking cigarettes or tobacco products in the common area where
the pool table and exercise equipment, and T.V.'s were. I seen

inmates smoking cigarettes or tobacco products in the laundry room, mop room, microwave room, and telephone room.

4. During my stay at FCI McKean, before June of 2004, I witnessed first hand, inmates freely walking about outside the Units onto the prison compound and yard, smoking cigarettes or tobacco products. I seen inmates smoking cigarettes or tobacco products standing in front of the entrance ways to the Units; CMS Building; Laundry; Psychology Office; Commissary Building; Kitchen; Officer's Lounge; Chapel; Education Building; Medical Building; Receiving and Delivering (R & D); Records Office; and Mailroom. That, there was a smoking recepticle or ash can in front of every entrance named. That, there was a cadre of workers stationed to sweep up all dropped cigarette butts or ther tobacco products waisted onto the compound or yard.

5. During my stay at FCI McKean, before June of 2004, I witnessed first hand, staff or correctional officers (employees of the Bureau of Prisons) freely go about smoking cigarettes or tobacco products while sitting in the Unit Office with the door wide open. I seen staff or correctional officers stand outside the Unit in front of the entrance way and in front of the air ducts while smoking cigarettes or tobacco products. I seen staff or correctional officers walk about the prison compound while smoking cigarettes or tobacco products. I seen staff or correctional

officers smoking cigarettes or tobacco products while standing in front of the entrance ways to CMS; Lieutenant's Office; "Shake Down Shack"; Laundry; Psychology Office; Commissary; Kitchen; Officer's Lounge; Chapel; Education Building; Unicor; Hobbycraft Building; Barbershop; Recreation Building; Segregated Housing Unit (SHU); Medical Building; Receiving and Delivering (R&D); Records Office; and Mailroom. That, there was a smoking recepticle or ash can in front of every entrance named. That, there were cadre of workers stationed to sweep up all dropped cigarette butts or other tobacco products wasted onto the compound or yard.

6. During my stay at FCI McKean, after June of 2004, concrete landing pads were installed outside the Units whereupon all ash cans were removed in front of buildings and placed onto the landing pads only a few feet away. Inmates were then required to smoke cigarettes or tobacco products while standing on the landing pads during 10 minute intervals at every hour on the half hour, if of course they were smokers. Staff, in addition, were required to smoke cigarettes or tobacco products while standing on the landing pads at breaks, if they were smokers. However, I would see inmates, who were smokers, still smoke cigarettes or tobacco products while in the Unit. I would see staff or correctional officer, who were smokers, still smoke cigarettes or tobacco products while in their offices, standing in front of the entrance ways to buildings or in front of air ducts to the Units.

7. Some of the staff or correctional officers that I would see smoking during my stay at FCI McKean while in the places mentioned above, at various times during their work hours, were: Lieutenant Roy, Correctional Officer Chester, Correctional Officer Hicks (formerly Pabon by marriage), Correctional Officer Thompson, Correctional Officer Hydak, Correctional Officer Machesnie, Correctional Officer nicknamed "Super Cop"; and others not immediately known by name at this time.

I, <u>GREGORY MARLEY</u>, hereby affirm and declare under penalty of perjury, 28 U.S.C. §1746, that the foregoing is true and correct.

<u>2-27-07</u>
Dated

<u>G. Marley</u>

cc:file
db/db

**EXHIBIT 3d**

BRADFORD ERA   NOVEMBER 1, 1997

# FCI-McKean inmate sues tobacco firms

**By JIM BUCK**
**Era Reporter**

In the first case of its kind, an inmate at the Federal Correctional Institution, McKean County, has filed a class-action suit against major tobacco firms, stating that second-hand cigarette smoke causes unfair and unreasonable health risks for non-smoking inmates.

The case was researched and written by Austen Nwanze — a Nigerian native now incarcerated at FCI-McKean — who asks a U.S. District Court judge to award the plaintiff's $10 billion in damages.

The suit, filed on behalf of all the non-smoking inmates in the federal prison system, seeks damages from six plaintiffs: Philip Morris Co. Inc., Batus Inc., Liggett Group Inc., Lowes Corp., Lorillard Tobacco Co. Inc., and RJR Nabisco Holdings Corp.

"We were sentenced here to do time, but not to be killed," Nwanze said Oct. 24 when an Era reporter visited the prison to discuss the suit,

a copy of which Nwanze had mailed to the paper.

Nwanze, who characterized himself as a "jailhouse lawyer," said more than 400 fellow FCI McKean inmates have signed on as co-plaintiffs so far, and the total class of plaintiffs could be as large as 60,000 — half the total population managed by the federal Bureau of Prisons.

The suit was received by the U.S. District Court for the Southern District of New York on Sept. 29. Nwanze said the court had given him a list of lawyers who might take over from here. As of Friday, Nwanze had written to some of the lawyers on the list, but had not yet gotten a response.

Word of the suit has reached the smokers incarcerated at FCI-McKean, and they are not happy, according to Nwanze, who said he has been verbally attacked by those who fear their cigarettes will be taken away. Others involved with the suit have been attacked more violently, he said, adding that one inmate was transferred to another facility for his own safety.

"We want (the BOP) to accommodate the smokers as much as possible," Nwanze said. "If they don't, the next thing you will be reporting is that the main plaintiff is dead."

Prison officials declined to comment on matters related to the lawsuit. "The warden didn't want to respond to those (questions)," said Michelle Arisman, the prison's public information officer and executive assistant to the warden.

Co-plaintiff Dale Brown — also an FCI McKean inmate — said he suffers from tuberculosis. He contracted while in prison. "I figure that (disease) was conveyed by cigarette smoke," Brown said.

Nwanze and Brown said they are exposed to second-hand smoke almost everywhere they go inside or outside the prison walls, even on the outdoor jogging track.

Nwanze said he did not name the BOP as a defendant in the suit because he believes there is a Supreme Court ruling that already directs prison officials to segregate smoking from nonsmoking inmates. In

practice, there is no place for a non-smoking inmate to go to escape from second-hand smoke, he said.

"My problem is, how do you segregate smoke," Nwanze said. "The way these units are built, nothing can escape out of it ... You can just look up and the coloring on the roof is totally different from all the smoke."

"We are dying very slowly by the second," Nwanze added. "This thing is deadly."

Both Brown and Nwanze said they recently got new cellmates who don't smoke.

In addition to asking for $5 billion in compensatory damages and $5 billion in punitive damages, the plaintiffs ask for "any other relief that may be deemed just and fair."

Nwanze pointed out that airline attendants recently won a similar lawsuit, that alleged that during the years when passengers were allowed to smoke on airplanes, attendants were unfairly subjected to second-hand smoke that caused health problems.

```
Proceedings include all events.
1:97cv7344    Nwanze, et al v. Philip Morris, et al
```

NATHANIEL WILSON
    plaintiff

OTIS PARIS
    plaintiff

DERICK FALLIN
    plaintiff

VICTOR WARD
    plaintiff

VICTOR PARROTTE
    plaintiff

CHARLES CRENSHAW
    plaintiff

CARL HILL
    plaintiff

DEMETRIUS BROWN
    plaintiff

JAMES MICHAEL WILLIAMS
    plaintiff

KEVIN WILEY
    plaintiff

DAVID JORDAN
    plaintiff

LARRY WALKER, JR.
    plaintiff

ERIC F. MARSHALL
    plaintiff

ROBERTO SANCHEZ
    plaintiff

LAWRENCE GENOA
    plaintiff

GARFIELD EDWARDS
    plaintiff

JESSE BLALARK
    plaintiff

FRANCIS NWANKWO
    plaintiff

```
Docket as of March 12, 1999 8:49 am              Page 4
```

EXHIBIT 3e

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| DEMETRIUS BROWN, | ) | |
|      Plaintiff, | ) | |
| | ) | |
| | ) | |
|      v. | ) | Civil Action No. 04-379E |
| | ) | |
| U.S. JUSTICE DEPARTMENT, | ) | |
| BUREAU OF PRISONS, FCI MCKEAN, | ) | |
| WARDEN JOHN J. LAMANNA, | ) | |
| REGIONAL DIRECTOR D. SCOTT | ) | |
| DODRILL, MEDICAL DIRECTOR | ) | |
| NEWTON E. KENDIG, DIRECTOR | ) | |
| HARLEY G. LAPPIN, | ) | |
|      Defendants. | ) | |

**DEMETRIUS BROWN'S AFFIDAVIT
TO NON-SMOKING TOBACCO**

I, DEMETRIUS BROWN, herein as Plaintiff, hereby affirm

and declare under penalty of perjury, 28 U.S.C. §1746, the

following:

1. Prior to entering prison on July 7, 1997 at FCI McKean

and even prior to arrest for certain crimes currently imprisoned

for beginning May 23, 1996, I never smoked any Tobacco Products.

2. However, upon entering at FCI McKean, I marked on the

intake screening examination that I previously smoked marijuanna.

That, although I smoked marijuanna previously, it is not a kind

of Tobacco Product containing the more than 4,000 chemicals that

Tobacco has. Instead, marijuanna is a natural herb, and in some

instances used as a herbal treatment for glocoma of the eye,

pain relief for illnesses such as cancer, or just for the euphoric

feeling.

3. That, I, while incarcerated in FCI McKean was listed
by record as a non-smoking inmate. That, I attested to not using
anykind of Tobacco Products.

4. That, my previous cell mates have attested to my not
using anykind of Tobacco Products. That, to their knowlege I am
a non-smoker. See Attachments

5. That, I have previously submitted support in a potential
class action suit in 1997 entitled AUSTIN NWANZE, et. al., v.
(Various Tobacco Companies, including Kathleen Hawk) filed in the
U.S. District Court for the Southern District of New York, 97 Civ.
7344 (LBS) for "Bivens Claim" violations due to Environmental
Tobacco Smoke. See Third Amended Complaint

6. That, I have personally complained of smoking polcies
at FCI McKean and the Bureau of Prisons in general for personal
injuries suffered by filing Administrative Greivances from the
institutional level all the way to the central office. That, I
have filed exhaustion of remedies for Tort at the Regional
Office for personal injuries suffered due to being exposed to
ETS. See Third Amended Complaint

7. That, I have filed Complaint in the United States
District Court for the Western District of Pennsylvania for
damages due to the personal injuries suffered from the exposure
to Environmental Tobacco Smoke.

I, DEMETRIUS BROWN, hereby affirm and declare under penalty of perjury, 28 U.S.C. §1746, that the foregoing AFFIDAVIT TO NON-SMOKING is true and correct.

2/6/06
Dated

_Demetrius Brown_

## AFFIDAVIT

I, Rodney Montgomery, do solemnly swear under penalty of perjury, 28 U.S.C. §1746, that the following is true and correct:

1.  That, I am the above named person who ascribes to the statements made herein.

2.  That, I am an inmate incarcerated at FCI McKean.

3.  That, I, while incarcerated at FCI McKean, have celled in cell #118U from on or about   / /   to 2// /02.

4.  That, I, while celled in cell #118, have shared the cell with Demetrius Brown #21534-039 at 118L.

5.  That, cell #118 is a non-smoking cell.

6.  That, I, while celled in cell #118, have never seen Demetrius Brown smoke any Tobacco Products.  That, I have never seen Demetrius Brown smoke any Tobacco Products neither in or outside of the cell.

7.  That, I, while celled in cell #118, have never seen Demetrius Brown handle any Tobacco Products.  That, I have never seen Demetrius Brown handle any Tobacco Products neither in or outside of the cell.

8.  That, I, while celled in cell #118 have never encountered the smell of Tobacco Smoke neither upon stay nor upon leaving and then returning.

9.  That, I, while celled in cell #118, have never encountered the smell of Tobacco Smoke upon Demetrius Brown nor upon his clothing neither in or outside of the cell.

10. That, to my knowledge, Demetrius Brown does not smoke Tobacco Products.

1/8/04
Date

Rodney Montgomery

4 of 4

## AFFIDAVIT

I, Benjamin Wherry _____, do solemly swear under penalty of perjury, 28 U.S.C. §1746, that the following is true and correct:

1. That, I am the above named person who ascribes to the statements made herein.

2. That, I am an inmate incarcerated at FCI McKean.

3. That, I, while incarcerated at FCI McKean, have celled in cell #118U from on or about 3/1/02 to 7/1/02.

4. That, I, while celled in cell #118, have shared the cell with Demetrius Brown #21534-039 at 118L.

5. That, cell #118 is a non-smoking cell.

6. That, I, while celled in cell #118, have never seen Demetrius Brown smoke any Tobacco Products. That, I have never seen Demetrius Brown smoke any Tobacco Products neither in or outside of the cell.

7. That, I, while celled in cell #118, have never seen Demetrius Brown handle any Tobacco Products. That, I have never seen Demetrius Brown handle any Tobacco Products neither in or outside of the cell.

8. That, I, while celled in cell #118, have never encountered the smell of Tobacco Smoke neither upon stay nor upon leaving and then returning

9. That, I, while celled in cell #118, have never encountered the smell of Tobacco Smoke upon Demetrius Brown nor upon his clothing neither in or outside of the cell.

10. That, to my knowledge, Demetrius Brown does not smoke Tobacco Products.

1.10.04
Date

Benjamin Wherry
#35961-060

3 of 4

## AFFIDAVIT

I, *James Larkin* do solemly swear under penalty of perjury, 28 U.S.C. §1746, that the following is true and correct.

1.  That, I am the above named person who ascribes to the statements made herein.

2.  That, I am an inmate incarcerated at FCI McKean.

3.  That, I, while incarcerated at FCI McKean, have celled in cell #118U from on or about 1/1/03 to 3/1/03.

4.  That, I, while celled in cell #118, have shared the cell with Demetrius Brown #21534-039 at 118L.

5.  That, cell #118 is a non-smoking cell.

6.  That, I, while celled in cell #118, have never seen Demetrius Brown smoke any Tobacco Products. That, I have never seen Demetrius Brown smoke any Tobacco Products neither in or outside of the cell.

7.  That, I, while celled in cell #118, have never seen Demetrius Brown handle any Tobacco Products. That, I have never seen Demetrius Brown handle any Tobacco Products neither in or outside of the cell.

8.  That, I, while celled in cell #118, have never encountered the smell of Tobacco Smoke neither upon stay nor upon leaving and then returning

9.  That, I, while celled in cell #118, have never encountered the smell of Tobacco Smoke upon Demetrius Brown nor upon his clothing neither in or outside of the cell.

10. That, to my knowledge, Demetrius Brown does not smoke Tobacco Products.

1-8-04
Date

James Larkins
#21608-039

2 of 4

## AFFIDAVIT

I, _Anthony Kicksy_____, do solemly swear under penalty of perjury,
28 U.S.C. §1746, that the following is true and correct:

1. That, I am the above named person who ascribes to the statements made herein.

2. That, I am an inmate incarcerated at FCI McKean.

3. That, I, while incarcerated at FCI McKean, have celled in cell #118U from on or about _3/1/03_ to _present_ .

4. That, I, while celled in cell #118, have shared the cell with Demetrius Brown #21534-039 at 118L.

5. That, cell #118 is a non-smoking cell.

6. That, I, while celled in cell #118, have never seen Demetrius Brown smoke any Tobacco Products. That, I have never seen Demetrius Brown smoke any Tobacco Products neither in or outside of the cell.

7. That, I, while celled in cell #118, have never seen Demetrius Brown handle any Tobacco Products. That, I have never seen Demetrius Brown handle any Tobacco Products neither in or outside of the cell.

8. That, I, while celled in cell #118, have never encountered the smell of Tobacco Smoke neither upon stay nor upon leaving and then returning.

9. That, I, while celled in cell #118, have never encountered the smell of Tobacco Smoke upon Demetrius Brown nor upon his clothing neither in or outside of the cell.

10. That, to my knowledge, Demetrius Brown does not smoke Tobacco Products.

_1/10/04_
‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Date

‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Anthony Kirksey
#13226-039

1 of 4