## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEMETRIUS BROWN** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 04-379 Erie** |
| | ) | **District Judge McLaughlin** |
| **U.S. JUSTICE DEPARTMENT, et al.,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss or in the alternative for summary judgment [Document # 85] be granted.

It is further recommended that Plaintiff's motion to file a "third amended complaint" [Document # 91] be denied as futile.

By separate text Order filed this day, Plaintiff's motion for service of the amended complaint [Document # 95] is denied.

### II.    REPORT

####     A.    Relevant Procedural History

On December 28, 2004, Plaintiff, a federal inmate formerly incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed a *pro se* action, raising civil rights claims pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), as well as negligence claims under the Federal Tort Claims Act.  Named as Defendants are: "U.S. Justice Department"; Bureau of Prisons; FCI-McKean; John Lamanna, former Warden of FCI McKean; Scott Dodrill, Regional Director of Bureau of Prisons; Harley Lappin, Director of

1

Bureau of Prisons; and Dr. Newton Kendig, Medical Director of Bureau of Prisons.

In his original and first amended complaints, Plaintiff alleges that his exposure to second-hand smoke or Environmental Tobacco Smoke ("ETS") while incarcerated at FCI-McKean was negligent and further that such exposure violated his constitutional rights under the Eighth and Fourteenth Amendments.  Plaintiff's filings make clear that his claims are limited to the time period following December 28, 2002.  See Document # 90, page 3 ("Plaintiff denies that any of his claims have accrued before December 28, 2002.").[1]  Plaintiff seeks both compensatory and injunctive relief.

On February 5, 2007, Defendants filed a motion to dismiss, or in the alternative, for summary judgment.  Document # 85.  This Court directed Plaintiff to file an opposition to the pending motion and indicated that in accordance with Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir. 2002),  Plaintiff could amend the complaint to "cure any procedural defects." Document # 87.  Plaintiff has filed a brief in opposition to the pending motion [Document # 90], as well as a motion to further amend the complaint [Document # 91, styled as a "third amended complaint"].  Defendants have filed a brief in opposition to the motion to amend the complaint. Document # 93.  Plaintiff has filed a reply brief arguing against Defendants' opposition to the motion to further amend the complaint.   Document # 94.  Plaintiff has also filed a motion to effectuate service on his new proposed Defendants.  Document # 95.

The issues have been fully briefed and are ripe for disposition by this Court.

**B.      Relevant Factual History**

**1.      Smoking Policies**

At the time Plaintiff arrived at FCI-McKean in 1997, smoking in federal prisons was

---

[1]  Plaintiff was transferred into FCI-McKean on July 7, 1997 and was transferred out of FCI-McKean on October 29, 2004.  Document # 1, ¶¶ 19, 23.  So, the time period at issue here begins December 28, 2002, and ends October 29, 2004.

governed by 28 C.F.R. § 551.160, *et seq.*, and by Bureau of Prisons Program Statement 1640.03,

Smoking/No Smoking Areas (July 1, 1994). The regulation and Program Statement provided:

> All areas of Bureau of Prisons facilities and vehicles are no smoking unless
> specifically designated as a smoking area by the Warden as set forth in § 551.163.

28 C.F.R. § 551.162.

Section 551.163 provided:

> (b)   ... [T]he Warden shall identify outdoor smoking areas and may, but is not
> required to, designate a limited number of indoor smoking areas where
> the needs of effective operation so require, especially for those who may
> be employed in, or restricted to, a nonsmoking area for an extended
> period of time.
>
> (c)   To the maximum extent practicable, nonsmoking inmates shall be housed
> in nonsmoking living quarters.

28 C.F.R. § 551.163.

Also relevant, is the Institution Supplement at FCI-McKean issued December 27, 1995,

which provided:

> (a)   Housing Units: Smoking is only permitted in inmate rooms as designated
> by the Unit Manager of each Unit. In the event that the inmate room is
> assigned to one inmate smoker and one non-smoker, the room will be
> designated a non-smoking room. There is no smoking in the TV rooms,
> common areas, other multi-purpose areas or entrance-ways of the
> Housing Units.

Documents # 86-10; 86-11.

On March 15, 2004, the Bureau of Prisons issued a new Program Statement that became

effective on July 15, 2004. Under the new Program Statement, indoor smoking for staff was

limited to perimeter towers and patrol vehicles when occupied by one person, and indoor

smoking for inmates was limited to a designated area for observance of authorized inmate

religious activity. Accordingly, inmates were prohibited from smoking indoors (other than as

part of authorized religious activities), and were permitted to smoke only in outdoor areas.

Consistent with the new Program Statement, Warden Sherman (Warden Lamanna's successor

who is not a party to this lawsuit) issued a memorandum to all staff and inmates advising that

no smoking would be permitted in any building as of July 15, 2004. Document # 86-6. It

3

further stated that smoking would be permitted on the concrete pad located outside of the housing units, and on the concrete pad between the education and health services departments. Id.  The Warden's memorandum also advised that on December 13, 2004, the commissary would no longer sell tobacco products, and the FCI-McKean would be "tobacco free" effective January 17, 2005.  Id.

### 2.    Plaintiff's Allegations

Plaintiff alleges that he was continuously exposed to inappropriate levels of ETS, that the smoke was "inescapable" [Document # 5, ¶ 24], and that the ventilation was poor [id. at ¶ 26].  Plaintiff alleges that he requested a separation from smokers and Defendant Lamanna denied that request.  Id. at ¶¶ 29, 33.  Plaintiff alleges that as a result of the exposure to ETS he suffered from nausea, inability to eat, headache, chest pains, difficulty breathing, numbness in his limbs, teary eyes, itching, burning skin, dizziness, sore throat, coughing, production of sputum, loss of hair follicles, skin discoloration, hardening lumps, blurred vision and nervousness.  Id. at ¶ 27.  Further, Plaintiff avers that he suffers from "the great possibility of yet more personal injuries in the future as a result of the ongoing long term effects of the ETS exposure which may lead to the discovery of cancer."  Id. at ¶ 28.

### C.    Standards of Review

#### 1.    *Pro se* pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  Boag

v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d

552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be

read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992);

Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal

pleading rules, during the initial stages of litigation, a district court should construe all

allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.

1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P.

12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir.

1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make

inferences where it is appropriate.


### 2.       Motion to dismiss pursuant to Rule 12(b)(1)

When a motion to dismiss is made under Federal Rule of Civil Procedure 12(b)(1) for

lack of subject matter jurisdiction which attacks the complaint as deficient on its face, the Court

must take all allegations in the complaint as true. Mortensen v. First Federal Sav. and Loan

Ass'n, 549 F.2d 884, 891(3d Cir. 1977).  However, when the motion attacks the existence of

subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations

and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in

fact. Id. at 891.  See also Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d

62, 69 (3rd Cir. 2000);  Poling v. K. Hovnanian Enterprises, 99 F.Supp.2d 502, 515 (D.N.J.

2000).

In Mortensen, the Third Circuit delineated the standard of review to be used in a 12(b)(1)

motion, as opposed to a motion under 12(b)(6), stating:

> The basic difference among the various 12(b) motions is, of
> course, that 12(b)(6) alone necessitates a ruling on the merits of
> the claim, the others deal with procedural defects.  Because
> 12(b)(6) results in a determination on the merits at an early stage
> of plaintiff's case, the plaintiff is afforded the safeguard of having
> all its allegations taken as true and all inferences favorable to

plaintiff will be drawn. . . .

> The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different.  At the outset we must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56 . Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

549 F.2d 884, 891.   Accordingly, no presumptive truthfulness attaches to Plaintiff's allegations regarding subject matter jurisdiction.

### 3.        Motion to dismiss pursuant to Rule 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).   The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974).   As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the

light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S.  265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at ___, 1974.

### 4.        Motion for summary judgment pursuant to Rule 56

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v.

Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further,
"[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential
fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation
continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting
Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a
genuine issue for trial.  Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574
(1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the
non-movant must present affirmative evidence - more than a scintilla but less than a
preponderance - which supports each element of his claim to defeat a properly presented motion
for summary judgment).  The non-moving party must go beyond the pleadings and show specific
facts by affidavit or by information contained in the filed documents (i.e., depositions, answers
to interrogatories and admissions) to meet his burden of proving elements essential to his claim.
Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under
applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court
must resolve any doubts as to the existence of genuine issues of fact against the party moving for
summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon
bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J.
v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the
dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury
could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

D.      The *Bivens* Claim

1.      Defendants "U.S. Justice Department," the Bureau of Prisons and
        FCI-McKean

Plaintiff has named  "U.S. Justice Department," the Bureau of Prisons and FCI-McKean
as Defendants in this matter.

It is well settled that *Bivens* claims for damages can only be brought against individual
defendants and cannot be asserted against the United States or any of its components.  See FDIC
v. Meyer, 510 U.S. 471, 485 (1994)(holding that a *Bivens* cause of action cannot be brought
against a federal agency).  In Meyer, the Supreme Court recognized that an action for damages
may not be brought against the United States unless it waives its sovereign immunity.  510 U.S.
at 485.  The only waiver exposing the United States to tort liability is the Federal Tort Claims
Act, 28 U.S.C. § 2671, et seq. ("FTCA"), which does not apply to constitutional  claims such as
the ones asserted by Plaintiff in this case.  As a result, Plaintiff's *Bivens* claims against
Defendants "U.S. Justice Department," Bureau of Prisons and FCI-McKean should be dismissed
as lacking in subject matter jurisdiction.


2.      Defendants Lamanna, Dodrill, Kendig, and Lappin

Plaintiff alleges that these individual Defendants are liable because they were responsible
for the smoking policy that resulted in his exposure to the ETS.  Specifically, Plaintiff alleges:
Defendant Lamanna implemented the policy at FCI-McKean; Defendant Dodrill allowed the
policy to stand despite his "authority to disapprove such"; Defendant Kendig "failed to curb
non-compliance for indoor smoking beyond those times specified by policy"; and Defendant
Lappin "allowed smoking Bureau-wide" ignoring the Executive Order declaring that smoking
should "cease and desist" in all federal buildings.  Document # 72, Amended Complaint, ¶¶ 11 -

14.[2]

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show: (i) "he has suffered an objectively, sufficiently serious injury," **and** (ii) "that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The first prong of the Farmer test is an objective one. Plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. 511 U.S. at 834. In this context, the Eighth Amendment protects against prison conditions that threaten to cause health problems in the future, not just conditions that cause immediate medical problems. Helling v. McKinney, 509 U.S. 25, 33-34 (1993)(holding that prisoner stated cause of action under Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health). To meet this objective standard, however,

> [T]he Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged conditions]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.

Helling, 509 U.S. at 36 (emphasis in original). See also Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003) ("In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.").

---

[2] When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Rode, 845 F.2d at 1207). Plaintiff has sufficiently alleged that these Defendants were directly responsible for the smoking policy.

The second prong of the <u>Farmer</u> test is a subjective one, requiring Plaintiff to demonstrate that Defendants acted with deliberate indifference.  To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference.  <u>Farmer,</u> 511 U.S. at 837.  Thus, "deliberate indifference describes a state of mind more blameworthy than negligence," and requires "more than ordinary lack of due care for prisoner's interests or safety."  <u>Id</u>. at 835 (citations omitted).

In light of the foregoing standards, the pertinent Eighth Amendment inquiry here may be defined as follows:  1) was Plaintiff unwillingly exposed to unreasonably high levels of ETS that society would consider so grave as to violate contemporary standards of decency?; **and**, if so, 2) were these four Defendants (Lamanna, Dodrill, Kendig and Lappin) aware of facts from which an inference was drawn that a substantial risk of serious harm existed, and did they disregard such facts, such that they were deliberately indifferent to an excessive risk to Plaintiff's health and safety?  This burden of proof is heavy for good reason.  In a *Bivens* analysis, Defendants' behavior is not held to a simple tort standard, but a constitutional one – cruel and unusual punishment under the Eighth Amendment.  The fact that the evidence here must rise to the level of a constitutional claim, not a tort, is particularly relevant and daunting.

In determining this first prong on a motion for summary judgment, this Court looks to evidence that Plaintiff provides regarding the level of smoke in the facility, as well as the degree of exposure and/or any medical problems associated with that exposure.  <u>See</u> <u>Helling</u>, 509 U.S. at 35.  The evidence presented by Plaintiff to meet the objective prong of the <u>Farmer v. Brennan</u> test is not adequate to defeat a motion for summary judgment.  Although Plaintiff has provided this Court with pages and pages of evidence concerning the hazardous effects of ETS, he has not presented any specific evidence regarding his personal exposure to unreasonably high levels of

11

ETS.  And it is his burden in the face of a motion for summary judgment to do so.[3]

Additionally, the evidence does not support the conclusion that Plaintiff has a serious medical condition related to ETS or that his future health has been risked by exposure to ETS. From the beginning of his incarceration on July 8, 1997 through December 29, 2006, Plaintiff sought medical attention on only eight occasions and none of his health complaints were related to ETS exposure.  See Documents #86-18, pages 1-2; # 86-19, pages 1-45.  The medical records demonstrate that Plaintiff actually denied having any ailments related to ear/nose/throat or respiratory problems.  Id.

Accordingly, Plaintiff has not met his burden to show that he was unwillingly exposed to unreasonably high levels of ETS.  See Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001) (holding the Eighth Amendment does not require prisons to provide inmates with "more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.").  Because Plaintiff cannot satisfy the first prong of the Farmer v. Brennan test, Defendants' motion for summary judgment should be granted.

**F.    The FTCA Claim**

**1)    Proper Party - USA**

Generally, under the principle of sovereign immunity, the United States cannot be sued for damages unless it consents to being sued.  United States v. Mitchell, 445 U.S. 535, 538 (1980).  The terms of the government's consent define the court's jurisdiction over the case.[4]

---

[3] Even a thorough review of his complaints (Documents # 5-Complaint, 72-Amended Complaint, and 91-Proposed Amended Complaint) does not reveal allegations regarding the levels of exposure to which Plaintiff himself was subjected.

[4] The consent contained in the FTCA is limited and Congress has expressly provided for exceptions to the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(a)-(n); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). These exceptions are to be construed in favor of the sovereign. United States v. Nordic Village,

Lehman v. Nakshian, 453 U.S. 156, 160 (1981). The Federal Tort Claims Act grants jurisdiction to the federal courts to hear suits against the United States Government for torts[5] committed by its employees while in the scope of their employment.  See 28 U.S.C. § 2675(a). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996).  The FTCA sets forth the government's consent to be sued for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." Howell v. United States, 932 F.2d 915, 917 (11th Cir.1991) (citations omitted).

All actions brought pursuant to the FTCA must be brought against the United States of America and not in the name of the allegedly negligent agency, entity or employee.  28 U.S.C. §§ 2671-2680; 28 U.S.C. § 1346(b).  Accordingly, Plaintiff cannot bring an FTCA claim against any of the individual named Defendants as the only proper party is the United States of America.

In his motion to file a third amended complaint, Plaintiff seeks to add the United States of America as a party to this action.  However, even if this Court allowed Plaintiff to amend his complaint again at this advance stage of the litigation, such an amendment would be futile[6]

_____

Inc., 503 U.S. 30, 32-36 (1992).  The burden of establishing subject  matter jurisdiction lies with the plaintiff.  Robinson v. U.S., 849 F.Supp. 799, 801 (S.D.Ga.1994).

[5]  The FTCA does not create a substantive cause of action against the United States, but provides a mechanism by which a plaintiff may bring a state law tort action against the federal government in federal court. Hence, in a FTCA action, the district court applies the law of the state in which the act occurred. See 28 U.S.C. § 1346(b); Castillo v. U.S., 2002 WL 1752235, at *3 (7th Cir.2002).  In order to establish a cause of action in negligence under Pennsylvania law, plaintiff bears the burden of demonstrating that there was (1) a duty or obligation recognized by law, (2) breach of that duty by the defendants, (3) a causal connection between the defendants' breach of that duty and the resulting injury, and (4) actual loss or damage suffered by the complainant. Corrigan v. Methodist Hosp., 2002 WL 31492261, at *7 (E.D.Pa. 2002).

[6]  Federal Rule of Civil Procedure 15(a) states that "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).  "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave

based upon the discretionary function exception to the FTCA.

### 2.        The Discretionary Function Exception to the FTCA

While the FTCA generally grants jurisdiction to the tort plaintiff, there are some notable

exceptions to the Act that put certain actions by government employees beyond the jurisdiction

of the federal courts.  One such exception that the government raises here is the discretionary

function exception. Complaints that fall within the discretionary function exception must be

dismissed for a lack of subject matter jurisdiction.  <u>Attallah v. United States</u>, 955 F.2d 776, 783

(1st Cir. 1992).

The statute provides that the United States is immune from liability for any claim

> "based upon an act or omission of an employee of the Government exercising
> due care, in the execution of a statute or regulation ... or based on the exercise or
> performance or the failure to exercise or perform a discretionary function or duty
> on the part of a federal agency or an employee of the Government, whether or not
> the discretion involved be abused."

28 U.S.C. § 2680 (a) (1988).   The discretionary function exception to the FTCA "marks the

boundary between Congress's willingness to impose tort liability upon the United States and its

desire to protect certain governmental activities from exposure to suit by private individuals."

<u>United States v. S.A. Empresa Biacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 808

(1984).  The purpose of the exception to liability is to avoid judicial second-guessing of

legislative and administrative decisions that are grounded in social, economic, and political

policies.  <u>United States v. Gaubert</u>, 499 U.S. 315, 323 (1991).

The Supreme Court has provided a two-part inquiry, frequently referred to as the

<u>Berkovitz-Gaubert</u> test, to guide the application of the discretionary function exception.

<u>Berkovitz v. United States</u>, 486 U.S. 531 (1988);  <u>Gaubert</u>, 499 U.S. at 322.  First, a district

---

sought should, as the rules require, be freely given." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)
(interpreting Federal Rules of Civil Procedure).  An amendment would be futile when the
complaint, as amended, would fail to state a claim upon which relief could be granted.  <u>In re
NAHC, Inc. Securities Litigation</u>, 306 F.3d 1314, 1332 (3d Cir. 2002).

court must determine whether the nature of the conduct involves an "element of judgment or choice."  Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000), citing Gaubert, 499 U.S. at 322.  "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive."  Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997), citing Gaubert, 499 U.S. at 322.  In other words, when the conduct is specifically mandated by statute or regulation and does not provide any employee discretion, the challenged conduct is not entitled to immunity and thus, subject matter jurisdiction exists.  Second, "even if the challenged conduct involves an element of judgment, the court must determine 'whether the judgment is of the kind that the discretionary function exception was designed to shield.'"  Mitchell, 225 F.3d at 363, quoting Gaubert, 499 U.S. at 322-23.  The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  Id.

The operation of a federal prison involves a wide range of social and economic considerations, with social concerns and considerations that are markedly different from the issues that arise in the operation of any other organization.  Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (1977).  Although the prison officials of the United States have a statutory duty[7] to protect inmates from harm, generally decisions regarding the best way to safeguard prisoners are discretionary in nature and do not provide subject matter jurisdiction to the federal courts for negligence claims against the United States.  See Castillo v. United States, 2006 WL 45554 (3d Cir. 2006) (integration plan involving two rival gangs which

---

[7] Title 18 U.S.C. § 4042(a)(2), (3) provides:

> The Bureau of Prisons ... shall ... provide ... for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States ... [and] provide for the protection ... of all persons charged with or convicted of offenses against the United States.

resulted in a melee within discretionary function exception);  Cohen v. United States, 151 F.3d 1338, 1340-45 (11th Cir. 1998) (charge of negligence for improperly classifying assailant inmate at the lowest security level within discretionary function exception); Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 795-97 (8th Cir. 1998) (charges of negligence for failing to warn inmate that his youthful appearance made him vulnerable to sexual attack and failure to act on plaintiff's complaint that other inmate was staring at him in a sexual manner within the discretionary function exception); Calderon v. United States, 123 F.3d 947, 948-51 (7th Cir. 1997) (charge of negligence for ignoring repeated information about threats against plaintiff by another inmate prior to attack within discretionary function exception); and Buchanan v. United States, 915 F.2d 969 (5th Cir. 1990) (discretionary function exception applied to prisoners' FTCA claim for damages sustained while prisoners were held hostage by Cuban detainees during a prison uprising).

With respect to the use of tobacco products, Bureau of Prisons staff are directed by regulation which provides that "all areas of Bureau of Prisons facilities [...] are no smoking areas unless specifically designated as a smoking area by the Warden as set forth in § 551.163." 28 C.F.R. § 551.162.  Section 551.163 provides that the Warden make determinations regarding the use of tobacco products:

> ... **the Warden shall identify outdoor smoking areas and may, but is not required to, designate** a limited number of indoor smoking areas where the needs of effective operation so require, especially for those who may be employed in, or restricted to, a nonsmoking area for an extended period of time.
>
> *  *  *
>
> **To the maximum extent practicable**, nonsmoking inmates shall be housed in nonsmoking living quarters.

28 C.F.R. § 551.163(b) and (c) (emphasis added).  The regulation gives explicit discretion to the Warden to make these decisions, thereby satisfying the first prong of the Berkovitz-Gaubert inquiry.

Next, this Court must determine whether the employee's judgment is the kind Congress

16

intended to shield from liability (in other words, whether the decision is grounded in social, economic, or political policy). Gaubert, 499 U.S. at 322-23. If a regulation gives an employee discretion, "the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation" is inextricably intertwined with the policy considerations which lead to the creation of the regulation. Id. at 324. In this case, the stated purpose of the regulation is "to advance towards becoming a clean air environment and to protect the health and safety of staff and inmates." 28 C.F.R. § 551.160. Given the presumption toward policy considerations leading to the creation of the regulation and the stated purpose within the regulation, this Court finds that the second prong of Berkovitz-Gaubert is satisfied.[8]

This Court lacks subject matter jurisdiction over Plaintiff's claim as the discretionary function exception to the Federal Tort Claims Act applies in this case. Accordingly, Plaintiff should not be allowed to amend his complaint to add the United States of America as a Defendant because such an amendment would be futile as this Court lacks subject matter jurisdiction over his claim due to the discretionary function exception.

### 3.    Actual Injury

Alternatively, Plaintiff should not be allowed to amend his complaint to add the United States as a party because the amendment would be futile because Plaintiff cannot demonstrate that he has suffered any ETS-related injuries.

Under Pennsylvania law, no cause of action for personal injury arises until there has been an actual injury. See, e.g., Openbrier v. General Mills, 340 Pa. 167, 169 (1940); Emert v. Larami Corp., 414 Pa. 396 (1964). Indeed, "[a] basic tenet of tort law is that the plaintiff cannot

---

[8] Once a particular function is found to be discretionary, a negligence claim fails, even if the Bureau of Prisons abused its discretion or was negligent in the performance of its discretionary functions. Smith v. Johns-Manville Corp., 795 F.2d 301, 308 n.10 (3d Cir. 1986); General Public Utilities Corp. v. U.S., 745 F.2d 239, 245 (3d Cir. 1984) ("That in hindsight the Commission's judgment may have been ill-advised in no way changes the character of the function under scrutiny."); Bailor v. Salvation Army, 51 F.3d 678, 685 (7th Cir. 1995).

recover without proof of actual injury or damage." <u>Peterman v. Techallov Company, Inc.</u>, 1982 WL 124 (Pa.Com.Pl. 1982), <u>citing</u> <u>Troutman v. Tabb</u>, 285 Pa. Super. 353, 359 (1981)("We are also guided by the rule that in a negligence action proof of damage is an essential element. Nominal damages cannot be recovered where no actual loss has occurred").  "When a plaintiff fails to establish damage in a tort action, the defendant is entitled to a verdict although guilty of negligence." <u>Sisk v. Duffy</u>, 201 Pa.Super. 213, 216 (1963); <u>Troutman</u>, 285 Pa.Super. At 359. Thus, a tort claim action cannot be sustained on the basis of speculative future injuries.  <u>See</u> <u>Peterman</u>, 1982 WL at * 3.  In <u>Peterman</u>, for example, plaintiffs filed suit after ingesting water allegedly contaminated with trichloroethylene that had leaked from the defendant's storage tanks into local well water.  No plaintiff alleged that any injury or expense had resulted from the leakage; rather, the entire suit was based on the possibility of "increased risk of serious illness" in the future.  <u>Id.</u>  In concluding that the plaintiffs had "totally failed to allege any actual injury or damage, an essential element of any tort claim," the court dismissed the complaint.  <u>Id.</u>

Here, Plaintiff avers that he has suffered from nausea, inability to eat, headache, chest pains, difficulty breathing, numbness in his limbs, teary eyes, itching, burning skin, dizziness, sore throat, coughing, production of sputum, loss of hair follicles, skin discoloration, hardening lumps, blurred vision and nervousness.  Document # 5,  at ¶ 27.  Further, Plaintiff alleges that he suffers from "the great possibility of yet more personal injuries in the future as a result of the ongoing long term effects of the ETS exposure which may lead to the discovery of cancer." <u>Id.</u> at ¶ 28.  The medical records do not support any of Plaintiff's claims of injury.  Between July of 1997 and December of 2006, Plaintiff has not made any medical complaint related to any of the above-mentioned ailments related to ETS.  Document # 86-18, Declaration of Dawn Marini, Clinical Director of FCI-Raybrook.

Given the speculative nature of Plaintiff's injury claims, Plaintiff should not be allowed to amend his complaint to add the United States as a defendant because such an amendment would be futile.

18

**F.     The Proposed ADA Claims**

In his proposed amended complaint, Plaintiff seeks to add claims under the Americans with Disabilities Act.  Plaintiff avers that the continuous exposure to ETS has "exasperated his previously contracted sexually transmitted disease."  Document # 91-2, Proposed Amended Complaint, page 33.

Even if this Court were inclined at this advanced stage of the litigation to allow a second amendment to the complaint in order to add the ADA claim, such an amendment would be futile as the ADA does not apply to federal prisons.  See 42 U.S.C. § 12131-12132; Fulton v. United States, 198 Fed. Appx. 210, 215-16 (3d Cir. 2006).[9]

**G.     The Proposed Retaliation Claims**

In the proposed amended complaint, Plaintiff makes allegations that he was retaliated[10]

---

[9]  Further, the record reflects that Plaintiff did not administratively exhaust any ADA claim **prior** to attempting to raise it in this civil action.  See Document # 94-2, grievances dated January of 2007.  The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002).  See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).  Administrative exhaustion must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies.  Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).

[10]  "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). In order to state a *prima facie* case of retaliation, a prisoner must demonstrate: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.  Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). See also Davis v. Pennsylvania State, 2007 WL 2128342 (3d Cir. July 26, 2007).

against in that he was transferred from FCI-McKean to FCI-Raybrook, that his mail was tampered with, his access to the law library and the courts was interfered with by officials at FCI-Raybrook.[11]

Defendants argue that this claim would be futile as Plaintiff has not exhausted it in accordance with the requirements of the PLRA.  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002).  See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).  Administrative exhaustion must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies.  Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought,"

─────────────────────

Following the satisfaction of a *prima facie* case of retaliation by a plaintiff, the burden then shifts to defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158.

[11]  This action is limited to the time period between December 28, 2002, and October 29, 2004, while Plaintiff was incarcerated at FCI-McKean.  See footnote 1.  FCI-Raybrook is located in New York state which is beyond the jurisdiction of this Court.  Accordingly, this Court will limit itself to the claims that allegedly occurred at FCI-McKean, i.e., the allegedly retaliatory transfer.

20

Congress has "clearly required exhaustion").  There is no "futility" exception to the administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, ___ U.S. ___, ___ 126 S.Ct. 2378, 2384-88 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...").  Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id at * 2382.

It is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it. Jones v. Bock, ___ U.S. ___, ___, 127 S.Ct. 910, 921 (Jan. 22, 2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.");  Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)).  In this regard, Defendants have provided evidence that Plaintiff has not filed an administrative remedies regarding a retaliatory transfer.  See Document # 93-2, Declaration of Rosalind Bingham, Paralegal Specialist for the Bureau of Prisons.

As Plaintiff has not exhausted his administrative remedies in accordance with the mandates of the PLRA, amending the complaint to add this claim would be futile.  Accordingly, the motion to amend the complaint should be denied in this regard.

## III.    CONCLUSION_____

For the foregoing reasons, it is respectfully recommended that  Defendants' motion to dismiss or in the alternative for summary judgment [Document # 85] be granted.

21

It is further recommended that Plaintiff's motion to file a "third amended complaint" [Document # 91] be denied as futile.

By separate text Order filed this day, Plaintiff's motion for service of the amended complaint [Document # 95] is denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of appellate rights. See Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 08, 2007).

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated:  August 27, 2007