SCANNED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

DEMETRIUS BROWN,                        )
          Plaintiff,                    )
                                        )
                                        )
          v.                            )     Civil action No. 04-379 E
                                        )
U.S. JUSTICE DEPARTMENT,                )
BUREAU OF PRISONS, FCI McKEAN,          )
WARDEN JOHN J. LAMANNA,                 )
REGIONAL DIRECTOR D. SCOTT              )     **FILED**
DODRILL, MEDICAL DIRECTOR               )
NEWTON E. KENDIG, DIRECTOR              )     SEP 1 2 2007
HARLEY G. LAPPIN,                       )
          Defendants.                   )     CLERK U.S. DISTRICT COURT
                                              WEST. DIST. OF PENNSYLVA..

## PLAINTIFF'S OBJECTIONS TO
## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**COMES NOW,** DEMETRIUS BROWN, herein as Plaintiff, proceeding Pro-Se, hereby moves this Honorable Court, the United States District Court for the Western District of Pennsylvania, Erie Division, pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and Local Rule 72.1.4 B, in Objecting to Magistrate Judge's Report and Recommendation dated August 27, 2007; (1), denying as futile his Motion to File Third Amended Complaint and (2), granting Defendants' Motion to Dismiss and Motion for Summary Judgment of Amended Complaint. As such, Plaintiff appeals to the District Judge for an Order overruling the Magistrate Judge's Report and Recommendation in favor of Plaintiff.

Further, in a separate Order denying Motion for Service of the Amended Complaint, Plaintiff additionally appeals to the District Judge for an Order overruling the Magistrate Judge in favor of Plaintiff, for the service of the Amended Complaint.

In support thereof, Plaintiff attaches an Affidavit of Facts. See **Affidavit of Facts Objecting to Magistrate Judge's Report and Recommendation.**

Respectfully submitted,

Demetrius Brown
Reg. No. 21534-039
FCI RayBrook
P.O. Box 9001
RayBrook, NY. 12977

cc:file
All parties of Record

AFFIDAVIT OF FACTS OBJECTING TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


DEMETRIUS BROWN        )
                       )
STATE OF NEW YORK      )    SS
ESSEX COUNTY           )
                       )

I *Demetrius Brown*   am of the age of maturity to make this affidavit and the facts herein.

I *Demetrius Brown*   am mentally competent to make this Official Affidavit of Facts for the Record.

I *Demetrius Brown*   have personal knowledge of the facts in this affidavit.

This affidavit is made under penalties of perjury and must be responded to by a counter affidavit by any and all parties within 30 days or it will stand as undisputed fact as a matter of law.

"I *Demetrius Brown*   declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

## I.   AMENDING COMPLAINT IS NOT FUTILE

1. The Magistrate Judge's Recommendation with regard to Plaintiff's Motion to Amend Complaint is to deny the motion based on futility as outlined in the Report. However, Plaintiff objects by noting the fact that futility is only a valid basis for denying <u>leave</u> to amend. Although, Plaintiff did submit Motion to File

Third Amended Complaint, proposed Third Amended Complaint was in fact only his Second Complaint or the first Amended Pleading. For this reason, Plaintiff has a right under Fed.R.Civ.P. 15(a) to Amend his Pleadings once as a matter of course.

2. To further support, Plaintiff's filing of a "Motion to Second Amend Complaint" [Document 64 & 72] on February 17, 2006 was not a pleading as contemplated by Fed.R.Civ.P. 7(a) and 8(a). Plaintiff submitted only a Motion and not any Pleadings. And indication that this in fact was only a Motion is also supported by the Magistrate Judge's Order [Document 85] on February 5, 2007 informing Plaintiff of his **discretion** to Amend the Complaint to "cure any procedural defects." As such, Plaintiff sought amendment primarily to join claims under the Americans with Disability Act (ADA) and the claim of Retaliation which are both purely procedural under Fed.R.Civ.P. 18(a), with that of his other claims already named.

3. But, because Plaintiff did not file any Proposed Pleadings to go along with his "Motion to Second Amend Complaint," the Magistrate Judge under Castro v. United States, 540 U.S. 375 (2003) was at the same time, not allowed to recharacterize his Motion as a Pleading. The Defendant's did not file any Responsive Pleading or Answer except to file Motions to Dismiss and Summary Judgment which are not Pleadings in and of themselves. Hence, Plaintiff's Proposed Third Amended Complaint, albeit his Second Complaint or the first

Amended Pleading, is his right as a matter of course. And, despite
having submitted his Proposed Third Amended Complaint with a Motion
to File [Document 91], Plaintiff did note additionally, that he
is proceeding Pro-Se and where the fact the Magistrate Judge previously
ruled it was his discretion to amend.

4. Even so, whether Plaintiff has a right to Amend the Compl-
aint once as a matter of course, relation back of amendment under
Fed.R.Civ.P. 15(c) to add new claims of ADA violations and Retaliation
would also overcome the issue of futility. Plaintiff did not delay
unduly in filing Motion to Amend. Also, Defendants' are not severely
prejudiced since the proposed additional claims arose from the same
set of operative facts and would not materially alter the nature
of the action. Besides, Defendants did not assert that they would
be prejudiced by the amendment. There has been no evidentiary hearings
held or discovery made. Though Plaintiff did suffer a post complaint
injury [Document 92-5] that may be an issue for later discovery and
reason to amend complaint. Nevertheless, the Court has subject matter
jurisdiction of some, if not all the claim.

5. Further adding, leave to amend is appropriate under the
circumstances involving a change in law. Here, the Supreme Court
recently issued a new rule in procedure involving Rule 8(a) pleading
requirements in Bell Atlantic Corp. v. Twombly, ____ U.S. ___,
127 S.Ct. 1955 (May 21, 2007). It held a complaint must be dismissed
pursuant to Rule 12(b)(6) if it does not allege "enough facts to
state a claim to relief that is plausible on its face." Id at ____,

1974 (rejecting the traditional 12(b)(6) standard set forth in
Conley v. Gibson, 355 U.S. 41 (1957)). In this regard, Plaintiff's
Third Amended Complaint is proper in alleging enough facts to state
a claim to relief that is plausible on its face which makes it not
futile. See [Document 93 at ¶2](Plaintiff affirms that he submits
a Third Amended Complaint outlining **more detailed** paragraphs...).

## II. ISSUES ARE YET RIPE FOR DISPOSITION

5. The Magistrate Judge's Report affirms that the issues have
been fully briefed and are ripe for disposition by this Court.
Plaintiff objects to this claim to state that the issues have not
been fully briefed and are yet ripe for disposition by the Court.
Plaintiff has not had the opportunity for discovery. Plaintiff
initially requested by Motion an Order of Physical Examination
[Document 61] and Preliminary Injunction [Document 62] in which
a Telephonic Hearing regarding the Motion was to be held. However,
the Magistrate Judge denied Plaintiff's request for Physical
Examination and after Defendants' Response and Motion to Cancel
Telephonic Hearing regarding Plaintiff's Preliminary Injunction,
the Magistrate Judge denied this as well. Although, Plaintiff
failed to receive notice of the Defendants' Response in order to
contest it.

6. Further, Plaintiff requested by Motion, for Pre-Trial
Conference, Scheduling and Management [Document 74] in which to
set time tables in the case and gain discoverable material.

Instead, the Magistrate Judge denied the request for Order.
Plaintiff thus has no means for supporting or proving his case
without the opportunity to fair discovery. For instance, the
Magistrate Judge elsewhere in the Report claims that Plaintiff
has not presented any evidence of his injury, his level of exposure
to ETS, and whether Defendants were aware of these certain facts.

7. Also, discovery would be important in regards to the
relevant time periods. For this reason, Plaintiff objects to the
Magistrate Judge's statement that his claims are limited to the
time period following December 28, 2002 and ending October 29, 2004.
Plaintiff has continually made known the fact that he has been
exposed to ETS on a continuous basis. And, whether one exposure
results in one injury, a series of exposures would result in many
injuries. But, the accumulation of them had not occurred to constitute
an accrual because Plaintiff virtually had not ceased to being
exposed until Tobacco Products were totally banned. So, if that
has been confusing to the Magistrate Judge then it shows why
discovery process is needed. Hence, without a discovery process
in which material evidence can be gathered, interrogatories made
on defendants, Plaintiff will not be able to fully brief his claims
and therfore, would yet be ripe for disposition by this Court.

### III. EXECUTIVE ORDER 13058 IS THE LAW GOVERNING ENVIRONMENTAL TOBACCO SMOKE

8. The Magistrate Judge's Report affirms that smoking in Federal Prisons was governed by 28 C.F.R. §551.160, et. seq. and by Bureau of Prisons Program Statement 1640.03. Plaintiff objects to this by noting Executive Orders issued by the President of the United States trumps all regulation and policy previously issued or in place on Exposure to Tobacco Smoke in all areas of control of Executive property. This includes the Federal Bureau of Prisons under the wing/arm of the Department of Justice. **5 U.S.C. §301.**

9. In Section 1 of the Executive Order, it states, the policy of the executive branch is to establish a smoke-free environment for Federal employees and members of the public visiting or using Federal facilities. The smoking of tobacco products is thus **prohibited in all** interior space owned, rented, or leased by the executive branch of the Federal Government, and in any outdoor areas under executive branch control in front of air intake ducts. See **Executive Order 13058 attached hereto.**

10. Section 5 of the Executive Order, states, the heads of agencies are responsible for implementing and ensuring compliance with the provisions of this order. "Agency" as used in this order means an Executive Agency, as defined in 5 U.S.C. §105, and includes any employing unit or authority of the Federal Government. **Id.**

11. Section 6 of the Executive Order, states, implementation of the policy set forth in this Order **shall** be achieved no later than 1 year after the date of this order... Agency heads are directed during this period to inform all employees and visitors to executive

branch facilities about the requirements of this order, inform
their employees of the health risks of exposure to environmental
tobacco smoke. **Id.**

12. Further, in section 7 of the Executive Order, it states,
nothing herein **shall** be construed to replace any agency policy
currently in effect, **if** such policy is legally established, in
writing, **and consistent with the terms of this order**. Agencies
shall review their current policy to confirm that Agency policy
found not in compliance **shall** be revised to comply with the terms
of this order. **Id.**

13. Accordingly, 28 C.F.R. §551.160 et. seq. and Bureau of
Prisons Program Statement 1640.03 were not valid law due to the
fact that they failed to comport with Executive Order 13058.
For this reason, but not until January 17, 2005, did the Bureau
of Prisons/FCI McKean outlaw tobacco products.

## IV.   STANDARDS OF REVIEW

14. The Magistrate Judge's Report discusses standards of law
in relation to a Motion to Dismiss pursuant to Fed.R.Ci.P. 12(b)(1).
The Report delineates the differences between a facial attack and
an attack based on subject matter jurisdiction. the difference, and
for which the Magistrate Judge prescribed concerning Plaintiff's
case is that <u>no presumptive truthfulness</u> attaches to his allegations
regarding subject matter jurisdiction.

15. Plaintiff objects to the Magistrate Judge prescribing that no truthfulness attach to the allegations alleged in his complaint. For this reason, in a Motion to Dismiss under Fed.R. Civ.P. 12(b)(1), a factual evaluation may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed. In other words, a factual jurisdictional proceeding cannot occur until Plaintiff's allegations have been controverted.

16. In this case, Defendants have failed to serve Plaintiff any Responsive Pleading or Answer as contemplated by Fed.R.Civ.P. 7(a) and 8(a). Defendants have instead chosen to seek Dismissal by Motion under Rule 12(b)(1), lack of subject matter jurisdiction. Because of this, Plaintiff's jurisdictional allegations are entitled to a presumption of truthfulness.

## V.   BIVENS CLAIM

17. The Magistrate Judge's Report claims that Plaintiff has named the U.S. Justice Department, the Bureau of Prisons and FCI McKean as Defendants in his Bivens Claim. Plaintiff vehemently denies this and objects that he should not have his claims misconstrued because of his Pro-Se status. Plaintiff is very aware that these Defendants have sovereign immunity under Bivens. It also behooves Plaintiff to have specifically noted, to not phrase with any indication, that these Defendants were being sued under Bivens. See [Document 90 ]

18. Plaintiff when motioning the Court to Second Amend
Complaint for adding jurisdictional statement with regards to
Defendants LaManna, Dodrill, Kendig, and Lappin; Plaintiff along
with that, motioned the Court for Joinder of Claims and Parties
under Fed.R.Civ.P. 17, 18, and 19. This was to join the Defendants
LaManna, Dodrill, Kendig, and Lappin under the claim of Bivens with
the Defendants "U.S. Justice Department," Bureau of Prisons, and
FCI McKean under the claim of the Federal Tort Claims Act (FTCA).

19. However, the Defendants "U.S. Justice Department," the
Bureau of Prisons, and FCI McKean were later brought to bear against
the claim of violations under the Americans with Disability Act
in which sovereign immunity is waived. This bifurcation of the
Defendants under the claim of the ADA/Rehabilitation Act is not
futile.

20. The Magistrate Judge's Reports states that Plaintiff has
not presented specific evidence regarding his exposure to unreason-
ably high levels of ETS. Plaintiff objects to this assertion made
by the Magistrate Judge by stating that the essential nature of
him having the opportunity of discovery, interrogatories, deposit-
ions and, a physical examination conducted under the circumstances
requested is in order to present fair evidence of his exposure to
unreasonably high levels of ETS. Also, Plaintiff states that his
Proposed "Third Amended Complaint" if allowed, as it is his right,
the truth of the allegations alleged therein, along with exhibits
and affidavits declaring proof of the unreasonable exposure to

high levels of ETS Plaintiff has experienced, would be known.

21. Plaintiff objects to the Magistrate Judge's Report that the evidence does not support the conclusion that Plaintiff has a serious medical condition related to ETS or that his future health has been risked by exposure to ETS. Plaintiff states again, that without legitimate discovery, interrogatories, depositions, and a physical examination conducted under the circumstances requested by him, it would only be plausible to say Plaintiff has a serious medical condition related to ETS or that his future health is risked by exposure to ETS. There cannot be proof beyond that at this juncture. Plaintiff has indeed provided evidence however, in his Proposed "Third Amended Complaint" depicting medical diagnosis for a skin condition known as Pityrias Rosea, photograph of the injury, and affidavit in support. See [Documents 91 & 92-5].

22. Plaintiff objects to the Magistrate Judge's Report that Plaintiff has not met his burden to show that he was unwillingly exposed to unreasonably high levels of ETS. Plaintiff in this regard, states that the obvious is the case here. Plaintiff was not only unwilling but, he consistently voiced his opposition by requesting to be separated from all persons smoking. See [Document 92-1]. This is documented in Plaintiff's requests for Administrative Remedy. In addition, Plaintiff in his Proposed "Third Amended Complaint submitted an affidavit of non-smoking, verifying his displeasure for ETS. See [Document 92-3]. Plaintiff further submitted on June 27,

2006, a Report issued by the Surgeon General for the United States, depicting that there is <u>no safe level</u> of exposure to Tobacco Smoke. See [Document 92-7]. Therefore, decrying the theory that only unreasonably high levels of ETS warrant any risk to health. The Report thus, confirms that **any level** of exposure to Tobacco Smoke is unsafe to the health. Finally, Executive Order 13058 demands that smoking in all areas controlled by the Executive Branch cease. This mandate extends to agency heads to implement. As a result, exposure to ETS after this mandate issued could only suppose that it be unwilling as smoking has been prohibited to exist. See **Executive Order 13058**.

## VI. <u>FEDERAL TORT CLAIMS ACT (FTCA)</u>

23. The Magistrate Judge's Report affirms that the United States of America is the proper party to a FTCA suit. Plaintiff does not disagree. In fact, Plaintiff supports the proposition of what this law was made to state and for which the Magistrate Judge has outlined. The Plaintiff however, being of the status Pro-Se, without legal background, should be given liberal construction in his naming of the "U.S." Justice Department in the complaint. See [Document 5]. Having previously made a Motion for Joinder of Claims and Parties and being granted that motion, under a liberal constructtion it would make the United States of America a party to the FTCA suit.

24. The Magistrate Judge additionally states that allowing Plaintiff to amend his complaint adding the United States of America would be futile. In this regard, Plaintiff as previously asserted

under Rule 15(a), objects by stating it is his right as a matter of course whether to add the United States of America. For this reason, no Responsive Pleading or Answer had been made by Defendants. Also, Executive Order 13058 and its bearing on all policy consider-ations previously in place is worth noting. The effects of such could only be measured through discovery, interrogatories, and depositions prior to any Motion to Dismiss base don lack of subject matter jurisdiction.

25. The Magistrate Judge's Report further asserts that there is a discretionary function exception to the FTCA involving Federal Bureau of Prison Officials in relation to the use of Tobacco Products. Plaintiff disagrees. Plaintiff objects to state that only a madatory duty exists as shown by Executive Order 13058. There is no question that this is law and it trumps any policy, regulation, or statute inconsistent with its mandate. In this case, the cease and desist of all smoking in all property under the control of the Executive Branch. This includes the Federal Bureau of Prisons. Plaintiff's Proposed "Third Amended Complaint" makes these factual allegations and now, he includes the actual order issued by the President of the United States as evidentiary proof of the allegation that Prison Officials were obliged to follow. See **Executive Order 13058 attached hereto.**

26. The Magistrate Judge's Report proposes that Plaintiff cannot demonstrate he suffered any ETS related injuries. Plaintiff objects to state that he has and is able to demonstrate actual

injury. Plaintiff has alleged facts and circumstances surrounding his exposure to ETS in his original and subsequent **more detailed** Proposed "Third Amended Complaint." Plaintiff even submitted along in his Proposed "Third Amended Complaint" an affidavit of injury. See [Documents 91 and 92-5].

27. The Magistrate Judge's Report alleges also that the medical records do not support any of Plaintiff's claims of injuries. Plaintiff objects by noting that the record in particular refers to the more recent Pityrias Rosea, skin disease, contracted as a result of long term ETS exposure. See [Document 92-5]. Plaintiff for this reason wanted the Court to Order Physical Examination under the circumstances requested in order to dispel any contrary beliefs to the allegations made as to his ETS injuries. However, to no such avail, not even the order for discovery, interrogatories, or deposition to make proof of injury more plausible.

## VII.  AMERICANS WITH DISABILITY ACT (ADA) CLAIM

28. The Magistrate Judge's Report with summarily assessing Plaintiff's Proposed "Third Amended Complaint" in regards to his ADA Claim hypothetically determined that if the Court would allow a second amendment to the complaint, such amendment would be futile; noting that the ADA does not apply to federal prisons. Plaintiff wholeheartedly objects to this assumption. There is authoritative law in statute, regulation, and case law that supports the fact that the ADA applies to federal prisons. The fact that this is so

argues against the Magistrate Judge's reason to deny the claim on grounds of futility.

29. Plaintiff affirms that under 3 U.S.C. §421, Rights and protections under the Americans with Disabilities Act of 1990, it states "The rights and protections against discrimination in the provision of public services and accomodations established by sections 201, 202, and 204, and sections 302, 303, and 309, of the Americans with Disabilities Act of 1990 [42 U.S.C. §§12131, 12132, 12134, 12182, 12183, 12189] shall apply, to the extent that public services, programs, or activities are provided, with respect to the White House and its appurtenant grounds and gardens, the Old Executive Office Building, the New Executive Office Buildings, and **any other facility to the extent that offices are provided for employees of the Executive Office of the President.**" See 3 U.S.C. **§421 attached hereto.**

30. Plaintiff affirms further, that under subsection (d) of §421, it states "The President, or the designee of the President, shall issue regulations to implement this section. The regulations issued under paragraph (1) shall be the **same** as substantive regulat- ions promulgated by the appropriate officer of an executive agency to implement the statutory provisions referred to in subsections (a) and (b)- except to the extent that the President or designee may issue regulations to implement a provision of ... **section 501 of the Rehabilitation Act of 1973 that applies to agencies of the**

**executive branch of the Federal Government in lieu of an analogous statutory provision referred to in subsection (a) or (b).." Id.**

31. Even so, 1-year prior to the addition of statutory language in 3 U.S.C. §421, case law acknowledged the analogous provisions of the ADA with that of the Rehabilitation Act. In Kemer v. Johnson, 900 F.Supp 677 (SD NY 1995) Plaintiff brought Pro-Se Action against the Administrator of General Services Administration in his official capacity, alleging that Plaintiff had been denied position on basis of his disability in violation of ADA (42 U.S.C. §§12101 et. seq.). The Court there, instead, construed the complaint to state a cause of action under the Rehabilitation Act (29 U.S.C. §794) because suit was against an officer of a federal agency in his official capacity and because Plaintiff was acting Pro-Se.

32. In the context of prisons however, in the case of Key v. Grayson, 179 F.3d 996 (6th Cir. 1999) the Court convened to decide an appeal to determine whether prior to 1996, it was clearly established that the Americans with Disabilities Act (ADA, 42 U.S.C. §12131 et. seq.) and the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. §794, applied to prisoners. It decided that, although **now it is established that the ADA and the Rehabilitation Act apply to prisoners** citing  Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998), prior to 1996 it was not clearly established.

33. Plaintiff, hence, affirms that whether the Magistrate Judge should have applied the ADA or not, his Pro-Se status warranted, at least, consideration of stating a cause of action under the

Rehabilitation Act. See **29 U.S.C. §794(a) attached hereto.** See also
[Document 94]. In short, the statute states "No otherwise qualified
individual with a disability in the United States, as defined in
section 7(20)[29 U.S.C. §705(20)], shall, solely by reason of her
or his disability, be excluded from the participation in, be denied
the benefits of, or be subjected to discrimination under any program
or activity receiving Federal financial assistance or under any
program or activity conducted by any **Executive agency...**

34. Plaintiff affirms that, it is shown further that with
implementing regulation of the Rehabilitation Act the purpose of
such, as stated, is to prohibit discrimination on the basis of handi-
cap in programs or activities conducted by the Executive agencies.
And, agency is defined to mean the Department of Justice. Plaintiff
has thus, in his complaint, named the Department of Justice in his
"Third Amended Complaint." Likewise, Plaintiff has named its subsidi-
ary agencies, i.e., Bureau of Prisons and FCI McKean as well as each
other Defendant in his official capacity under claims of discrimination.

35. The Magistrate Judge's Report lastly with respect to Plain-
tiff's ADA claim notes that he did not administratively exhaust this
claim prior to attempting to raise in his civil action. Plaintiff
objects to state that he has made the allegation that his exhaustion
of remedy is an inclusion of having exhausted his Bivens claim.
See [Document 5 & 94]. Because the claims arose from the same acts
or transactions, the causative factor to exhausting administrative
remedy were based upon Plaintiff's request for equal treatment with

that of staff as in policy protections afforded to one for not being
exposed to tobacco smoke. Plaintiff's request for remedy in this
regard was to be separated from those whom smoked just as staff were
obliged under policy. The discrimination of this is apparent whereby
Plaintiff is solely an inmate, with other factors included, versus
a staff member of unequal opposition. Although, this claim was not
readily presented, Defendants were on notice by the facts of Plain-
tiff's complaint.

36. However, Plaintiff states that if exhaustion of his ADA
claim were not so at the time of his filing complaint under the
Federal Tort Claims Act [Document 5] then having commenced action
upon a separate claim, the subsequent **joinder** of a separate claim,
should be allowed as within the statutory period of 6 years for
civil actions [28 U.S.C. §2401(a)]. Therefore, nothing says that
**all** claims must be exhausted prior to commencing action whereby
there are differing statutory time limitations. In fact, the rules
for joinder of claims provides the remedy for this where filing
separate lawsuits inconviences parties where the claims arise from
the same set of facts, acts or transactions.

## VIII.  RETALIATION CLAIM

37. The Magistrate Judge's Report alleges that Plaintiff has
not exhausted his Administrative Remedies in accordance with the
mandates of the PLRA, that amending the complaint would be futile.
The Magistrate Judge relies primarily upon Defendants' insertion
into the record of a declaration made by Rosalind Bingham, Parlegal

Specialist for the Bureau of Prisons. Plaintiff objects to this
portion of the Magistrate Judge's Report. Plaintiff affirms that
he has exhausted his Administrative Remedies and his claim for
Retaliation is ripe for adding claims in his Proposed "Third Amended
Complaint" under Fed.R.Civ.P., Rules 8(a) and 15(a). See [Document
94-1].

38. However, Plaintiff affirms that, although exhaustion is
necessary, he did seek a temporary injunction in the District and
Appellate Courts regarding retaliation. This apparently was a prior-
ity under the claims Plaintiff documented concerning his abrupt
transfer from FCI McKean to FCI RayBrook. Also, patterns of conduct
consisting of denial to access of law library and Court, both, before
and after transfer. The plot to which this retaliatory conduct has
been constructed has been at the behest and direction of higher up
Bureau of Prison figures such as D. Scott Dodrill and Harley G. Lappin.
Due to these exergient circumstances, Plaintiff was prevented from
filing necessary Administrative Remedies until the time it was so
done. The Appellate Court did not remand jurisdiction of Plaintiff's
case back to the District Court until December 14, 2006 [Document 82].
At which time later, Plaintiff sought to file his "Third Amended
Complaint" alleging a retaliation claim along with showing his
exhaustion of his remedies. See [Document 91, 92, & 94].

## IX.  JURISDICTION

39. The Magistrate Judge's Report lastly confirms that Defendants' Motion to Dismiss or in the alternative for Summary Judgment be granted. Plaintiff objects to this confirmation and would affirm that diligent search has uncovered that this Court is promised to have subject matter jurisdiction under 28 U.S.C. §§1346(g) and 3901. That, Plaintiff's "Third Amended Complaint" along with this jurisdictional statement will grant that futility not be an issue.

## CONCLUSION

**WHEREFORE,** based on the foregoing, Plaintiff requests that the District Court overrule the Magistrate Judge's Report and Recommendation by denying Defendants' Motion to Dismiss and Motion for Summary Judgment and, to grant Plaintiff his right to file proposed "Third Amended Complaint."

I, DEMETRIUS BROWN, hereby affirm and declare under penalty of perjury, that the foregoing is true and correct.

_9/7/07_
Dated

_Demetrius Brown_                        "

Subscribed and sworn to (or affirmed)
before me on this _____ day of
                      Date
September, 2007.

Place Notary Seal Above

/s/ Michelle Gonyea
Signature of Notary Public

**EXECUTIVE ORDER 13058**

Executive Order 13058 of August 9, 1997

## Protecting Federal Employees and the Public From Exposure to Tobacco Smoke in the Federal Workplace

By the authority vested in me as President by the Constitution and the laws of the United States of America and in order to protect Federal Government employees and members of the public from exposure to tobacco smoke in the Federal workplace, it is hereby ordered as follows:

**Section 1.** *Policy.* It is the policy of the executive branch to establish a smoke-free environment for Federal employees and members of the public visiting or using Federal facilities. The smoking of tobacco products is thus prohibited in all interior space owned, rented, or leased by the executive branch of the Federal Government, and in any outdoor areas under executive branch control in front of air intake ducts.

**Sec. 2.** *Exceptions.* The general policy established by this order is subject to the following exceptions: (a) The order does not apply in designated smoking areas that are enclosed and exhausted directly to the outside and away from air intake ducts, and are maintained under negative pressure (with respect to surrounding spaces) sufficient to contain tobacco smoke within the designated area. Agency officials shall not require workers to enter such areas during business hours while smoking is ongoing.

(b) The order does not extend to any residential accommodation for persons voluntarily or involuntarily residing, on a temporary or long-term basis, in a building owned, leased, or rented by the Federal Government.

(c) The order does not extend to those portions of federally owned buildings leased, rented, or otherwise provided in their entirety to nonfederal parties.

(d) The order does not extend to places of employment in the private sector or in other nonfederal governmental units that serve as the permanent or intermittent duty station of one or more Federal employees.

(e) The head of any agency may establish limited and narrow exceptions that are necessary to accomplish agency missions. Such exception shall be in writing, approved by the agency head, and to the fullest extent possible provide protection of nonsmokers from exposure to environmental tobacco smoke. Authority to establish such exceptions may not be delegated.

**Sec. 3.** *Other Locations.* The heads of agencies shall evaluate the need to restrict smoking at doorways and in courtyards under executive branch control in order to protect workers and visitors from environmental tobacco smoke, and may restrict smoking in these areas in light of this evaluation.

**Sec. 4.** *Smoking Cessation Programs.* The heads of agencies are encouraged to use existing authority to establish programs designed to help employees stop smoking.

**Sec. 5.** *Responsibility for Implementation.* The heads of agencies are responsible for implementing and ensuring compliance with the provisions of this order. "Agency" as used in this order means an Executive agency, as defined in 5 U.S.C. 105, and includes any employing unit or authority of the Federal Government, other than those of the legislative and judicial branches. Independent agencies are encouraged to comply with the provisions of this order.

**Sec. 6.** *Phase-In of Implementation.* Implementation of the policy set forth in this order shall be achieved no later than 1 year after the date of this

order. This 1 year phase-in period is designed to establish a fixed but reasonable time for implementing this policy. Agency heads are directed during this period to inform all employees and visitors to executive branch facilities about the requirements of this order, inform their employees of the health risks of exposure to environmental tobacco smoke, and undertake related activities as necessary.

**Sec. 7.** *Consistency with Other Laws.* The provisions of this order shall be implemented consistent with applicable law, including the Federal Service Labor-Management Relations Act (5 U.S.C. 7101 *et seq.*) and the National Labor Relations Act (29 U.S.C. 151 *et seq.*) Provisions of existing collective bargaining agreements shall be honored and agencies shall consult with employee labor representatives about the implementation of this order. Nothing herein shall be construed to impair or alter the powers and duties of Federal agencies established under law. Nothing herein shall be construed to replace any agency policy currently in effect, if such policy is legally established, in writing, and consistent with the terms of this order. Agencies shall review their current policy to confirm that agency policy comports with this order, and policy found not in compliance shall be revised to comply with the terms of this order.

**Sec. 8.** *Cause of Action.* This order does not create any right to administrative or judicial review, or any other right or benefit, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person or affect in any way the liability of the executive branch under the Federal Tort Claims Act.

**Sec. 9.** *Construction.* Nothing in this order shall limit an agency head from establishing more protective policies on smoking in the Federal workplace for employees and members of the public visiting or using Federal facilities.

*William J Clinton*

THE WHITE HOUSE,
*August 9, 1997.*

[m]
–P

3 U.S.C. §421. RIGHTS AND PROTECTIONS UNDER THE
AMERICANS WITH DISABILITIES ACT OF 1990

reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this chapter [3 USCS §§ 401 et seq.].

**(b) Remedy.** A violation of subsection (a) may be remedied by any legal remedy available to redress the practice opposed by the covered employee or other violation of law as to which the covered employee initiated proceedings, made a charge, or engaged in other conduct protected under subsection (a).
(Added Oct. 26, 1996, P. L. 104-331, § 2(a), 110 Stat. 4061.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES
**Effective date of section:**
This section takes effect on October 1, 1997, pursuant to 3 USCS § 471.

### CROSS REFERENCES
This section is referred to in 3 USCS §§ 411, 454.

PART B. Public Access Provisions Under the Americans With Disabilities Act of 1990

## § 421. Rights and protections under the Americans with Disabilities Act of 1990

**(a) Rights and protections.** The rights and protections against discrimination in the provision of public services and accommodations established by sections 201, 202, and 204, and sections 302, 303, and 309, of the Americans with Disabilities Act of 1990 [42 USCS §§ 12131, 12132, 12134, 12182, 12183, 12189] shall apply, to the extent that public services, programs, or activities are provided, with respect to the White House and its appurtenant grounds and gardens, the Old Executive Office Building [Dwight D. Eisenhower Executive Office Building], the New Executive Office Buildings, and any other facility to the extent that offices are provided for employees of the Executive Office of the President.

**(b) Remedy.** The remedy for a violation of subsection (a) shall be such remedy as would be appropriate if awarded under section 203 or 308 of the Americans with Disabilities Act of 1990 [42 USCS § 12133 or 12188], as the case may be, except that, with respect to any claim of employment discrimination, the exclusive remedy shall be under section 411 of this title. Any relief under the preceding sentence shall be enforced in accordance with applicable provisions of such section 203 or 308 [42 USCS § 12133 or 12188], as the case may be.

**(c) Definition.** For purposes of the application under this section of the Americans with Disabilities Act of 1990, the term "public entity" as used in such Act, means, to the extent that public services, programs, or activities are provided, the White House and its appurtenant grounds and gardens, the Old Executive Office Building [Dwight D. Eisenhower Executive Office

the New Executive Office Buildings, and any other facility to the extent that offices are provided for employees of the Executive Office of the President.

**(d) Regulations to implement section.** (1) In general. The President, or the designee of the President, shall issue regulations to implement this section.

(2) Agency regulations. The regulations issued under paragraph (1) shall be the same as substantive regulations promulgated by the appropriate officer of an executive agency to implement the statutory provisions referred to in subsections (a) and (b)—

(A) except to the extent that the President or designee may determine, for good cause shown and stated together with the regulation, that a modification of such regulations would be more effective for the implementation of the rights and protections under this section; and

(B) except that the President or designee may, at the discretion of the President or designee, issue regulations to implement a provision of section 1, 2, 3, or 6 of the Act entitled ''An Act to insure that certain buildings financed with Federal funds are so designed and constructed as to be accessible to the physically handicapped'', approved August 12, 1968 [42 USCS § 4151, 4152, 4153, or 4156] (commonly known as the ''Architectural Barriers Act of 1968'') or section 501 of the Rehabilitation Act of 1973 [29 USCS § 791] that applies to agencies of the executive branch of the Federal Government in lieu of an analogous statutory provision referred to in subsection (a) or (b), if the issuance of such regulations—

(i) would be equally effective for the implementation of the rights and protections under this section; and

(ii) would promote uniformity in the application of Federal law to agencies of the executive branch of the Federal Government.

**(e) Effective date.** Subsections (a), (b), and (c) shall take effect on the earlier of—

(1) the effective date of regulations issued under subsection (d); or

(2) October 1, 1998.

(Added Oct. 26, 1996, P. L. 104-331, § 2(a), 110 Stat. 4061.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**

The ''Americans with Disabilities Act of 1990'', referred to in this section, is Act July 26, 1990, P. L. 101-336, 104 Stat. 327, which appears generally as 42 USCS §§ 12101 et seq. For full classification of such Act, consult USCS Tables volumes.

**Explanatory notes:**

''Dwight D. Eisenhower Executive Office Building'' has been inserted in brackets in subsecs. (a) and (c) on the authority of Act Nov. 9, 1999, P. L. 106-92 (3 USCS § 101 note), which provides that the Old Executive Office Building shall be known and designated as the ''Dwight D. Eisenhower Executive Office Building'' and that any reference in a law, map, regulation, document, paper, or other record of the United States to the Old Executive Office Building shall be deemed to be a reference to the Dwight D. Eisenhower Executive Office Building.

29 U.S.C. §794. NONDISCRIMINATION UNDER
FEDERAL GRANTS AND PROGRAMS

**7. Entities subject to compliance review**

For purposes of federal contract compliance laws, University of North Carolina system constitutes single, unified state agency, of which University's campuses are merely sub-agencies; thus, campuses that have not entered into contracts with federal government must, nonetheless submit to compliance reviews conducted by Office of Federal Contract Compliance Programs. Board of Governors of University of North Carolina v United States Dep't of Labor (1990, CA4 NC) 917 F2d 812, 1 AD Cas 1704, 54 BNA FEP Cas 136, 135 BNA LRRM 2760, 36 CCF ¶ 75959, 55 CCH EPD ¶ 40370, cert den (1991) 500 US 916, 114 L Ed 2d 100, 111 S Ct 2013, 55 BNA FEP Cas 1104, 56 CCH EPD ¶ 40801.

Where 11 of 16 campuses in state university system had received federal contracts, campuses that did not enter contracts with federal government were nonetheless subject to affirmative action require-

ments of 29 USCS § 793 and Vietnam Era Veterans' Readjustment Assistance Act of 1974 (38 USCS § 2012), since university system was single state agency of which non-contracting campuses were merely constituent parts. Board of Governors of University of North Carolina v United States Dep't of Labor (1990, CA4 NC) 917 F2d 812, 1 AD Cas 1704, 54 BNA FEP Cas 136, 135 BNA LRRM 2760, 36 CCF ¶ 75959, 55 CCH EPD ¶ 40370, cert den (1991) 500 US 916, 114 L Ed 2d 100, 111 S Ct 2013, 55 BNA FEP Cas 1104, 56 CCH EPD ¶ 40801.

In absence of waiver or exemption covering particular facility, Secretary of Labor is authorized under 29 USCS § 793 to enforce non-discrimination obligations on parties to government contracts, even with regard to separate facilities which are autonomous. Trinity Indus., Inc. v Herman (1999, CA4 NC) 173 F3d 527, 79 BNA FEP Cas 854, 161 BNA LRRM 2078, 75 CCH EPD ¶ 45808.

## § 794. Nondiscrimination under Federal grants and programs

**(a) Promulgation of rules and regulations.** No otherwise qualified individual with a disability in the United States, as defined in section 7(20) [29 USCS § 705(20)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

**(b) "Program or activity" defined.** For the purposes of this section, the term "program or activity" means all of the operations of—

(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

(2)(A) a college, university, or other postsecondary institution, or a public system of higher education; or

(B) a local educational agency (as defined in section 9101 of the Elementary and Secondary Education Act of 1965 [20 USCS § 7801]), system of vocational education, or other school system;

(3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship—

**29 USCS § 794**

      (i) if assistance is extended to such corporation, partnership, private
organization, or sole proprietorship as a whole; or
      (ii) which is principally engaged in the business of providing education,
health care, housing, social services, or parks and recreation; or
    (B) the entire plant or other comparable, geographically separate facility
to which Federal financial assistance is extended, in the case of any other
corporation, partnership, private organization, or sole proprietorship; or
  (4) any other entity which is established by two or more of the entities
described in paragraph (1), (2), or (3);

any part of which is extended Federal financial assistance.

**(c) Significant structural alterations by small providers.** Small providers are
not required by subsection (a) to make significant structural alterations to their
existing facilities for the purpose of assuring program accessibility, if alterna-
tive means of providing the services are available. The terms used in this
subsection shall be construed with reference to the regulations existing on the
date of the enactment of this subsection [enacted March 22, 1988].

**(d) Standards used in determining violation of section.** The standards used
to determine whether this section has been violated in a complaint alleging
employment discrimination under this section shall be the standards applied
under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111
et seq.) and the provisions of sections 501 through 504, and 510, of the
Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210),
as such sections relate to employment.

(Sept. 26, 1973, P. L. 93-112, Title V, § 504, 87 Stat 394; Nov. 6, 1978, P. L.
95-602, Title I, §§ 119, 122(d)(2), 92 Stat. 2982, 2987; Oct. 21, 1986, P. L.
99-506, Title I, § 103(d)(2)(B) in part, Title X, § 1002(e)(4), 100 Stat. 1810,
1844; March 22, 1988, P. L. 100-259, § 4, 102 Stat. 29; Nov. 7, 1988, P. L.
100-630, Title II, § 206(d), 102 Stat. 3312; Oct. 29, 1992, P. L. 102-569, Title
I, Subtitle A, § 102(p)(32), Title V, § 506, 106 Stat. 4360, 4428; Oct. 20, 1994,
P. L. 103-382, Title III, Part I, § 394(i)(2), 108 Stat. 4029.)

(As amended Aug. 7, 1998, P. L. 105-220, Title IV, § 408(a)(3), 112 Stat. 1203;
Jan. 8, 2002, P. L. 107-110, Title X, Part G, § 1076(u)(2), 115 Stat. 2093.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

**References in text:**
The "Rehabilitation, Comprehensive Services, and Developmental Dis-
abilities Act of 1978", as used in this section, probably refers to Act Nov.
6, 1978, P. L. 95-602, 92 Stat. 2955, popularly known as the Rehabilitation,
Comprehensive Services, and Developmental Disabilities Amendments of
1978. For full classification of such Act, consult USCS Tables volumes.

**Amendments:**
**1978.** Act Nov. 6, 1978, substituted "section 7(7)" for "section 7(6)"; and
added "or under any program or activity conducted by any Executive
agency or by the United States Postal Service. The head of each such
agency shall promulgate such regulations as may be necessary to carry out
the amendments to this section made by the Rehabilitation, Comprehensive

**28 C.F.R. PART 39- ENFORCEMENT OF NON-DISCRIMINATION ON THE BASIS OF HANDICAP IN PROGRAMS OR ACTIVITIES CONDUCTED BY THE DEPARTMENT OF JUSTICE**

the Federal prohibition on employment discrimination on the basis of religion, set forth in section 702(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000e-1, is not forfeited when the religious organization receives direct or indirect financial assistance from Department. Some Department programs, however, contain independent statutory provisions requiring that all grantees agree not to discriminate in employment on the basis of religion. Accordingly, grantees should consult with the appropriate Department program office to determine the scope of any applicable requirements.

(g) In general, the Department does not require that a grantee, including a religious organization, obtain tax-exempt status under section 501(c)(3) of the Internal Revenue Code to be eligible for funding under Department programs. Many grant programs, however, do require an organization to be a nonprofit organization in order to be eligible for funding. Individual solicitations that require that organizations have nonprofit status will so indicate in the eligibility section of the solicitation. In addition, any solicitation that requires an organization to maintain tax-exempt status will expressly identify the statutory authority for requiring such status. Grantees should consult with the appropriate Department program office to determine the scope of any applicable requirements. In Department programs in which an applicant must show that it is a nonprofit organization, the applicant may do so by any of the following means:

(1) Proof that the Internal Revenue Service currently recognizes the applicant as an organization to which contributions are tax deductible under section 501(c)(3) of the Internal Revenue Code;

(2) A statement from a State taxing body or the State secretary of state certifying that:

(i) The organization is a nonprofit organization operating within the State;

(ii) No part of its net earnings may lawfully benefit any private shareholder or individual;

(3) A certified copy of the applicant's certificate of incorporation or similar document that clearly establishes the nonprofit status of the applicant; or

(4) Any item described in paragraph (b)(1) through (3) of this section if that item applies to a State or national parent organization, together with a statement by the State or parent organization that the applicant is a local nonprofit affiliate.

(h) Effect on State and local funds. If a State or local government voluntarily contributes its own funds to supplement activities carried out under the applicable programs, the State or local government has the option to separate out the Federal funds or commingle them. If the funds are commingled, this section shall apply to all of the commingled funds in the same manner, and to the same extent, as the provisions apply to the Federal funds.

(1) To the extent otherwise permitted by Federal law, the restrictions on inherently religious activities set forth in this section do not apply where Department funds are provided to religious organizations as a result of a genuine and independent private choice of a beneficiary, provided that the organizations otherwise satisfy the requirements of the program. A religious organization may receive such funds as the result of a beneficiary's genuine and independent choice if, for example, a beneficiary redeems a voucher, coupon, or certificate, allowing the beneficiary to direct where funds are to be paid, or a similar funding mechanism provided to that beneficiary and designed to give that beneficiary a choice among providers.

## PART 39—ENFORCEMENT OF NON-DISCRIMINATION ON THE BASIS OF HANDICAP IN PROGRAMS OR ACTIVITIES CONDUCTED BY THE DEPARTMENT OF JUSTICE

Sec.
39.101 Purpose.
39.102 Application.
39.103 Definitions.
39.104-39.109 [Reserved]
39.110 Self-evaluation.
39.111 Notice.
39.112-39.129 [Reserved]
39.130 General prohibitions against discrimination.
39.131-39.139 [Reserved]

39.140 Employment.
39.141-39.148 [Reserved]
39.149 Program accessibility: Discrimination prohibited.
39.150 Program accessibility: Existing facilities.
39.151 Program accessibility: New construction and alterations.
39.152-39.159 [Reserved]
39.160 Communications.
39.161-39.169 [Reserved]
39.170 Compliance procedures.

AUTHORITY: 29 U.S.C. 794.

SOURCE: Order No. 1065-84, 49 FR 35724, Sept. 11, 1984, unless otherwise noted.

§ 39.101 Purpose.

This part effectuates section 119 of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, which amended section 504 of the Rehabilitation Act of 1973 to prohibit discrimination on the basis of handicap in programs or activities conducted by Executive agencies or the U.S. Postal Service.

§ 39.102 Application.

This part applies to all programs or activities conducted by the agency.

§ 39.103 Definitions.

For purposes of this part, the term—

Agency means the Department of Justice.

Assistant Attorney General means the Assistant Attorney General, Civil Rights Division, U.S. Department of Justice.

Auxiliary aids means services or devices that enable persons with impaired sensory, manual, or speaking skills to have an equal opportunity to participate in, and enjoy the benefits of, programs or activities conducted by the agency. For example, auxiliary aids useful for persons with impaired vision include readers, Brailled materials, audio recordings, telecommunications devices and other similar services and devices. Auxiliary aids useful for persons with impaired hearing include telephone handset amplifiers, telephones compatible with hearing aids, telecommunication devices for deaf persons (TDD's), interpreters, notetakers, written materials, and other similar services and devices.

Complaint. Adjudication Officer means the Complaint Adjudicator Officer appointed by the Assistant Attorney General for Civil Rights.

Complete complaint means a written statement that contains the complainant's name and address and describes the agency's alleged discriminatory action in sufficient detail to inform the agency of the nature and date of the alleged violation of section 504. It shall be signed by the complainant or by someone authorized to do so on his or her behalf.

Facility means all or any portion of buildings, structures, equipment, roads, walks, parking lots, rolling stock or other conveyances, or other real or personal property.

Handicapped person means any person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. As used in this definition, the phrase—

(1) Physical or mental impairment includes—

(i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; respiratory, including speech; organs; cardiovascular; reproductive, digestive; genitourinary; hemic and lymphatic; skin; and endocrine; or

(ii) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. The term "physical or mental impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, and drug addiction and alcoholism.

(2) Major life activities includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(3) Has a record of such an impairment means has a history of, or has been misclassified as having, a mental or

**§§ 39.104–39.109**

physical impairment that substantially limits one or more major life activities.

(4) *Is regarded as having an impairment* means—

(i) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the agency as constituting such a limitation;

(ii) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(iii) Has none of the impairments defined in subparagraph (1) of this definition but is treated by the agency as having such an impairment.

*Official* or *Responsible Official* means the Director of Equal Employment Opportunity for the Department of Justice or his or her designee.

*Qualified handicapped person* means—

(1) With respect to any agency program or activity under which a person is required to perform services or to achieve a level of accomplishment, a handicapped person who meets the essential eligibility requirements and who can achieve the purpose of the program or activity without modifications in the program or activity that the agency can demonstrate would result in a fundamental alteration in its nature; or

(2) With respect to any other program or activity, a handicapped person who meets the essential eligibility requirements for participation in, or receipt of benefits from, that program or activity.

*Respondent* means the organizational unit in which a complainant alleges that discrimination occurred.

*Section 504* means section 504 of the Rehabilitation Act of 1973 (Pub. L. 93-112, 87 Stat. 394 (29 U.S.C. 794)), as amended by the Rehabilitation Act Amendments of 1974 (Pub. L. 93-516, 88 Stat. 1617), and the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978 (Pub. L. 95-602, 92 Stat. 2955). As used in this part, section 504 applies only to programs or activities conducted by Executive agencies and not to federally assisted programs.

**28 CFR Ch. I (7-1-06 Edition)**

**§§ 39.104–39.109  [Reserved]**

**§ 39.110  Self-evaluation.**

(a) The agency shall, by October 11, 1985, evaluate its current policies and practices, and the effects thereof, that do not or meet the requirements of this part, and, to the extent modification of any such policies and practices is required, the agency shall proceed to make the necessary modifications.

(b) The agency shall provide an opportunity to interested persons, including handicapped persons or organizations representing handicapped persons, to participate in the self-evaluation process by submitting comments (both oral and written).

(c) The agency shall, until October 11, 1987, maintain on file and make available for public inspection:

(1) A description of areas examined and any problems identified; and

(2) A description of any modifications made.

**§ 39.111  Notice.**

The agency shall make available to employees, applicants, participants, beneficiaries, and other interested persons such information regarding the provisions of this part and its applicability to the program or activities conducted by the agency, and make such information available to them in such manner as the Attorney General finds necessary to apprise such persons of the protections against discrimination assured them by section 504 and this regulation.

**§§ 39.112–39.129  [Reserved]**

**§ 39.130  General prohibitions against discrimination.**

(a) No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity conducted by the agency.

(b)(1) The agency, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap—

**Department of Justice**

(i) Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons than is provided to others unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others;

(v) Deny a qualified handicapped person the opportunity to participate as a member of planning or advisory boards; or

(vi) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

(2) The agency may not deny a qualified handicapped person the opportunity to participate in programs or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities.

(3) The agency may not, directly or through contractual or other arrangements, utilize criteria or methods of administration the purpose or effect of which would—

(i) Subject qualified handicapped persons to discrimination on the basis of handicap; or

(ii) Defeat or substantially impair accomplishment of the objectives of a program or activity with respect to handicapped persons.

(4) The agency may not, in determining the site or location of a facility, make selections the purpose or effect of which would—

(i) Exclude handicapped persons from, deny them the benefits of, or otherwise subject them to discrimination

**§ 39.140**

under any program or activity conducted by the agency; or

(ii) Defeat or substantially impair the accomplishment of the objectives of a program or activity with respect to handicapped persons.

(5) The agency, in the selection of procurement contractors, may not use criteria that subject qualified handicapped persons to discrimination on the basis of handicap.

(6) The agency may not administer a licensing or certification program in a manner that subjects qualified handicapped persons to discrimination on the basis of handicap, nor may the agency establish requirements for the programs or activities of licensees or certified entities that subject qualified handicapped persons to discrimination on the basis of handicap. However, the programs or activities of entities that are licensed or certified by the agency are not, themselves, covered by this part.

(c) The exclusion of nonhandicapped persons from the benefits of a program limited by Federal statute or Executive order to handicapped persons or the exclusion of a specific class of handicapped persons from a program limited by Federal statute or Executive order to a different class of handicapped persons is not prohibited by this part.

(d) The agency shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons.

**§§ 39.131–39.139  [Reserved]**

**§ 39.140  Employment.**

No qualified handicapped person shall, on the basis of handicap, be subjected to discrimination in employment under any program or activity conducted by the agency. The definitions, requirements, and procedures of section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791), as established by the Equal Employment Opportunity Commission in 29 CFR part 1613, shall apply to employment in federally conducted programs or activities.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

DEMETRIUS BROWN,                    )
     Plaintiff,                    )
                                    )
                                    )
    v.                              )     Civil Action No. 04-379 E
                                    )
U.S. JUSTICE DEPARTMENT,            )
BUREAU OF PRISONS, FCI McKEAN,      )
WARDEN JOHN J. LAMANNA,             )
REGIONAL DIRECTOR D. SCOTT          )
DODRILL, MEDICAL DIRECTOR           )
NEWTON E. KENDIG, DIRECTOR          )
HARLEY G. LAPPIN,                   )
     Defendants.                   )

ORDER

**AND NOW,** this _____ day of September 2007,

**IT IS HEREBY ORDERED THAT,** the Magistrate Judge's Report
and Recommendation; (1), denying Plaintiff's MOTION TO FILE THIRD
AMENDED COMPLAINT and (2), granting Defendants' MOTION TO DISMISS
AND MOTION FOR SUMMARY JUDGMENT OF AMENDED COMPLAINT is **OVERRULED.**

**IT IS FURTHER ORDERED THAT,** Plaintiff's MOTION TO FILE THIRD
AMENDED COMPLAINT **SHALL** be **GRANTED** and therefore, Order granting
Defendants' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT OF
AMENDED COMPLAINT **SHALL** be **REVERSED** and **DENIED.**

**ADDITIONALLY IT IS ORDERED THAT,** Order denying service of the Amended Complaint be overruled and, **ORDERED THAT** Plaintiff be **GRANTED** service of Third Amended Complaint.

_____, J.
/s/

cc: All parties of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

DEMETRIUS BROWN,                    )
          Plaintiff,               )
                                   )
                                   )
      v.                           )      Civil Action No. 04-379 E
                                   )
U.S. JUSTICE DEPARTMENT,           )
BUREAU OF PRISONS, FCI McKEAN,     )
WARDEN JOHN J. LAMANNA, REGIONAL   )
DIRECTOR D. SCOTT DODRILL, MEDICAL )
DIRECTOR NEWTON E. KENDIG, DIRECTOR )
HARLEY G. LAPPIN,                  )
          Defendants.              )

## PROOF OF SERVICE

     I, DEMETRIUS BROWN, do swear or declare that on this date,

September _7th_ 2007, as required by Fed.R.Civ.P. 5, I have served

the enclosed OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMEND-

ATION WITH AFFIDAVIT OF FACTS TO SUPPORT on each party to the above

proceeding or that of party's counsel, and on every person required

to be served, by depositing an envelope containing the above docu-

ments in FCI RayBrook's internal mail system for mail in the United

States, mail properly addressed to each of them and with first-

class postage prepaid.

The names and addresses of those served are as follows:

MEGAN E. FARRELL              at        700 Grant St. Suite 4000
Assistant U.S. Attorney                 Pittsburgh, PA. 15219
Western District of PA.                 (412) 894-7429
                                        PA ID #76972

I declare under penalty of perjury that the foregoing is true and

correct. Executed on _____ 9 - 7 - _____ , 2007.